**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUJATA NICHANI, | : | CIVIL ACTION NO. |
| | : | 3:02CV1384 (MRK) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED TECHNOLOGIES CORP. and | : | |
| OTIS ELEVATOR COMPANY, | : | |
| | : | |
| Defendants. | : | JUNE 2, 2004 |

## JOINT STATUS UPDATE

Since the last conference with the court several weeks ago, the parties have heeded the court's suggestion to try to resolve issues of scheduling and document production disputes without further court intervention. To that end, the parties have discussed this matter on at least a half-dozen occasions. The parties believe they have made significant progress and have delayed contacting the court for several weeks to try to continue to resolve as many issues as possible. Indeed, the drafting of this joint status report represents the final work product of such conferences. The following are issues that are still outstanding and the parties request that an in person status conference be scheduled to address these remaining issues:

1

1.   **Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories and Requests for Production**

The Plaintiff's objections and responses to Defendant's First Set of Interrogatories and Requests for Production were due on April 12, 2004. The Plaintiff served her objections and responses on May 6, 2004. In doing so, the Plaintiff raised several objections to the responses.

Specifically, Defendant is requesting that the court hold a brief status conference to discuss Plaintiff's responses to Interrogatory 21c and 23 (asking Plaintiff to identify her compensation at her new employer) and 23 (asking Plaintiff whether she contended that another Otis employee, Brad Russell would have received stock options if he had continued working past 2001, and if so, how much.) Moreover, Defendants are still awaiting a privilege log.

Plaintiff has agreed to supplement its discovery (although Defendant has not seen such discovery as of yet); therefore, the parties believe this issue may be resolved by the time a status conference is held.

2.   **Defendants' Responses and Objections to Plaintiff's second set of Interrogatories and Requests for Production:**

Since the last status conference with the Court, the Plaintiff sent the Defendants a letter with issues that she believed were still outstanding from discovery. The Defendants responded by producing several hundred pages of additional documents and supplementing their discovery in at least a half dozen areas. The parties have thus significantly narrowed the issues for the court's review.

The Plaintiff believes the following issues still need to be addressed:

**A. Documents relating to "Red Circling"**

The Plaintiff believes that the additional discovery provided by the Defendants included certain basic documents, which the Plaintiff had been requesting for over a year, including documentation directly relating to the key issue and defense of "red circling." After being told for many months that no documents existed which directly reflected the terminology or the fact of Brad Russell being "red circled" when he took over the safety leadership position at Otis NAA from the Plaintiff, the Defendants produced a form which does specifically use the term "red circled" in relation to Brad Russell's move and reflects that a box next to the term "red circled" was not checked. This document was signed by, and was part of a package of documents which originated from a witness, Sharon Winch, who the defendants had never previously identified as being involved with this move.   In addition, the same form with the term "red circled" appears three more times in Brad Russell's personnel file relating to his prior moves and promotions at UTC. Plaintiff believes that she is entitled to follow-up discovery on these critical issues, including a deposition of the new witness, Sharon Winch. In addition, plaintiff has been seeking for over a year documents which would reflect policies, procedures and instructions relating to promotions, transfers and "red circling." She continues to press these requests and, in particular, presses her requests in regard to any policies, procedures or instructions which would have been available or applicable to filling out the form with the "red circled" reference as well as the other documents which constitute the "rec pack" (recommendations package) which accompanied Brad Russell's move displacing the plaintiff from her position at Otis.

The Defendants strongly disagree with the characterization of the documents produced and that Defendants delayed in producing relevant documents. Indeed, the one document that Plaintiff refers to, which is essentially a computer entry form, was produced in a timely fashion in response to a March 2004 document request directed to Defendant UTC. Moreover, the Defendants produced the documents within a week after received them and these are far from so-called "central basic documents" that Plaintiff refers to. The document is part of UTC's files. All prior discovery requests directed by the Plaintiff were directed to Otis and the document that Plaintiff refers to was not part of Otis' files. Therefore, any claim that Defendants delayed in producing relevant documents is misplaced and does not warrant reopening discovery. The "surprise" that Plaintiff refers to was caused only by Plaintiff's 18 month delay in its discovery requests and does not warrant further discovery.

Plaintiff asserts that because Otis and UTC both are named as defendants and because, as testified to by Otis' president, Otis if functionally a "division" of UTC, and because the documents in question relate to the transfer of an <u>Otis</u> employee <u>within</u> <u>Otis</u>, the documents were at all times within the custody and control of Otis and subject to production when first requested over a year ago.

The parties request a status conference to discuss whether additional discovery is warranted on this issue.

