<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 27

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

Volume #   Issue #                                                  11 November 1999

# LEARN & LIVE
## OTIS Safety & Environmental Protection Bulletin

# HELPER FALLS 29 METERS TO HIS DEATH

On October 5th 1999, Construction mechanic, Khaled Abdel Samee Elsmary and a helper Mohamed Abdel Wahab Hagazy were in the process of installing one Egyptian geared model elevator in a nine story apartment building. On the day before the accident, they hoisted the assembled car frame and cabin, to the top floor. Prior to hoisting the car, they placed the elevator controller inside the cabin with the intent of moving it from the top floor level to the machine room. To secure the car at the top floor, the mechanic and helper attached two slings from the car crosshead beams to steel channels in the machine room. Once slung, the mechanic removed the mechanical hoisting device (tirfor) from the car frame so he and his helper could use it to set the machine in place.

On the following day, when they had finished setting the machine, Hagazy went to the top floor to remove the controller from inside the car cabin. Just as the mechanic was coming down the stairs to assist, Hagazy stepped into the car and the wire rope slings pulled out of the 'U' bolt rope clips. The car then fell approximately 90 feet (29 meters) into the pit with Hagazy inside. He suffered multiple injuries and was pronounced dead a short time later.

Mohamed Hagazy was 27 years old, married, with two children aged 4 and 1.

## Direct Causes:
1. Installation of 2 Rope Clips instead of 3. Failure to install rope clips correctly.

2. Failure to follow company rule which requires installation of the governor, governor rope, and safeties prior to removing Tirfor.



NICH001225

<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 28

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

## Nichani, Susan

| | |
|---|---|
| From: | Dowson, Patrick A |
| Sent: | Friday, September 06, 2002 9:56 AM |
| To: | Axel Moeller; Boris Risnic; Bruce Towill; Carlos Alonso-Pascual; Hideyuki Hirami; Jean-Louis Dillard; Junichi Yano; Susan Nichani |
| Cc: | Andrew Salek; Elaine Pepin; Helio Tinone; John Flynn; Kim LaValley; Pat Blasi; Patrick Dowson; Reese, Danny; Sandra Stott; Tim Beck |
| Subject: | Learn and Live - France |

Please distribute this L&L to all field and factory employees. Kim is posting onto the web today. This serious accident was identical in many respects to the fatal accident in Egypt in 1999.



Learn & Live Final - Paris 200...

Reminder to all directors: Here is a pertinent section from the WWWJSSS:

> Effective 31 December 2000, all Otis Companies must eliminate the use of wire rope clips as part of New Equipment, Modernization, and Service Repair Standard processes and substitute appropriately designed pre-formed slings, shackles, and properly engineered lifting devices. Standard processes included in this ruling are hoisting and hanging of cars, counterweights, machines, controllers, drives, and generators.
>
> Effective 31 December 2001, all Otis Operations must have eliminated the use of U-Bolt wire rope clips for ALL hoisting and rigging activities in repair, modernization, and new equipment. If circumstances require a special sling to be fabricated in the field, a documented Job Hazard Analysis (JHA) and request for deviation must be reviewed and approved by the President or Managing Director. These slings can only be fabricated using Double Saddle clips (or other approved alternative) and installed according to manufacturer's recommendations.

Also here is a February 2002 important communication from Helio related to this topic.



U-bolt-resolution-Feb02.doc

PS: Gien now has code compliant Double Saddle clips in stock for Europe.

Pat

<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 29

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

|          |                                                                                                                                                                                                                                                                                                                          |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| -----Original Message----- | |
| **From:** | Tinone, Helio (WHQ) |
| **Sent:** | Friday, February 01, 2002 1:27 PM |
| **To:** | Maniac, Charles; Casari, Jean Claude; Lamalle, Philippe; Cloux, Jean-Noel; Simonot, Alain; Bonatre, Guillaume; Cuisinier, Jacky; Convard, Emmanuel; Caballero-Garcia, Jose-Juan; Canales-Martinez, Jose; Cano-Torres, Ricardo; Del-Rio, Fernando; Garrido, Alfonso; Echegoyen-Peña, Javier; Auer, Bruno; Gremm, Michael; Horbrügger, Herbert; Corbetta, Roberto; Coffetti, Mauro; Pietrzykowski, Chris |
| **Cc:** | Beck, Tim; Dowson, Patrick A; Chapman, Peter; Dillard, Jean-Louis; Alonso-Pascual, Carlos; Moeller, Axel |
| **Subject:** | Elimination of U-bolts |

I am sending this message in reply to the Otis-2000 CCB request for clarification on the WWJSSS requirement for elimination of U-bolts.

