<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 34

to Defendants' Memorandum of Law
in Support of Its Motion for Summary Judgment

Not Reported in A.2d  
1994 WL 324363 (Conn.Super.), 12 Conn. L. Rptr. 96  
(Cite as: 1994 WL 324363 (Conn.Super.))  
**H**

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Hartford/New Britain, at New Britain.  
Matthew BAKELMAN  
v.  
PARAMOUNT CARDS, INC.  
No. CV 93-0457940S.

June 1, 1994.

*MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE*

LAVINE, Judge.

*1 Pursuant to a Motion to Strike dated April 12, 1994, defendant Paramount Cards, Inc. (hereinafter, "Paramount") has moved to strike the First and Fourth Counts of the complaint in this case for failure to state claims upon which relief can be granted.

For the reason stated below, the court grants the motion and orders the First and Fourth Counts stricken.

*Background*

Plaintiff's initial complaint was dated July 28, 1993. The First Count of the initial complaint, alleging a violation of General Statutes § 31-51m, the "whistle-blowing" statute, was ordered dismissed by Judge Berger.

In his revised complaint of March 30, 1994, plaintiff alleges that he was employed by defendant as a sales representative between February 1988, and April 1992, when he was terminated. To summarize and simplify, plaintiff alleges that although an employer-employee relationship existed between him and defendant, defendant refused to classify him as an employee, permitting defendant not to contribute towards plaintiff's social security taxes and fringe benefits and permitting defendant not to withhold income taxes from plaintiff's paychecks. Plaintiff alleges that he contacted the Internal Revenue Service and requested a determination from the IRS if an employer-employee relationship existed, informing defendant that he was doing so. Plaintiff further alleges that the IRS determined that an employer-employee relationship in fact existed between him and the defendant. According to plaintiff, subsequent to plaintiff's request to the IRS that his status be determined, defendant eliminated from his sales route certain income producing accounts. He was subsequently terminated.

In the First Count of the revised complaint, plaintiff alleges that in contacting the IRS, he was exercising his right to free speech and to petition government, both guaranteed by the First Amendment to the United States Constitution. He also alleges that he was exercising his right to freely speak, write and publish his sentiments on all subjects, as guaranteed by Section 4 of Article I of the Connecticut Constitution and his right to apply to those invested with the powers of government for redress of grievances, as guaranteed by Section 14 of Article I of the Connecticut Constitution. Plaintiff alleges that he was dismissed for taking such actions in violation of General Statutes § 31-51q. [FN1] These allegations are almost identical to those made in the stricken First Count of the initial complaint, however, the revised complaint alleges that General Statutes § 31-51q is violated, not § 31-51m, the "whistleblowing" statute.

FN1. General Statutes § 31-51q provides as follows: *Any* employer, *including* the state and any instrumentality or political subdivision thereof, who subjects *any* employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer. (Emphasis added.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



In the Fourth Count, plaintiff essentially alleges that defendant has been unjustly enriched by virtue of its failure to classify plaintiff as an employee and thereby avoid contributing towards plaintiff's social security taxes, vacation pay, sick pay, holiday pay, medical insurance, and other fringe benefits.

The Second and Third Counts, alleging intentional and unintentional infliction of emotional distress, are not at issue.

*Analysis*

*First Count*

*2 The motion to strike is used to test the legal sufficiency of a pleading. *Ferryman v. Groton*, 212 Conn. 138, 142 (1989); Practice Book § 152. In reviewing the legal sufficiency of a pleading, the trial court must "assume the truth of the facts alleged and construe them in the light most favorable to sustaining the sufficiency" of the pleading. *Michaud v. Wawruck*, 209 Conn. 407, 408 (1988). If facts provable under the allegations as set out would support a cause of action or defense, the motion to strike must fail. *Ferryman v. Groton*, supra, 142.

With respect to the First Count, defendant makes three broad arguments. First, defendant argues that because the revised complaint fails to allege infringement of plaintiff's state and federal constitutional rights as a consequence of state action, there is no cause of action. Second, defendant argues that plaintiff was merely exercising his private rights as an aggrieved employee, that therefore his conduct did not relate to a matter of "public concern," and that he thus has no cause of action based on an alleged violation of his constitutional rights. Third, defendant argues that plaintiff's assertion of the claim made in the First Count of the revised complaint is an attempt to circumvent an earlier court ruling dismissing the First Count of the initial complaint on the grounds that the court lacks jurisdiction over actions under the "whistle-blowing" statute, General Statutes § 31-51m. [FN2]

> FN2. Defendant's argument is that plaintiff should be precluded from pursuing the allegations in the First Count of the revised complaint because these allegations essentially recapitulate the allegations made in the First Count of the initial complaint, which was ordered dismissed. In light of the court's ruling, this issue is not discussed in this opinion.

Plaintiff's first argument is based on the assumption that § 31-51q does not protect against a private employer's infringement of a private employee's state and federal constitutional rights. Neither the plain language of the statute nor its legislative history support defendant's restrictive reading.

