1 of 1 DOCUMENT

JANE CARDONA, Plaintiff -against- AETNA LIFE & CASUALTY, Defendant.

No. 3:96CV1009(GLG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1998 U.S. Dist. LEXIS 7246*

**May 8, 1998, Decided**

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment [Doc. # 9] as to Counts Two and Three of Plaintiff's Complaint GRANTED and Defendant's Motion for Summary Judgment as to Count One DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JANE A. CARDONA, plaintiff: Lawrence Heath Dickson, Weber & Marshall, New Britain, CT USA.

For AETNA LIFE & CASUALTY COMPANY, defendant: Albert Zakarian, Ronald A. Gonzalez, Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT.

**JUDGES:** GERARD L. GOETTEL, United States District Judge.

**OPINIONBY:** GERARD L. GOETTEL

**OPINION:**

Memorandum Decision

This age discrimination case is brought by plaintiff, Jane Cardona, who at the age of fifty-seven, was terminated by her employer of forty years, defendant Aetna Life Insurance Company. n1 Plaintiff alleges claims under the Age Discrimination in Employment Act, *29 U.S.C. § § 621* et seq. ("ADEA"), and state-law claims for breach of an implied contract, and promissory estoppel. Defendant Aetna has moved for summary judgment on all counts of plaintiff's complaint. Aetna maintains that plaintiff's job was eliminated for business reasons, as part of a corporate downsizing and reorganization, and that plaintiff was not chosen for a position in the restructured organization [*2] because she was judged be one of the least qualified based upon objective, non-discriminatory factors. Plaintiff, on the other hand, asserts that there was no reduction in force within her unit and that she was as qualified or better qualified for the position than other candidates. For the reasons discussed below, defendant's motion will be granted in part and denied in part.

n1 Defendant's correct corporate name is Aetna Life Insurance Company.

Background

From June, 1954, until December, 1993, plaintiff was employed by Aetna in its pension division, most recently as a customer service representative in the customer service 800 # unit n2 of the benefit payments department. In this position, plaintiff serviced the needs of participants in Aetna's deferred-income retirement plans, who might, for

example, require assistance in changing electronic wire transfer instructions, in changing the withholding tax, or in correcting the amount of the payments that they were receiving. Her job included taking calls on [*3] the "1-800" line.

>   n2 Plaintiff refers to this as the payee services unit.

In late November, 1993, Aetna made a business decision to contract out to an independent firm the defined benefits actuarial consulting business. This had an impact on what Aetna describes as the "customer service/client team," of which plaintiff was a part. n3 Plaintiff, however, denies that such a team ever existed and maintains that the outsourcing of the actuarial consulting business should not have impacted on her customer services unit, since she and her co-workers dealt with existing participants' needs. Rather, according to plaintiff, at least within her department, it only affected the calculation accounts analysts in the calculation accounts unit, who worked with corporate clients of Aetna to establish group pension plans for their employees. Three positions in the calculations accounts unit were eliminated. Nevertheless, Aetna lumped together the two units in plaintiff's department and required all eleven non-management employees [*4] to be evaluated for the eight positions in the reorganized group based upon a candidate comparison worksheet ("CCW") completed by supervisors with firsthand knowledge of the employee's performance. Of the eleven employees evaluated, plaintiff received the second lowest rating.

>   n3 Aetna states that in early February, 1993, following a department reorganization, the customer services 800 # unit became part of the customer service/client team.

On December 10, 1993, Aetna informed plaintiff that she would "no longer have a position" with the company. She was told that this was due to "reengineering, reorganization and/or staff reduction." Plaintiff states that her position was not eliminated. There were eight customer service representative positions before the "reorganization" and eight after. Furthermore, she states that her position was almost immediately staffed with a younger man in his mid-twenties, who had previously been with Aetna in another area and had to be trained for plaintiff's position. She states [*5] that her unit was still supervised by the same people, continued to have the same job functions, and that no duties or job titles were changed. Two other people who were terminated were also over forty years of age. Plaintiff states that they, too, were told that their jobs were being eliminated when, in fact, they were replaced by younger workers from another unit. n4 Only one employee over forty was retained.

>   n4 The three customer services representatives that were terminated were all in their late 50's and early 60's. The three replacements were all from another unit and were in their 20's and early 30's.

Until 1991, plaintiff received consistent performance evaluations of "meets requirements" or better. She complains that she was not formally evaluated for the years 1992 or 1993, and that this lack of formal evaluations "handicapped" her ability to compete for the "reorganized" positions. Unsigned performance evaluations for these years were mailed to her home after her termination. Plaintiff alleges that [*6] defendant also violated its written progressive discipline procedures (warnings, probation, suspension) in terminating plaintiff without any prior warnings or discipline. She also maintains that her rating on the CCW directly contradicted her last written performance evaluation.

