LEXSEE 2004 U.S. DIST LEXIS 25443

ROBERT J. FELEKEY Plaintiff, v. AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, Defendant.

Civil Action No. 3:02-CV-691 (CFD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 25443

November 3, 2004, Decided

**DISPOSITION:** Defendant's motion to dismiss complaint granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For ROBERT J. FELEKEY, Plaintiff: William T. Shea, Shea & Cook, P.C., Meriden, CT.

For AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Defendant: Eric L. Sussman, Victoria Woodin Chavey, Day, Berry, Howard, Hartford, CT; Richard C. Tynan, Halloran & Sage, Hartford, CT.

**JUDGES:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CHRISTOPHER F. DRONEY

**OPINION:**

RULING ON MOTIONS TO DISMISS

The plaintiff, Robert Felekey ("Felekey"), brought this action against the defendant, American Telephone and Telegraph Company ("AT&T"), in the Superior Court of Connecticut, alleging state common law claims related to AT&T's termination of his employment. AT&T removed the action to the United States District Court for the District of Connecticut on the basis of diversity of citizenship of the parties. See *28 U.S.C. § § 1441* and *1446*. Pending is AT&T's motion to dismiss all four counts of the complaint. For the following reasons, the motion [**Doc. # 8**] is **GRANTED** as to Counts One and Four, and **DENIED** as to Counts Two and Three.

I. Facts

In the complaint, Felekey alleges that he worked as a salesperson at AT&T from 1979 to 1999. Felekey [*2] alleges that when he first began his employment with AT&T, management made oral or written representations to him concerning the stability of his employment if he accepted a job with AT&T. In addition, Felekey alleges that AT&T, through its agents, servants and employees, further represented that he would not be terminated except for just and reasonable cause. Felekey contends that he accepted his employment with AT&T in reliance on these oral and written representations.

Over the course of his twenty years with AT&T, Felekey maintains that had an excellent work history and consistently received high job performance evaluations. In January 1996, Felekey was transferred to Connecticut to serve as a Client Business Manager and was assigned the responsibility of selling AT&T services to the ITT Corp. on a world-wide basis. In 1998, Felekey finalized a four-year, $ 39,000,000 annual sales contract with Starwood Hotels and Resorts, the successor corporation to ITT Corp. Felekey alleges that, although he was due a $ 82,000 sales commission from that contract pursuant to an agreement between the parties, he only was paid $ 6,000. Felekey questioned the amount paid to him, and initiated an [*3] in-house appeal of that award. That appeal was never acted upon by AT&T, and Felekey alleges that he never received the full amount due.

Felekey alleges that as of January 1, 1999, he was the highest paid employee in the Farmington, Connecticut office of AT&T. On January 12, 1999, Felekey was informed that his position was being eliminated. Felekey alleges that he was not given any reason for the elimination of his position. On March 1, 1999, Felekey was transferred to the AT&T Solutions

department, which reported to the corporate headquarters in New Jersey. Despite this transfer, Felekey was allowed to keep his office and personal residence in Connecticut. On September 22, 1999, Felekey was informed that he was being assigned to the AT&T Performance Improvement Program ("PIP") for 60 days, backdated to August 25, 1999. The PIP is an internal monitoring program designed to review employees whose job performance was questionable. At approximately the same time he was assigned to the PIP, Felekey alleges that he received a positive approval rating in his employment review evaluation. Moreover, Felekey alleges that at no time prior to his assignment to the PIP was he ever informed of [*4] a deficiency in his employment performance. On October 15, 1999, Felekey alleges that he was terminated from his employment with AT&T without just cause. Felekey alleges that he was told by AT&T's Human Resources Department that his termination was the result of his performance.

Felekey then brought this four-count action against AT&T in the Superior Court of Connecticut, alleging state common law claims of: (1) wrongful termination; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing under the employment contract between the parties; and (4) intentional infliction of emotional distress. On April 18, 2002, this action was removed by AT&T to this Court. Subsequently, AT&T moved to dismiss the entire complaint, contending that the facts alleged, even if true, fail to state a claim upon which relief may be granted.

