LEXSEE 2000 US DIST LEXIS 22178

FELIX GIORDANO, Plaintiff v. GERBER SCIENTIFIC PRODUCTS, INC., ET AL., Defendants

3:99CV00712 (EBB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2000 U.S. Dist. LEXIS 22178

November 14, 2000, Decided
November 14, 2000, Filed

**SUBSEQUENT HISTORY:** *Affirmed, Giordano v. Gerber Sci. Prods., 24 Fed. Appx. 79, 2001 U.S. App. LEXIS 29442 (2d Cir. Conn. 2001).*

**DISPOSITION:** [*1] Defendants' motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Felix Giordano, PLAINTIFF: James S Brewer, West Hartford, CT USA.

For Gerber Scientific Products, Inc, DEFENDANT: David J Elliott, Felix J Springer, Kathleen Ann Shea, Day, Berry & Howard, Hartford, CT USA.

**JUDGES:** ELLEN BREE BURNS, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION:**

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiff Felix Giordano ("Plaintiff" or "Giordano"), has filed this action against his former employer, Gerber Scientific Products ("Gerber"), and various corporate officers thereof. The Complaint was originally brought in thirteen counts, one brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 621-634, and twelve counts, two against each defendant, sounding in intentional and negligent infliction of emotional distress. Defendants filed a Motion to Dismiss, asserting that Plaintiff's common law tort causes of action should be dismissed. In response, Plaintiff agreed not to pursue his intentional infliction of emotional distress claims (Counts 3,5,7,9,11 and 13). The common laws claims [*2] for negligent infliction of emotional distress (Counts 2,4,6,8 and 12) were dismissed by this Court. Accordingly, the sole remaining Count is that brought pursuant to ADEA. Defendant now moves for summary judgment on that Count.

STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from the Complaint, the memoranda of law, the Local Rule 9(c) Statements, and all exhibits, including affidavits and deposition testimony.

Defendant Gerber designs, engineers and manufactures computer automated systems for the sign making and engraving industries. On or about September 15, 1997, Gerber hired Plaintiff, then age 49, into the position of Product Training Manager in the Sales and Marketing Department. The decision to hire Giordano was made by Kenneth Staley ("Staley"), Manager of Marketing, and concurred in by Carol Neilson ("Neilson"), Human Resources Manager, and Edward Killion ("Killion"), Vice President of Sales and Marketing.

In the position of Product Training Manager, Plaintiff reported directly to Staley, and was responsible for the development [*3] and implementation of training programs for employees and users of Gerber's products, including the design and production of support materials

and manuals. As Product Training Manager, Plaintiff was also responsible for directly supervising six Product Trainers.

Pursuant to the job description, the critical skills and abilities required for the job were: excellent organization, communication and presentation skills, speak clearly, hear clearly; ability to manage and motivate employees; ability to make sound policy decisions for the department; and the ability to interface with all levels of management.

During Plaintiff's first three months as Product Training Manager, Gerber's Sales and Marketing Department was in the planning phase of a transition whereby Gerber was shifting the Department's focus from training of the end users of its products to training the individuals involved in the distribution and sales of its products.

Plaintiff spent his first three months at his job creating a Department budget and a written report that assessed the status of and possibilities for the Department. Giordano testified that, during that same time period, his staff continued to perform the [*4] same tasks that they had performed prior to the transition. Accordingly, he testified, he did not as yet perform the duties of directly managing his employees.

Plaintiff's ninety-day review was of high caliber, with ratings of his responsibilities usually being nine out of ten. It was shortly after this time that Plaintiff began directly supervising his staff.

Staley testified that in late December he found it necessary to take a more involved "hands on" approach with Plaintiff's Department. This was because, according to Staley, he found that Plaintiff was having difficulty providing specific, clear objectives to his staff. Giordano also agreed that his engagement with his staff changed dramatically after he submitted his report. Accordingly, in order to assist Plaintiff, for the next few weeks, Staley presided over weekly Department meetings to focus the staff on appropriate priorities. Giordano testified that, after three or four weeks, he advised Staley that he believed Staley's running of the meetings was undermining his management. Staley then turned over the meetings to Plaintiff, advising the staff unequivocally that Giordano was their direct supervisor.