**B. Leadership Development Reviews and "High Potential" List**

The Plaintiff believes that many of the documents produced by the Defendants relating to Leadership Development Reviews and "High Potentials" are either heavily redacted or are missing pages. The Plaintiff believes that with the protective order in place, she is entitled to unredacted information.

The Defendant disagrees and refers to the prior status conference with the court. The Defendant did redact sensitive information which concerned other employees (such as Otis' legal staff, finance staff, etc.) but all information concerning the Plaintiff was produced in unredacted form. This was discussed at the last status conference in which the court indicated that we need only produce information relevant to Plaintiff's claims or concerning the Plaintiff. The Plaintiff has not made any showing how such information could lead to the discovery of admissible evidence.

The parties request that this item be discussed at the status conference.

**C. Notes of Participants of Meetings of Otis' Worldwide Job Site Safety Standards (WWJSSS) Committee Meetings and Assurance Reviews**

The Defendants produced minutes and agendas from Otis WWJSSS meetings during the requested time frame and all Assurance Reviews in unredacted form.

The Plaintiff has requested that Defendant produce any notes of such meetings or notes or materials regarding all Assurance Reviews conducted by Otis. The Defendants believe such a request is far beyond the scope of relevant information, and far beyond the scope of this matter.

5

The parties request that this item be discussed at a status conference.

### D. Documents relating to Arbitration Proceedings where Union requested reinstatement of Otis' non-salaried employees terminated as a result of fatality

Pursuant to discovery requests, the Defendants have produced documents relating to the investigation into a fatality of an Otis employee. The Plaintiff was a participant in at least part of the investigation into the fatality. As a result of the investigation, several employees were sanctioned and some unionized employees were terminated. The union represented those employees filed a grievance relating to those employees and asked that those employees be reinstated. An arbitration was eventually held whereby at least one unionized employee was reinstated.

Plaintiff believes she is entitled to seek documents relating to those proceedings relating to the McQuillen fatality in New Jersey. The Defendants disagree and argue that the scope of the request and the subject matter of the arbitration is irrelevant to this matter. Moreover, documents relating to Otis' defense of the arbitration would be covered under the attorney client privilege and attorney work product doctrine.

The parties request that a status conference be held on this item.

### E. Termination or Demotion of Safety Personnel

The Plaintiff believes she is entitled to information relating to any termination or demotion of safety personnel at Ms. Nichani's level or above within Otis after each and every fatality that

has arisen at Otis. The Defendant objects to this request on the grounds that it is irrelevant to this matter, that it seeks information concerning individuals not similiarly situated to the plaintiff and that it is overly broad.

The parties have met and conferred on this item and request that a status conference be held.

### F.    Black Scholes calculations/work papers of Otis' employees

As an element of damages, the Plaintiff's expert has calculated damages that includes a valuation of certain stock options he believes she was entitled to. Plaintiff's expert utilized a method entitled "Black Scholes", which is one method for valuing such stock options. UTC utilizes a modified "Black Scholes" method for computing the value of stock options as part of its financial reporting obligations as a publicly traded company. The Defendants have produced information relating to the actual numbers that UTC uses that form the basis of the modified "Black Scholes" method.

The Plaintiff is seeking internal UTC documents that show how UTC arrived at such numbers, including any calculations that might show different projections of valuations. The Defendants have objected on the grounds that this information is not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, the Defendants are reviewing its records further to whether or not it can supplement its records.

7

Although this issue may be resolved by the time of the status conference, the parties request that they have the opportunity to discuss this request further in the event that a resolution is not reached.

### 3. Depositions of Defendants' Witnesses

The court requested that the parties meet and confer about deposition dates of senior Otis' executives previously noticed but not taken or not completed. The parties have done so and the Plaintiff has taken the deposition of Otis' President, Ari Bousbib on June 2, 2004 and scheduled the conclusion of the deposition of Otis NSAA Region President Ray Moncini for June 8, 2004. The Plaintiff has indicated that she wants to take a 30(b)(6) deposition of an Otis and UTC witness and will suggest a date for such depositions only after the issues relating to Defendant's compliance with Plaintiff's discovery requests are addressed with the court.

The parties have agreed, regarding the completion of the deposition of Otis NSAA Region Vice President of Human Resources Ellen McGroary and her 30(b)(6) deposition, that because of her scheduled departure on maternity leave in early June, Ms. McGroary's deposition can be scheduled for later this summer in one sitting even after all the other discovery is completed. Defendant maintains, however, that Ms. McGroary's deposition does not warrant extending discovery on any other issues.

Plaintiff seeks the deposition of three (3) additional witnesses, which they represent they will complete in a <u>total</u> of one (1) day of deposition time and within thirty (30) days of the date the

8

Court decides that these depositions will be permitted.   The Defendant objects to these further depositions and believes the issue was resolved at the last status conference.