WWJSSS currently requires replacement of U-bolt wire rope clips by mistake-proof alternatives on <u>load-bearing applications</u> on new and modernized equipment. This requirement is in addition to the elimination of U-bolts on all hoisting and rigging applications. The intent is to eliminate the possibility of inadequate placement or tightening of U-bolts.

WWJSSS requires elimination of U-bolts in the following applications:
- **hoisting and rigging**. If pre-manufactured slings are not adequate for the Otis 2000 application, double-saddle clips (or other approved alternative) must be used and installed according to manufacturer recommendations. A documented Job Hazard Analysis (JHA) and request for deviation must be sent for review and approval by WHQ and Area EH&S.
- **fastening of suspension ropes** on new and modernized equipment (i.e. U-bolt terminations must be replaced by wedge rope sockets or other Code approved mistake-proof alternatives)

WWJSSS does **NOT** require U-bolts to be replaced in:
- wedge rope socket applications where the U-bolt is used to secure the **loose end of the rope**. The NAA clip (AAA339NL - Please, refer to attachment) was only **suggested** as a potential mistake proof replacement.



NAA-RopeClip.ppt

- after revision of the initial requirement, it is no longer required to replace U-bolts on **governor rope terminations**.
- other non-critical applications (e.g. door air cords, etc.)

However, consideration of mistake-proof alternatives is still recommended.

Best regards,

Helio Tinone
WHQ - Product and Public Safety
TEL 860-676-5610

<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 30

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

Adler, Jeffrey

| | |
|---|---|
| From: | Scott, Harold |
| To: | Adler, Jeffrey |
| Subject: | FW: Suyata Nichani |
| Date: | Wednesday, February 10, 1999 2:01PM |

Jeff

Also her title should be Sr. Manager.

THANX
HAS

---

From: Scott, Harold
To: Miller, William T. (Otis)
Subject: Suyata Nichani
Date: Tuesday, February 09, 1999 3:39PM

Bill

Per our conversation, the proposed increase for Sue is as follows:

Increase her salary from $94,500 to $108,000 (14.3%)

Raise her grade from 50 to 51

Provide her with a "position allowance" equal to 15% (16,500 for 1999) per year, and such allowance will be adjusted based on merit increase adjustments. If Sue is still in the position after three years, we will evaluate the necessity of continuing the allowance based the rate her total compensation package has escalated. Such allowance will end if:

   she is promoted to an executive position
   she is transferred/promoted to a position that contains an IC component in the total compensation package
   she accepts another position within UTC (it may be necessary for her to receive it in her new position, but it would have to be renegotiated.)

THANX
HAS

OTIS-00072

<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)


# Exhibit 31

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

| Name | Sue Nichani | Title | Manager, Safety |
|---|---|---|---|
| Unit | Otis NAA | Reports to: | VP and Senior Area Executive |

## Key Leadership Competencies

**Creating Shared Vision** — [ ] E  [X] F  [ ] D  [ ] U
- Communicates group's mission
- Establishes mutually agreed objectives
- Openly shares information
- Listens and responds to opinions of others

**Developing People** — [ ] E  [X] F  [ ] D  [ ] U
- Recognizes and promotes best people
- Coaches and develops people
- Designs meaningful challenging assignments
- Committed to career development, EEO and AAP processes

**Empowering Others** — [ ] E  [X] F  [ ] D  [ ] U
- Delegates responsibility and authority
- Encourages prudent risk taking
- Recognizes innovation and imagination
- Acts as "coach", not "player"

**Recognizing Merit** — [ ] E  [X] F  [ ] D  [ ] U
- Gives frequent realistic feedback
- Conducts candid performance evaluations
- Recognizes and rewards risk taking
- Addresses poor performance issues

**Key Leadership Competencies — Summary Assessment** — [ ] E  [X] F  [ ] D  [ ] U

Sue has done a fine job with the safety function in NAA. She has articulated our vision, particularly in fatality prevention, and has effectively managed the UTC and WHQ requirements. She has been effective in developing Deloreto and improving Downs. Sue has also been very frank with her assessment of Naughton and the needs for improvement.