By its plain meaning, the language of the statute clearly applies to "any" employer or "any" employee. Common sense must be used in the construction of a statute where the language is clear and unambiguous. *Demar v. Open Space and Commission*, 211 Conn. 416, 425-26 (1986). Moreover, § 31-51q is a remedial statute, enacted to provide protection for vitally important free speech and free expression rights guaranteed by the state and federal constitutions. Remedial statutes are to be liberally construed in favor of those the legislature intended to benefit. *Hinchcliffe v. American Motors Corp.*, 184 Conn. 607, 615 n. 4 (1981). This ought to be particularly so in the area of protected expression. The legislative history of § 31-51q, as recited in the Plaintiff's Objection to Defendant's Motion to Strike dated April 12, 1994, supports this reading of the statute. This court agrees with the reasoning of Judge Corradino, who faced the same issue in *Olson v. Accessory Controls & Equipment Corp.*, 9 CSCR 262 (March 21, 1994). As stated by Judge Corradino:

> The question is not whether a plaintiff can sue a private party for infringement of state and federal free speech constitutional rights but whether a state by statute can confer on an individual the right to sue a private party for the same type of infringements that it would be illegal for the state or federal governments to engage in. The answer is why not--the state in passing a statute like § 31-51q is not *per se* extending the ambit of the state or federal constitution but in effect using those documents and the case law interpreting the constitutional provisions for the purpose of defining the scope or ambit of rights created by a statute meant to provide a cause of action against private parties.

*3 In this court's view, the legislature intended to create a cause of action permitting employees to bring suit against private employers engaging in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d  
(Cite as: 1994 WL 324363, *3 (Conn.Super.))

Page 3

conduct prohibited by the statute when it enacted § 31-51q.

The defendant also argues that plaintiff has failed to allege that the conduct alleged in the revised complaint relates to a "matter of public concern" as that term of art is used in the relevant precedents. The court agrees.

The case law makes it clear that in order to show that constitutionally protected rights are at issue, a plaintiff must allege that in engaging in the speech at issue the plaintiff was exercising his or her rights as a citizen with respect to a "matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146-148 (1982). Whether an employee's speech "addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id., 147-148. The issue to be addressed is not simply whether the subject matter of the employee's complaints touches on a matter of public concern generally; the issue is whether acting as he did, an employee was acting as a citizen attempting to speak out on a public issue, or whether the employee was instead attempting to resolve a private dilemma relating to employment. [FN3]

> FN3. In the court's view, the use of the nomenclature "matter of public concern," which has evolved from the case law, should be modified, as it has an unfortunate tendency to confuse the issues being analyzed by the courts in cases of this sort. The use of this shorthand term tends to erroneously suggest that the inquiry is solely focused on whether the plaintiff was exercising rights on a matter as to which the public is interested. Court rulings that a plaintiff was not acting on a "matter of public concern," as that term of art is used, might have a tendency to be misunderstood and to erroneously lead to the impression that courts are minimizing the importance of full and robust discussions of many issues of importance to the public. In fact, the inquiry is broader, focusing on whether a plaintiff, in acting as he or she did, was acting as a citizen pursuing a public issue, or acting instead as a private employee pursuing private interests. Perhaps references to this prong of the inquiry should be modified to ask "Was plaintiff acting as a citizen in pursuit of an issue of public concern?" or some other similar question.

In the instant case, there is nothing to indicate in the allegations of the revised complaint that in taking the actions alleged plaintiff was doing anything other than attempting to resolve a private, employment dilemma with defendant. See *Connick v. Myers,* supra, 147; *Vince v. Worrell,* Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. CV No. 319386 (July 14, 1992). This ruling should not be read as meaning that the court concludes that the issues raised by plaintiff are not of concern to the public. They manifestly are. The court has simply concluded that, as set out in the revised complaint, plaintiff has failed to adequately allege that he was acting as a citizen pursuing a "matter of public concern" as that term is used in the cases.

*Fourth Count*

Defendant also moves to strike the Fourth Count of the revised complaint, which purports to state a cause of action for unjust enrichment based upon defendant's failure to classify plaintiff as an employee.

Plaintiff has brought to the court's attention no case law or statutory law recognizing a cause of action for wrongful discharge based upon an unjust enrichment theory.

In the absence of any such authority, the motion to strike the Fourth Count is granted as this count fails to set forth a recognized cause of action.

*Summary and Conclusion*

The court concludes that § 31-51q provides a cause of action to private employees alleging violation of their rights pursuant to the state and federal constitutions, however, the court finds that plaintiff has failed to allege that his actions were undertaken by him acting as a citizen in pursuit of matters of public concern. The motion to strike the First Count is therefore granted. The motion to strike the Fourth Count is granted because plaintiff has attempted to plead a cause of action not recognized in this state.

1994 WL 324363 (Conn.Super.), 12 Conn. L. Rptr. 96

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