Plaintiff's last day of work was December 10, 1993. She received her regular pay until March 17, 1994, and continued to receive compensation at 100% of her salary and benefits until March 17, 1995.

Plaintiff filed a charge of discrimination and, on March 8, 1996, received a notice of the right to sue from the Equal Employment Opportunity Commission. This lawsuit followed.

Discussion

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *Rule 56(c), Fed. R. Civ. P.* The burden of demonstrating the absence of a genuine dispute as to a material fact rests with the party seeking summary judgment. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).* In assessing the

record to determine whether there are any genuine issues [*7] of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)*.

Count I -- Violation of the ADEA

Under the ADEA, an employer may not discharge an employee because of her age if that employee is at least forty years of age. *29 U.S.C. §§ 623(a)(1), 631(a)*; see also *Hazen Paper Co. v. Biggins, 507 U.S. 604, 609-10, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993)* (noting that Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes. Thus, the ADEA commands that employers are to evaluate older employees on their merits and not their age). Claims under the ADEA are analyzed in the same manner as claims under Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. §§ 2000e* et seq. See *Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997)*.

Under the traditional burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792,* [*8] *802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, in order to establish a prima facie case of discriminatory discharge in violation of the ADEA, plaintiff must show, through direct or circumstantial evidence: (1) that she was within the protected age group; (2) that she was qualified for the position; (3) that she was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *Burger v. New York Institute of Technology, 94 F.3d 830, 833 (2d Cir. 1996)*. An ADEA plaintiff is not required to show that she was replaced by a younger employee. *Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994)*. The burden that an employment discrimination plaintiff must meet to defeat a motion for summary judgment at the prima facie stage is de minimis. *McLee, 109 F.3d at 134*.

Once the plaintiff has presented a prima facie case of discrimination, the defendant has the burden of articulating a legitimate, non-discriminatory reason for its actions. *Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997)*. The employer's burden is one of production, not persuasion. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125* [*9] *L. Ed. 2d 407, 113 S. Ct. 2742 (1993)*. If the employer articulates an age-neutral reason, in order to defeat a summary judgment motion, the plaintiff must then present admissible evidence from which a rational factfinder could infer that the defendant's employment decision was false or unworthy of belief and that its decision, more likely than not, was based in whole or in part on age. *Stern, 131 F.3d at 312; Woroski, 31 F.3d at 109; Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir. 1997)* (en banc), cert. denied, U.S. , *139 L. Ed. 2d 752, 118 S. Ct. 851 (1998)*.

In light of the ease with which a plaintiff can establish a prima facie case of discrimination and an employer can point to downsizing to justify any termination, ADEA suits arising out of a reduction in force often turn on whether the plaintiff has established that the rationale offered by the defendant was a mere pretext for age discrimination. *Viola v. Philips Medical Systems of North America, 42 F.3d 712, 716 (2d Cir. 1994)*. The court must analyze the evidence, along with all reasonable inferences, and decide if it raises a jury question as to whether the plaintiff was the victim [*10] of discrimination. *Fisher, 114 F.3d at 1347*.

In this case, defendant initially argued that plaintiff has failed to meet her prima facie burden, although it appears that defendant may have abandoned that argument in its reply brief. In any event, we find that plaintiff has clearly met this de minimis burden. She was over forty years of age at the time of her termination. She was terminated. For almost forty years with Aetna, she had received satisfactory performance evaluations, and had been serving in the very position for which she was being evaluated. Although defendant contends she was one of the lesser qualified, defendant does not argue that she was unqualified. Thus, we find that she has carried her prima facie burden of showing that she was qualified for the position. n5 The last element of plaintiff's prima facie case is whether there is evidence giving rise to an inference of age discrimination. In making this determination, the Court must decide whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational factfinder to infer a discriminatory motive. *McLee, 109 F.3d at 135*. Plaintiff has provided a sworn affidavit [*11] that she was replaced by a younger worker who had no experience doing the type of work required by plaintiff's position. She has testified that the three employees who were terminated were in their late fifties and early sixties and that all were replaced by employees from outside their unit who were in their twenties and thirties. Plaintiff also testified that her supervisor made stereotypical comments relating to plaintiff's age to her. Plaintiff's sworn statements are sufficient to permit a rational trier of fact to infer that age was a factor in her discharge. See *Cronin v. Aetna Life Insurance Company, 46 F.3d 196, 204 (2d Cir. 1995)* (holding that "a finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing such a reorganization or reduction, the employer has located new position for younger, but not older, employees"); see also *Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995); Viola, 42 F.3d at 716*.

n5 Plaintiff has also provided memoranda from her personnel file which commend her for her performance. In 1989, plaintiff was recommended for a consulting position as part of a reorganization because "she has a lot to offer." The memo also notes that plaintiff was noted for her "strong technical plan knowledge" and that she would be involved in training new employees.