## II. Standard for a Motion to Dismiss

It is well-settled that, when considering a *Rule 12(b)(6)* motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See, e.g., *Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991),* [*5] cert. denied, *504 U.S. 911, 118 L. Ed. 2d 548, 112 S. Ct. 1943(1992).* Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991).* "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale-New Haven Hosp., 727 F. Supp. 784, 786 (D.Conn. 1990).* Thus, a motion to dismiss under *12(b)(6)* should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)* (citations and internal quotations omitted), cert. denied, *513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994).* In its review of a *12(b)(6)* motion to dismiss, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference [*6] in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).* n1

> n1 Felekey has attached numerous exhibits to his memorandum in opposition to AT&T's motion to dismiss. In evaluating a *Rule 12(b)(6)* motion to dismiss, however, a district court may not consider matters outside the pleadings without converting the motion into a summary judgment motion. *Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).* As a result, a court has two options when confronted with material outside the pleadings on a *Rule 12(b)(6)* motion: (1) exclude the additional material and decide the motion only on the pleadings, or (2) convert the motion into a summary judgment motion and give both parties the opportunity to present supporting material. *Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000).* Despite the fact that he attached exhibits to his memorandum, Felekey does not appear to wish that this motion to dismiss be converted to a motion for summary judgment. In its reply to Felekey's memorandum, AT&T continues to refer to its motion as a motion to dismiss, and fails to make any claim that it should be converted into a motion for summary judgment. Consequently, the Court will exclude the additional material provided by Felekey, and decide the motion only on the pleadings.

[*7]

## III. Analysis

The Court will address AT&T's challenge to each Count of the complaint separately.

### A) Count One - Wrongful Discharge

In Count One, Felekey alleges that his termination was "wrongful in that said action violated the public policy for timely payment of full wages and compensation or benefits earned for just services embodied in Chapter 58, 814 and 814c of the Connecticut General Statutes." It appears from oral argument that Felekey intended to cite to *Chapter 558 of the Connecticut General Statutes*, which relates to the

payment of wages. The relevant statute in Chapter 558 is Conn. Gen. Stat. § 31-72, which provides in part:

> When any employer fails to pay an employee wages in accordance with the provisions of *sections 31-71a to 31-71i*, inclusive, or fails to compensate an employee in accordance with *section 31-76k* or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full [*8] amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action.

AT&T maintains that, because § 31-72 provides a remedy for Felekey to recover the compensation he claims is owed, as well as double damages and attorney's fees, a common law claim for wrongful discharge based on a violation of the "public policy for timely payment of full wages and compensation" cannot survive. In response, Felekey contends that, although § 31-72 provides a remedy for his lost compensation, it does not provide a remedy for AT&T's wrongful actions, namely, terminating his employment because he asked to receive that compensation.

Generally, Connecticut follows the rule that employment is at-will and terminable by either the employee or the employer for any reason. *Fisher v. Jackson*, 142 Conn. 734, 736, 118 A.2d 316 (1955). The Connecticut courts have recognized an exception to that rule, however, and allow an at-will employee to bring an action for wrongful discharge where the "employee can prove a [*9] demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980). However, such an action is disallowed where the plaintiff has an available statutory remedy. See *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 162, 745 A.2d 178 (2000) (statutory remedy set forth in § 31-51(b) precluded common law wrongful discharge claim); *Campbell v. Town of Plymouth*, 74 Conn.App. 67, 73, 811 A.2d 243 (2002) (wrongful discharge claim precluded by statutory remedy); see also *Mauro v. Southern New England Telephone*, 208 F.3d 384, 388 n.3 (2d Cir. 2000) (noting the relevant rule in *Connecticut*); *Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D.Conn. 2002) (applying Burnham rule to claim for wrongful discharge); *Blantin v. Paragon Decision Resources, Inc.*, 2004 U.S. Dist. LEXIS 17605, No. 3:03CV2162, 2004 WL 1964508, at *1 (D.Conn., Aug. 31, 2004) (same); *Carvalho v. International Bridge & Iron Co.*, 2000 U.S. Dist. LEXIS 4419, No. 3:99CV605, 2000 WL 306456 at *5 (D. [*10] Conn., Feb. 25, 2000) (same). As the Connecticut Appellate Court has explained:

> "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated."

*Atkins v. Bridgeport Hydraulic Co.*, 5 Conn.App. 643, 648, 501 A.2d 1223 (1985) (quoting *Wehr v. Burroughs Corporation*, 438 F. Supp. 1052, 1054 (E.D.Pa. 1977)). The statutory remedy bars the wrongful termination action regardless of whether a plaintiff has taken advantage of the existing statutory remedy. *Burnham*, 252 Conn. at 159-62; see also *Campbell*, 74 Conn.App. at 73-74. Moreover, the wrongful termination action is barred even if the remedies provided by the statute are lesser or narrower than the remedies potentially available [*11] in a tort or contract action. Id.