Soon thereafter, [*5] four of Plaintiff's staff members began complaining to Staley with regard to Giordano's lack of management skills, complaining that he was unable to direct them effectively and they were never sure what was expected of them. Over the next months, this was a common theme. One of the staff members even took it upon herself to send Giordano a memorandum, explaining what she saw as his management problems and advising him of what the trainers needed from him. She further offered advice as to how to accomplish this.

As a result, in late December Staley began frequently speaking with and counseling Plaintiff concerning the communications issues that existed between him and his staff and reemphasizing the importance of Plaintiff assuming an active leadership in his Department. Regardless of these meetings, which Plaintiff testified occurred on a daily basis, no improvement was forthcoming, as evidenced by continued complaints, both in person and by e-mails.

Staley accordingly met with the entire staff in early March at which time the trainers complained that Plaintiff continued to be having great difficulties managing and communicating with his subordinates. It was claimed that he was often [*6] unclear as to their job responsibilities and often contradicted himself as to same. The staff advised Staley that they had begun to meet Giordano only in pairs, so they could advise him of his conversations should he change his mind shortly thereafter, because he had forgotten the directives he had given. n1

> n1 Staley also testified that he would give Plaintiff directives, and then find out that Plaintiff did not carry them out. One such directive was to take the training courses on the Gerber products with which he was unfamiliar. Not only did he fail to take the courses, when he did go to them in order to "evaluate his trainers" he was disruptive by asking irrelevant questions. He also continued to reveal Gerber's proprietary information to the attendees.

During this same time frame, in early March of 1998, Neilson also met with Plaintiff's staff, at their request regarding problems they were experiencing with Plaintiff. During these meetings, staff members expressed concern over Plaintiff's inconsistency with [*7] staff expectations, lack of direction and understanding of products, and his disruptive behavior. Neilson informed Staley of her conversations with Plaintiff's staff and the concerns expressed to her.

Resultingly, on or about March 30, Neilson and Staley had a three-hour counseling session with Giordano in yet another attempt to improve his management skills. During this meeting Staley and Neilson discussed the concerns raised by his staff, the need for him to better communicate with his subordinates and to be consistent in his demands, and the importance of assuming a more active leadership by

Case 3:02-cv-01384-MRK    Document 97-7    Filed 06/28/2005    Page 3 of 6

Page 3
2000 U.S. Dist. LEXIS 22178, *

getting involved with projects and setting clear goals for current and future projects. Although Plaintiff asked if he was being terminated and whether his age had anything to do with the situation, both inquiries were answered in the negative. According to Staley's testimony, he still hoped at this time that Plaintiff's lack of management style could improve. He also testified that age was not an issue because there were many managers of younger staff working at Gerber with no difficulty.

Neilson averred that, despite this counseling session and other continuing efforts to advise and counsel [*8] Plaintiff, he continued to exhibit a lack of common sense, poor judgment, and other deficiencies in his management in both her and Staley's view.

Staley prepared Plaintiff's periodic review, to be given to him in May, in which he listed nine of the sixteen categories as "does not meet expectations".

Shortly thereafter, Staley recommended that Gerber terminate Plaintiff's employment because, despite continued counseling, Plaintiff showed no improvement in his ability to manage and Staley did not believe that he would improve his performance as a manager. Neilson and Killion concurred in this recommendation. At the time of his termination, Plaintiff was 50 years old, Staley was 49 years old, Neilson was 42 years old and Killion was 48 years old.

At the time Plaintiff was terminated, no search for a replacement for him had been initiated. Subsequently, more than two months later, a replacement was hired, who was 40 years old.