### 4.     Plaintiff's Motion to Amend Complaint Further

Since the last status conference with the Court, the Plaintiff has filed a motion for permission to file a third amended complaint. The proposed amendments have two major changes: First, the complaint would be broadened to include claims arising from Ms. Nichani's termination of employment in March 2003. The Defendants object to this proposed amendment because Plaintiff does not appear to have filed the proposed amendment within 90 days after receiving a right to sue letter and has not shown good cause why she could not have filed the proposed amendment within that timeframe.  Second, the complaint would add a promissory estoppel claim. The Defendants object to this proposed amendment because the facts underlying this claim were previously known to the Plaintiff and she had not made any showing as to why such a claim could not have been made previously.  Moreover, the Defendants object because the Plaintiff never discussed this at the status conference with the court and only filed such an amendment after the Defendant filed its answer to the second amended complaint.

Plaintiff believes that this is a false issue.  Plaintiff filed her initial CHRO charge before defendants terminated her employment, asserting that she had been unfairly treated based upon her race, gender and national origin.  In what plaintiff asserts were acts of retaliation, defendants thereafter became more critical of her performance, denied her formal employment reviews,

reduced elements of her compensation, and eventually terminated her employment.  Plaintiff filed an amendment to her pending charge asserting unlawful acts of retaliation and later filed a second CHRO charge following her termination.  Plaintiff filed her second charge not because she was legally required to do so, but in an excess of caution, to avoid any claim of failure to exhaust administrative remedies.  She then waited until the CHRO released jurisdiction (based upon a stipulation with the defendants to do so) to seek leave to amend her Complaint in this Court to encompass her additional, related claims.

Under the well-established law of this Circuit, exhaustion of administrative remedies by the filing of the second CHRO charge was not mandated, because the second charge was "reasonably related" to the discriminatory acts and practices alleged in the plaintiff's initial charge.  See, e.g., Shah v. NewYork State Dep't of Civil Serv., 168 F.3d 610, 613 614 (2d Cir. 1999).  "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  Id.

As Judge Arterton has explained:

> Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge when it:  (1) is within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination; (2) would constitute retaliation for the filing of a timely EEOC charge; or (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge.

Russo v. Lightning Fulfillment, Inc., 196 F. Supp.2d 203, 208 (D. Conn. 2002), citing Butts v. City of New York Dep"t of Hous. Preservation and Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993). "In this circuit, '[t]he reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising subsequent to an EEOC filing. . . ."  Id., quoting in part Malarkey

10

v. Texaco, 983 F.2d 1024, 1029 (2d Cir. 1993); see also, Foster-Bey v. Potter, Case No. 3:02CV618 (MRK) (D.Conn. 2003) (where plaintiff alleged that decision to place him on administrative leave was discriminatory, the Court held "allegations of post-leave diminution of status satisfy the 'reasonably related' requirement").

With regard to the timing of the requested amendment, there certainly is no undue delay or unfair surprise or prejudice to the defendants.  The defendants were well aware from the outset, based on the fact that the plaintiff already had accused them of unlawful discrimination in relation and from the fact that a second charge was filed with the CHRO promptly after her termination, that plaintiff intended to challenge the termination decision and to assert that it constituted unlawful retaliation.  Indeed, defendants joined in a stipulation for the release of CHRO jurisdiction so that plaintiff could pursue these additional claims in this action without waiting for the CHRO to conclude its processing of the second charge of discrimination.   For these reasons, the requested amendment clearly is proper and Plaintiff believes it should be permitted under the liberal standard of Federal Rule 15 (a) ("leave shall be freely given when justice so requires").

THE DEFENDANTS,
UNITED TECHNOLOGIES CORP. and
OTIS ELEVATOR COMPANY

By _____
    Albert Zakarian (ct04201)
    Daniel A. Schwartz (ct15823)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, CT 06103-3499
    (860) 275-0100 (telephone)
    (860) 275-0343 (facsimile)
    azakarian@dbh.com
    daschwartz@dbh.com


PLAINTIFF, SUJATA NICHANI

By _____
    Anthony Minchella, Esq.
    Law Offices of Anthony R. Minchella, L.L.C.
    530 Middlebury Road
    Suite 212-213B
    Middlebury, CT 06762
    -and-
    Jeffrey J. Tinley, Esq. (ct00765)
    Robert Nastri, Esq.
    Tinley, Nastri, Renehan & Dost, LLP
    60 North Main Street, 2nd Floor
    Waterbury, CT 06702
    (203) 596-9030
    fax (203) 596-9036
    e-mail jtinley@tnrdlaw.com