## Key Personal Competencies

**Customer Satisfaction (Internal/External)** — [ ] E  [X] F  [X] D  [ ] U
- Identifies customer requirements
- Meets commitments on schedule
- Responsive to customer's problems
- Provides quality products and services

**Quality, Commitment/Contribution** — [ ] E  [X] F  [ ] D  [ ] U
- Committed to quality improvement
- Emphasizes problem prevention
- Seeks input from customers
- Ensures suppliers conform to requirements

**Technical Expertise** — [ ] E  [X] F  [ ] D  [ ] U
- Uses knowledge base effectively
- Advice and counsel highly valued
- Applies new information quickly
- Keeps technical skills current

**Teamwork** — [ ] E  [X] F  [ ] D  [ ] U
- Strives for organizational results
- Gains cooperation from other people/business units
- Makes team decisions work
- Manages conflict effectively

**Taking Initiative** — [ ] E  [X] F  [ ] D  [ ] U
- Takes calculated risks
- Demonstrates enthusiasm and persistence
- Anticipates and meets others' needs
- Works with little direction

**Building Effective Relationships/Communications** — [ ] E  [X] F  [X] D  [ ] U
- Encourages airing of problems
- Understands customer/supplier relationships
- Keeps others informed
- Respects associates and shares knowledge

execpa.doc
September 1998

Page 1 of 3

OTIS-00121

### Key Personal Competencies — Summary Assessment

☐ ☒ ☐   ☐

Sue has done well to take initiative to help our safety process. Specifically, the tools, management of stand down day, the improvement of the FPA audit are all the result of Sue's initiatives. I suggest that she work on improving relationships with the line VPs to ensure that there is alignment both in goals and tactics to improve performance.

Sue has done very well in all reviews with senior management and managing WHQ safety.

### Key Results

- Identifies and effectively executes key responsibilities of his/her position

  ☐ ☒ ☐   ☐
  E  F  D    U

- Identifies and achieves key business objectives

  ☐ ☒ ☐   ☐

### Key Results — Summary Assessment

☐ ☒ ☐   ☐

Sue is very effective as our safety leader. She has an excellent understanding of the field environment based on her work as supervisor, branch manager and FOD manager. At the same time, Sue is able to deal with the policy deployment from above to ensure that NAA complies with all corporate requirements.

Sue needs to work closely with each region to ensure that there is alignment with her vision. This includes ensuring that her view of her team is consistent with that of the line people that they must serve.

In 2001, Sue must determine how we can improve the retention rate of our training. We spend millions on safety yet in nearly every occasion of a serious accident, we know that the mechanic was trained but did not follow the instuctions. This is a difficult task and we all need to help Sue begin to find this answer.

### Summary Performance Assessment

(Based on evaluation of Leadership Competencies, Personal Competencies and Key Results achieved, indicate an overall level of performance:)

Exceptional ☐    Fully Competent ☐    Developing ☐    Unsatisfactory ☐

### Performance Levels

**Exceptional**

The employee's performance clearly surpasses the fully competent level for this period. The person who reaches this level of excellence does so through truly unique and exceptional application of knowledge, skill, and/or ability

that may be difficult to sustain over time.

**Fully Competent**

The employee's performance is what would be expected of a person who is fully experienced and qualified. The person who reaches this level of performance can be depended upon consistently to attain the expected results.

**Developing**

The employee's performance is in need of development to reach a level that would be expected from a fully competent employee. The person at this level of performance may be leaarning and developing skills or competencies, or may be new to the job, and is displaying those behaviors expected of someone moving in a positive direction toward full competence.

**Unsatisfactory**

The employee's performance does not meet what is required. Performance is unsatisfactory and no recent, significant developmental progress or improvement has been evidenced. Improvement is essential; corrective action planning may be required.

| Appraiser's Signature | Date 12/15/00 | Manager's Signature | Date | Employee's Signature | Date 12/15/0 |