[*12]

Once the plaintiff meets her prima facie burden, the defendant must then proffer a legitimate, non-discriminatory reason for plaintiff's discharge. *Viola, 42 F.3d at 717*. In this case, Aetna asserts that her termination was brought about by a down-sizing and reorganization, as part of which plaintiff was selected for termination based upon a non-discriminatory assessment of her qualifications in comparison to other members of the department.

Once an employer has produced evidence of a non-discriminatory rationale for its actions, the factual inquiry proceeds to a new level of specificity. Id. (quoting *St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 516*). To defeat a properly supported motion for summary judgment, plaintiff must produce sufficient evidence to support a rational finding that the employer's proffered nondiscriminatory reason was false and that discrimination was the real reason. *Fisher, 114 F.3d at 1339*. Plaintiff need not show that age was the only reason she was terminated, only that age was a substantial factor in the decision. *Burger, 94 F.3d at 833; Levin v. Analysis & Technology, Inc., 960 F.2d 314, 317 (2d Cir. 1992)*. At this summary judgment [*13] stage, this Court is not to resolve factual issues; we are only to determine whether there are issues of fact to be tried. *Cronin, 46 F.3d at 203*. Moreover, we are required to view the record as a whole and to draw all permissible factual inferences in favor of the plaintiff. *Stern, 131 F.3d at 313-14*.

Plaintiff's affidavit raises genuine issues of material fact as to whether involving her unit in the "reorganization" was a pretext for discrimination. She states that the number of positions did not change, nor did the job functions, nor the supervisory responsibility. Rather, the positions that were eliminated were from another unit, which was affected by the out-placement of the actuarial services, and that younger employees from that unit, who had no training or experience as customer service representatives, were brought in to replace plaintiff and two other older workers. Additionally, at this stage of the proceedings, where the Court's function is not to decide factual issues, but simply to determine whether they exist, we cannot hold that there are no genuine issues of fact concerning whether plaintiff was chosen for termination because of her qualifications or whether [*14] her age was a substantial factor. Thus, we hold that plaintiff has produced sufficient evidence of pretext to defeat defendant's motion for summary judgment as to her ADEA count.

II. Breach of Implied Contract

Plaintiff's second count is for breach of implied contract. Plaintiff asserts that Aetna failed to follow its own written procedures in connection with her termination and failed to provide her with formal written performance evaluations for the last two years of her employment. She further alleges that Aetna failed to treat plaintiff with good faith and with fair dealings in the same manner as it had with other employees, and in failing to make staffing decisions in a manner that excluded age as a basis.

Under Connecticut law, contracts of employment are terminable at will. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 15, 662 A.2d 89 (1995)*. Although the rule of employment at will can be modified by an agreement of the parties, to prevail on this claim, a plaintiff must prove that the employer had agreed, either by words or action or conduct, to undertake some form of actual contractual commitment under which the employee could not be terminated [*15] without just cause. Id. Relying on a company handbook entitled "Working With You," plaintiff asserts that contractual promises were made by Aetna regarding the way performance appraisals would be performed and the process for termination.

On a motion for summary judgment, the threshold question of whether a personnel manual or employee handbook gives rise to an enforceable contract, interpreting all inferences in a light most favorable to the plaintiff, is a question of law for the Court. *Valenti v. Carten Controls Inc., 1997 U.S. Dist. LEXIS 19722, No. 3:94CV1769(AHN), 1997 WL 766854 (D. Conn. Dec. 4, 1997); Manning v. Cigna Corp., 807 F. Supp. 889, 893 (D. Conn. 1991)*. Although representations in an employee handbook may under certain circumstances give rise to an express or implied contract between an employer and employee, *Finley v. Aetna Life and Casualty Co., 202 Conn. 190, 199, 520 A.2d 208 (1987)*, rev'd on other grounds by *Curry v. Burns, 225 Conn. 782, 626 A.2d 719 (1993)*, in this case the employee handbook contained an explicit disclaimer.

> This handbook is presented for your general information and guidance only, and contains a summary of Aetna's current guidelines for supervisors [*16] and managers, which may be changed, in whole or in part, at any time, with or without notice. While Aetna believes wholeheartedly in the policies and procedures described herein, the handbook is not intended to create, nor should you interpret it to be, a contract or agreement of any type between the company and you.