Count One alleges that AT&T's conduct was "wrongful in that said action violated the public policy for timely payment of full wages and compensation or benefits earned for just services embodied in" the Connecticut General Statutes. In Connecticut, the public policy governing an employer's failure to make "timely payment" of compensation due is addressed by § 31-72, which provides for the recovery of that compensation, plus double damages and attorney's fees. The Court concludes that this statutory remedy precludes Felekey's common law wrongful discharge claim. Consequently, AT&T's motion to dismiss Count One is granted.

B) Count Two - Breach of Contract

Case 3:02-cv-01384-MRK    Document 97-5    Filed 06/28/2005    Page 4 of 7

Page 4
2004 U.S. Dist. LEXIS 25443, *

Count Two alleges that AT&T breached its employment contract with Felekey. More, specifically, it alleges that Felekey's termination constituted a breach of the contract because: (1) it was in direct contradiction to oral and written representations regarding the stability of Felekey's employment with AT&T; (2) it was in direct contradiction with AT&T's written employment policy; and (3) he was terminated without just and due cause. In its motion to dismiss, AT&T claims that there was no [*12] employment contract between the parties, and even if there was, it only created an at-will employment relationship.

This complaint, construed most favorably to Felekey, presents a colorable claim of an express or implied agreement requiring just cause for termination. First, Felekey alleges that his termination violated "oral and written" representations made by agents of AT&T, as well as AT&T's written employment policy. It is well established that under Connecticut law that the default rule of employment-at-will can be modified by the agreement of the parties. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, 234 Conn. 1, 14, 662 A.2d 89 (Conn. 1995)*. To prevail on a claim alleging " 'the existence of an implied agreement between the parties, the plaintiff [bears the] burden of proving by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause.' " Id. (quoting *D'Ulisse-Cupo v. Board of Dir. of Notre Dame High Sch., 202 Conn. 206, 212 n. 2, 520 A.2d 217 (1987))*. Such an [*13] agreement may be based on an employer's representations to the effect that the employee will not be terminated under certain circumstances or except for good cause or that employment will continue as long as certain conditions are met. See *Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 537-38, 733 A.2d 197 (1999)*; *Coelho v. Posi-Seal Int'l, Inc., 208 Conn. 106, 113-14, 544 A.2d 170 (1988)*; *Barry v. Posi-Seal Int'l, Inc., 36 Conn.App. 1, 5-7, 647 A.2d 1031*, cert. denied, *231 Conn. 942, 653 A.2d 822 (1994)*. The existence of such an agreement "is a question of the intention of the parties, and an inference of fact." *Torosyan, 234 Conn. at 15, 662 A.2d 89*.

Although Felekey has not specifically detailed what representations were made to him, or what terms were set forth in the employment policy, he has pled enough to state a claim under the liberal rules of pleading followed in the federal courts. See *Fed. R. Civ. P. 8(a)*. The Court, at this early stage of the proceedings, cannot conclude that Felekey will be unable to show that a contract between the parties modified his [*14] at-will status, thus requiring just cause for his termination. See *Sheppard, 18 F.3d at 150* (a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Burns v. Preston Trucking Co., 621 F. Supp. 366, 371 (D.Conn. 1986)* (denying motion to dismiss when the "complaint, construed most favorably to plaintiff, presented a colorable claim of an express or implied agreement requiring just cause for termination."). Therefore, the Court denies AT&T's motion to dismiss Count Two.

C) Count Three - Breach of the Covenant of Good Faith and Fair Dealing

Count Three alleges that the termination of Felekey's employment was "wrongful in that [it] constituted a breach of the covenant of good faith and fair dealing embodied in the employment contract between the [parties]." In its reply brief in support of its motion to dismiss, AT&T claims that, for the same reasons set forth in response to Count Two, Felekey's complaint fails to identify an underlying contract upon which to base this claim. n2

---

n2 AT&T's original memorandum in support of its motion to dismiss focuses its analysis on the breach of the implied covenant of good faith and fair dealing arising when an employer dismisses an at-will employee for reasons that violate an important public policy. As the Connecticut Appellate Court has explained:

> An at-will employee [is] . . . required to prove that her employment was terminated for an improper reason and that the impropriety derived from a violation of an important public policy. . . . To determine whether a public policy has been violated, courts examine whether the discharge violated any explicit statutory or constitutional provision or contravened any judicially conceived notion of public policy. . . . In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing.