Plaintiff a complaint affidavit with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC") on or about August 26, 1998. The CHRO reviewed out his complaint due to the facts that: he was [*9] hired at age 49 and terminated at age 50; his job performance as Product Training Manager was deemed by his supervisor to be unsatisfactory and, despite counseling, failed to improve; besides his allegation that age was a factor, there was no other supporting information; and the individuals making the decision to hire him were also the same individuals who made the decision to terminate him. The EEOC adopted these findings.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. *See also Anderson v. Liberty Lobby, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist, "once that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." *Sylvestre v. United States, 771 F. Supp. 515, 516 (D.Conn. 1990)*. [*10]

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id. at 322-23. Accord, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995)*(movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. *Lamontagne v. E.I. DuPont de Nemours & Co., 834 F.Supp 576, 580 (D.Conn. 1993), aff'd 41 F.3d 846 (2d Cir. 1994)*.

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. [*11] . . ." *Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d. 520, 523 (2d Cir.), cert. denied, 506 U.S. 965, 121 L. Ed. 2d 359, 113 S. Ct. 440 (1992)*. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991)*. If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson, 477 U.S. at 249-52* (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor). *See also, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*.

The Second Circuit has held that summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as [*12] a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases

than to commercial or other areas of litigation." *Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).*

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson 477 U.S. at 247-48* (emphasis in original).

### II. The Standard As Applied

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such [*13] individual's age." *29 U.S.C. § 623 (a)(1).* The analytical framework for considering claims alleging wrongful termination is well-established. First, a plaintiff must set forth a *prima facie* case of age discrimination. As first outlined in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973),* a plaintiff must show: (1) that he was within the protected age group; n2 (2) that he was qualified for the position at issue; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. Once a plaintiff has established his *prima facie* case, the burden shifts to the employer which must proffer a legitimate non-discriminatory business rationale for its actions. *Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994).* This burden is one of production, not persuasion. *Reeves, 102 S. Ct. at 2106.*

---

n2 Individuals who are at least forty years old are protected by ADEA. *29 U.S.C. § 631(a)*

---

[*14]

Once this burden is met by offering admissible evidence sufficient for the trier of fact to conclude that the plaintiff was terminated for non-discriminatory reasons, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reasons offered by the employer were pretextual and the true reason for his discharge was discriminatory. *St Mary's Honor Center v. Hicks, 509 U.S. 502, 507-508, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1981). See also Gallo v. Prudential Residential Services., Ltd. Partnership, 22 F.3d 1219, 1225 (2d Cir. 1994).* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), cited in Reeves, 102 S. Ct. at 2106.*

To prevail on a claim of age discrimination, a plaintiff must show that his age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves, 102 S. Ct. at 2105.* [*15] The ultimate question for the fact finder is whether the employer intentionally discriminated, and proof that the employer's proffered reason is "unpersuasive, or even obviously contrived does not necessarily establish that the plaintiff's proffered reason . . . is correct". *St Mary's, 509 U.S. at 524, quoted in Reeves, 102 S. Ct. at 2108.* In other words, "it is not enough . . . to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *St. Mary's, 509 U.S. at 524.*

In the present case, it is beyond cavil that Plaintiff has not met his burden of demonstrating intentional age discrimination. The amount of evidence presented by Gerber to demonstrate non-discriminatory reasons for Plaintiff's termination, supported by Plaintiff's own testimony, is overwhelming. Gerber terminated Plaintiff's employment, not because of his age, but because, despite repeated counseling, Plaintiff continued to have considerable difficulties and deficiencies as a manager. This articulated reason, supported by testimony and considerable documentation, is sufficient to establish the second part of [*16] the McDonnell Douglas analysis. Accordingly, the Court must next ascertain whether Plaintiff has produced any evidence from which a rational jury could find that Plaintiff would meet his ultimate burden of proving intentional age discrimination. This inquiry must be answered in the negative.

Plaintiff has failed to come forward with any credible evidence that he was terminated due to his age. In his Complaint, he offers three reasons which he contends supports his claim. There rumor that one Ron Webster, the former President of Gerber, was "forced out of the company because he was old and forgetful." Because Plaintiff's staff reported that they met in pairs with Plaintiff because he would not always remember the directives he had given, he testified that " [if] someone indicated to [Staley] that I had forgotten something, whatever it may have been, my mind went back to the Ron Webster incident." According to the Plaintiff himself, the only time the subject of his age ever arose was when he raised it with Staley as a possible reason for his problems with his staff. Plaintiff also testified that no one at Gerber ever indicated **in any manner** that his age

Case 3:02-cv-01384-MRK   Document 97-7   Filed 06/28/2005   Page 5 of 6

Page 5
2000 U.S. Dist. LEXIS 22178, *

was [*17] a factor in his termination and that, in fact, Staley "always stated emphatically that his communications with the staff indicated otherwise."