The Connecticut Supreme Court in Finley noted "by eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals." *202 Conn. at 199 n.5.* Numerous Connecticut state court decisions have held that contract claims based upon the terms of an employee handbook must fail if the handbook contained an effective disclaimer. See, e.g., *Marfiak v. Blue Cross and Blue Shield of Connecticut, Inc., 1997 Conn. Super. LEXIS 2997, No. CV 940368007S, 1997 WL 724514* (Conn. Super. Nov. 3, 1997); *Schain v. Blue Cross Blue Shield of Connecticut, Inc., 1996 Conn. Super. LEXIS 2762, No. CV 930349216, 1996 WL 634286* (Conn. Super. Oct. 21, 1996). The disclaimer in the Aetna handbook is clear and unequivocal. It was located on [*17] the second page of the handbook, and although not labeled a "disclaimer," it was sufficiently obvious as to be readily observable to any employee reviewing the manual. See *Smith v. Shoreline Care Ltd., 1996 Conn. Super. LEXIS 1343, No. 36 02 06, 1996 WL 365015* (Conn. Super. May 17, 1996). No contract, express or implied, was created by the handbook.

Plaintiff also asserts that an implied contract arose by virtue of defendant's usual and customary practice of using progressive discipline procedures with other employees before termination. The Connecticut Court of Appeals rejected a similar claim in *Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725, 673 A.2d 573,* cert. denied, *237 Conn. 913, 675 A.2d 885 (1996).* In that case the plaintiff argued that the defendant's routine and customary use of the same progressive disciplinary procedures imparted an understanding to its employees that those procedures would always be used, and that this understanding was sufficient to create a "meeting of the minds" for purposes of creating an implied contract. The court rejected plaintiff's argument, stating "contracts are not created by evidence of customs and usage." *40 Conn. App. at 732* (internal citations [*18] and quotations omitted). "The plaintiff's belief that he had an employment contract with the defendant, without more, is insufficient to sustain an implied contract claim." Id. Finding that there was a lack of factual predicate supporting the plaintiff's feelings and beliefs that an implied contract existed, the court upheld the grant of summary judgment in favor of the employer. *Id. at 733.* Moreover, progressive discipline procedures normally apply in cases in which an employee is terminated for cause, which is not the case here. Thus, we decline to find that an implied contract arose from the defendant's conduct.

Plaintiff also alleges that defendant breached an implied covenant of good faith and fair dealing existing between the parties by virtue of their implied contract by making staffing decisions based upon age. Connecticut courts have recognized that "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz v. Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992).* To establish a claim for breach of an implied covenant of [*19] good faith and fair dealing where the employment is terminable at will, plaintiff must establish that her dismissal was for a demonstrably improper reason, the impropriety of which is derived from a violation of some important public policy. *Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 550 n.4 (D. Conn.),* aff'd, *104 F.3d 355 (2d Cir. 1996).* Plaintiff has alleged that her termination was because of her age, which, if true, would violate an important public policy embodied in the ADEA. However, because plaintiff already has an adequate means for vindicating that public policy, this Court will not recognize a separate claim for breach of a covenant of good faith and fair dealing. *Bennett v. Beiersdorf, Inc., 889 F. Supp. 46, 49 (D. Conn. 1995).* As this Court held in Bennett, the public policy against age discrimination in employment cannot justify a claim based upon a breach of the covenant of good faith and fair dealing because there are already sufficient statutory remedies. Id. Therefore, we grant defendant's motion for summary judgment as to the second count of plaintiff's complaint.

Count III -- Promissory Estoppel

Like the second count, [*20] plaintiff's third count for promissory estoppel is premised upon the alleged "promises" set forth in the employee handbook. Under a promissory estoppel theory, a plaintiff may maintain a cause of action for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance

Case 3:02-cv-01384-MRK    Document 97-2    Filed 06/28/2005    Page 6 of 6

Page 6
1998 U.S. Dist. LEXIS 7246, *

is undertaken in reasonable reliance on the promise. *Finley, 202 Conn. at 205.* A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213-14, 520 A.2d 217 (1987).* As the Connecticut Supreme Court held in D'Ulisse-Cupo, "we agree with the defendant[] that these representations do not invoke a cause of action for promissory estoppel because they are neither sufficiently promissory nor sufficiently definite to support contractual liability." *Id. at 214.* As discussed above, given the disclaimer in the handbook, the statements contained therein do not manifest a present intent on the part of defendant to undertake immediate contractual obligations to plaintiff. See [*21] *Id. at 214-15.* Therefore, we find that there are no genuine issues of material fact regarding plaintiff's claim of promissory estoppel, and hold that defendant is entitled to judgment as a matter of law on the third count of plaintiff's complaint.

Conclusion

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment **[Doc. # 9]** as to Counts Two and Three of Plaintiff's Complaint and DENIES Defendant's Motion for Summary Judgment as to Count One.

The Court further notes that this case has been pending for nearly two years. The parties should immediately begin preparation for trial. A notice of pretrial conference will be issued forthwith.

SO ORDERED.

Date: May 8, 1998.

Waterbury, Connecticut.

GERARD L. GOETTEL,

United States District Judge