*Carnemolla v. Walsh, 75 Conn. App. 319, 329, 815 A.2d 1251*, cert. denied, *263 Conn. 913, 821 A.2d 768 (2003)*. As noted in the text of this ruling, Felekey has alleged that he was not an at-

will employee, but rather had an employment contract with AT&T that required just cause for his dismissal. Therefore, the Court declines to apply the public policy analysis applicable to cases involving at-will employees. See *Cowen v. Federal Express Corp.*, 25 F. Supp. 2d 33, 37 (D.Conn 1998) (noting that to state a claim for breach of implied covenant of good faith and fair dealing, a plaintiff "must allege either that an enforceable employment contract exists, or that the employer's actions in discharging the employee violated a recognized public policy." [emphasis added]).

[*15]

In Connecticut, "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz v. Condon*, 224 Conn. 231, 238, 618 A.2d 501 (1992); accord *Home Ins. Co. v. Aetna Life Casualty Co.*, 235 Conn. 185, 200, 663 A.2d 1001 (1995); *Feinberg v. Berglewicz*, 32 Conn.App. 857, 862, 632 A.2d 709, 711 (1993); *Gibbons v. NER Holdings, Inc.*, 983 F. Supp. 310, 319 (D.Conn 1997). The Superior Court of Connecticut has stated that:

> An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, [*16] the defendant was acting in bad faith.

*Reznitsky v. Phoenix Systems Integration, LLC*, Judicial District of Fairfield, 2004 Conn. Super. LEXIS 2319, Docket No. CV020395725S, 2004 WL 2039662 (Conn. Super. Ct., Aug. 16, 2004) (quoting Share America, Inc. v. Ernst & Young, Superior Court, Judicial District of Waterbury, Docket No. 150132 (Conn. Super. Ct., July 2, 1999)); *Gregory v. Progressive Ins. Co.*, Judicial District of Hartford, 2004 Conn. Super. LEXIS 1238, Docket No. CV030826713S, 2004 WL 1195491 (Conn. Super. Ct., May 13, 2004).

As noted in the discussion of Count Two, Felekey has alleged that the parties entered into an express or implied contract that modified his status as an at-will employee, and required just cause for termination. Because the Court previously concluded that Felekey has pled enough in Count Two to state a claim for breach of contract, Count Three, to the extent that it relies on that contract, states a claim. Therefore, AT&T's motion to dismiss Count Three is denied

D) Count Four - Intentional Infliction of Emotional Distress

AT&T contends that Felekey has failed to state a claim for intentional infliction of emotional distress. More specifically, AT&T contends [*17] that Felekey "has failed to plead any facts whatsoever to support his bald allegation that AT&T engaged in 'extreme and outrageous' conduct, or that there was any intent to inflict emotional distress." Felekey has not responded to AT&T's argument on this Count. n3

> n3 "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000). At the same time, however, "bald assertions and conclusions of law will not suffice" to withstand a motion to dismiss. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants' motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D.Conn. 2004) (internal quotation marks omitted).

In order to state a claim for intentional [*18] infliction of emotional distress, a plaintiff must establish: (1) that the defendant intended to inflict emotional distress, or that the defendant knew or should have known that emotional distress was a likely result of the defendant's conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Carroll v. Ragaglia*, 292 F. Supp. 2d 324, 344 (D.Conn.

*2003)* (quoting *Whitaker v. Haynes Constr. Co., 167 F. Supp. 2d 251, 254 (D.Conn. 2001))*. It is for the court to determine in the first instance whether alleged conduct of a defendant may, as a matter of law, be found to satisfy the elements of an intentional infliction claim. *Appleton v. Board of Educ., 254 Conn.205, 210, 757 A.2d 1059 (2000); Ancona v. Manafort Bros., Inc., 56 Conn.App. 701, 712, 746 A.2d 184 (2000);* [*19] *Scott v. Town of Monroe, 306 F. Supp. 2d 191, 198 (D.Conn. 2004).*