The second reason Plaintiff gives for an age-based termination is that Staley gave him a flashlight for Christmas and allegedly said, "I hope this will help you find your way." Plaintiff initially testified that he "basically took this as an assault on [his] age." However, he then testified that he could not be absolutely certain of his conclusion. A more rational explanation is that Staley was wishing him luck with his new project and his new job. Further, the flashlight was given just weeks after Plaintiff's superior review. It defies credulity to believe that this off-handed remark would have anything whatsoever to do with Plaintiff's termination five months later.

Finally, Plaintiff's third reason for his termination is that his staff was younger than himself and he believes that is what created his problems. As noted above, Staley testified that Plaintiff was the only person to raise this question and he advised Plaintiff that his staff had never indicated any problem in working for an older superior. Staley also advised Plaintiff that [*18] many of the Gerber managers supervised younger staff and it was never a problem.

It is well-settled in the Second Circuit that sheer speculation is insufficient to create a genuine issue of material fact to oppose summary judgment. "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Patently, Plaintiff has failed to meet this standard. n3

---

n3 In his memorandum of law opposing summary judgment, Plaintiff sets forth new reasons for his claim of age discrimination: he did well on his ninety-day evaluation; his termination arose without warning; his staff was younger than he was; Gerber refused to provide him with a letter of recommendation; and he was told that he had an "older" work ethic. These factors also fail to provide the concrete evidence required for intentional age discrimination. Staley explained to Plaintiff on several occasions that it was Gerber's policy not to provide letters of recommendation to a terminated employee. As for the "older" work ethic remark, Staley testified that, first, he did not remember making the comment but that, if he did, he meant that Plaintiff was willing to work nights and weekends at his job, whereas the younger staff did not. However, he also added that he did not understand why Plaintiff felt the need to do this, as his job could have been done in an eight-hour work day. In any event, even if Staley did make the comment, this is still insufficient to defeat summary judgment, in that it was a mere stray remark. *See Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) (stray remarks by employer, without more, does not constitute sufficient evidence to make out case of employment discrimination).

---

[*19]

Finally, the circumstances surrounding Plaintiff's termination provide strong evidence that age discrimination did not play a part in the decision because Plaintiff was hired and then terminated by the identical people after a very short period of employment. In such circumstances, the Second Circuit has said:

> When the same actor hires a person already within the protected class, and then later fires that same person, "it is difficult to impute to him am invidious motivation that would be inconsistent with the decision to hire."

*Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), quoted in *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137. Because Staley and Neilson hired Giordano at age forty-nine and then terminated him nine months later, at the age of fifty, the so-called "same actor inference" applies. The controlling precedent of Grady and Carlton teaches that where the termination is by the same persons who hired the plaintiff and such termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision. [*20] Thus, this "same actor" inference plainly applies to the present case.

Not only were the same actors involved in both the hiring and termination of Plaintiff, they were also in the protected age group themselves. Staley was 49 years old, Neilson was 42 years old and Killion was 48 years old. Where the decision-makers are also in the protected age group an inference may be drawn that there is no age-based animus. *See Richter v. Hook-SupeRx*, 142 F.3d 1024, 1032 (7th Cir. 1998)(while granting summary judgment to an employer in an age discrimination case, court found significant that decision-makers were in protected age group at the time of termination decision).

## CONCLUSION

Inasmuch as Plaintiff has failed to put forth any genuine issues of material fact under the substantive law

of ADEA, the Motion for Summary Judgment [Doc. No. 42] is GRANTED. The Clerk is directed to close this case.

SO ORDERED

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 14th day of November, 2000.