In regard to the second element, extreme and outrageous conduct, liability has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Bd. of Educ., 254 Conn. 205, 210, 757 A.2d 1059 (2000).* "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." *Brown v. Ellis, 40 Conn.Supp. 165, 167, 484 A.2d 944 (1984);* accord *Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 92 (D.Conn.1998);* 1 *Restatement (Second), Torts § 46 (1965).* Therefore, "termination of employment, even when accompanied by other aggravating factors, does not itself give rise to a claim for the intentional infliction of emotional distress." *Harhay v. Blanchette, 160 F. Supp. 2d 306, 315 (D.Conn. 2001),* reversed partially on other grounds, *323 F.3d 206 (2d. Cir. 2003);* see also *Parsons v. United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997)* [*20] ("The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior."); *Campbell v. Town of Plymouth, 74 Conn.App. 67, 78, 811 A.2d 243 (2002)* (same). Therefore, courts in Connecticut have carefully reviewed claims for intentional infliction of emotional distress in the employment context. *Golnik v. Amato, 299 F. Supp. 2d 8, 15 (D.Conn. 2003)* (citing cases); *Lopez-Salerno v. Hartford Fire Ins., 1997 U.S. Dist. LEXIS 19724, No. 3:97CV273 (AHN), 1997 WL 766890 at *7 (D.Conn., Dec. 8, 1997)* (same); see also *Grigorenko v. Pauls, 297 F. Supp. 2d 446, 448 (D.Conn. 2003)* (noting that "intentional infliction of emotional distress claims are often pleaded but rarely get very far" under the Appleton standard).

The district courts in this district have dismissed claims for intentional infliction of emotional distress that contain only conclusory allegations of extreme and outrageous conduct. See, e.g., *Scott, 306 F. Supp. 2d at 198-99* (granting motion to dismiss when facts pled by plaintiff failed to establish extreme or outrageous conduct); *Golnik, 299 F. Supp. 2d at 16-17* [*21] (teacher failed to state a claim for intentional infliction of emotion distress in action arising out of the termination of his employment); *Grigorenko, 297 F. Supp. 2d at 448* (charge of plagiarism, based on misrepresented evidence, insufficient to state claim); *Harhay, 160 F. Supp. 2d at 315* (termination of employee, even when accompanied by other aggravating factors, does not itself give rise to a claim for intentional infliction of emotional distress); *Draughon v. Montowese Health and Rehab. Center Inc., No. 3:04CV578, 2004 WL 2381735 (D.Conn. Oct. 15, 2004)* ("failing to adequately investigate the validity of a harassment claim before discharging an employee" does not qualify as extreme and outrageous behavior); *Mulkin v. Anixter, Inc., 2004 U.S. Dist. LEXIS 1875, No. 3:03CV901, 2004 WL 288806 (D.Conn. Feb 10, 2004)* (plaintiff's intentional infliction of emotional distress claim dismissed because it didn't meet the "stringent requirements" for such a claim); *Lopez-Salerno, 1997 U.S. Dist. LEXIS 19724, 1997 WL 766890 at *7* (granting motion to dismiss where plaintiff alleged she was terminated so that defendant could avoid giving her long-term disability [*22] benefits). n4

n4 See also, *Johnson v. Chesborough-Pond's USA Co., 918 F. Supp. 543, 551 (D.Conn.)* aff'd *104 F.3d 355 (2d. Cir. 1996)* (granting motion for summary judgment; "While the methods by which [the plaintiff's] performance was reviewed and by which he was eventually terminated may not have been ideal employment practices, they do not constitute 'extreme and outrageous' conduct."); *Ziobro v. Conn. Inst. for the Blind, 818 F. Supp. 497, 502 (D.Conn. 1993)* (granting motion for summary judgment; defendants' conduct in terminating plaintiff not extreme and outrageous, even though formal inquiry exonerated plaintiff and showed her termination to be unjustified and despite evidence of history of animus between the parties).

Even when construed in a light most favorable to Felekey, the defendants' alleged conduct cannot reasonably be characterized as extreme and outrageous. Here, the usual notice pleading is supplemented by the more specific fact pleading required [*23] by the Connecticut courts. See Conn. Prac. Book § 10-20; *Wylie v. City of New Haven, 2003 U.S. Dist. LEXIS 25273, No. 3:02CV313, 2003 WL 23498386( (D.Conn. Feb. 27, 2003)* "Connecticut employs a fact pleading standard rather than a notice pleading standard, and as such requires more detail in pleadings than the federal standard requires"). The complaint alleges that Felekey was substantially underpaid a commission he was entitled to, improperly transferred, not notified of any performance deficiencies and wrongfully terminated. This conduct, even if true, is not sufficient to state a

2004 U.S. Dist. LEXIS 25443, *

colorable claim for intentional infliction of emotional distress.

SO ORDERED this 3rd day of November 2004, at Hartford, Connecticut.

/S/ CFD

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**