LEXSEE 2003 CONN SUPER LEXIS 2686

Nicole B. Graff et al. v. Kerry O'Connell et al.

CV010095518S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF MIDDLESEX, AT MIDDLETOWN

2003 Conn. Super. LEXIS 2686

September 29, 2003, Decided
September 29, 2003, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** Aurigemma, J.

**OPINIONBY:** Aurigemma

**OPINION:** MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

The defendants, Kerry and Shawn O'Connell, have moved for summary judgment on all counts of the Amended Complaint of the plaintiffs, Nicole Bartner Graff and Andrew Graff on the grounds, *inter alia*, that they are shielded from liability under the so-called *Noerr-Pennington* doctrine because the conduct about which the plaintiff's complain constitutes petitioning a governmental entity for redress.

Allegations of the Complaint

The Amended Complaint dated March 24, 2002 alleges that the plaintiffs suffered emotional distress as a result of complaints made by the defendants or one of them to the state police or town officials concerning the excessive barking by the plaintiffs' dogs and the plaintiffs' illegal operation of a kennel on their property.

Statement of Facts

The defendants have submitted affidavits, deposition transcripts, and certified documents which support a finding of the following facts. The plaintiffs [*2] and defendants live next door to each other in a rural residential zone in the Town of Killingworth, Connecticut. The plaintiffs have admitted to keeping, feeding and housing as many as twenty dogs on their property at one time. The defendants are the closest neighbors to the plaintiffs' property, which consists, in part, of a three-acre fenced-in area with three separate pens that include sheds and other shelters for dogs. Some of the plaintiffs' smaller dogs have been "surgically alter-barked" because, according to the plaintiff, Nicole Graff, "It's not wise to keep the number of dogs I have and have them all be able to bark." See Deposition Transcript of Nicole Graff dated, page 25.

During the first week of January 2000, the defendant Shawn O'Connell inquired of the Town of Killingworth Building Inspector, Richard Leighton, whether a building permit for dog kennels had been issued for the plaintiffs' property. Mr. Leighton referred the question to Cathie Jefferson, the Killingworth Zoning Enforcement Officer. Ms. Jefferson thereafter wrote to Nicole Graff's father, who was the owner of the plaintiffs' property and requested that he contact the Town to discuss whether certain permits [*3] were required for the dog kennels on his property.

After the defendants wrote to the plaintiffs about their barking dogs, Nicole Graff wrote a letter to the defendants in which she stated that she was "sorry that my dogs have been disturbing you" and that she would do her "best to keep the barking to a minimum." Unfortunately, the barking continued and the defendants complained about it to Marianne Smith, the Animal

Control Officer of Killingworth and to the state police. On March 2, 2001, at the request of Smith and Jefferson, the defendants wrote letters to those officials in which they summarized their observations and concerns about the plaintiffs' dogs. Thereafter Kerry O'Connell signed a formal statement for Smith, the Animal Control Officer, complaining about the dogs barking. On March 10, 2001 the Killingworth Animal Control Officer issued a ticket to Nicole Graff for the violation of *Connecticut General Statutes § 22-363*, referred to as the Nuisance Dog statute, which provides:

No person shall own or harbor a dog or dogs which is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance, or, by such barking or [*4] other disturbance, is or are a source of annoyance to any sick person residing in the immediate vicinity. Violation of any provision of this section shall be an infraction for the first offense and such person shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both for each subsequent offense and the court or judge may make such order concerning the restraint or disposal of such dog or dogs as may be deemed necessary.

Nicole Graff paid a fine to dispose of the foregoing charge. On April 4, 2001 at the request of Smith the defendants again summarized in writing their observations and complaints about the excessive barking dogs. Smith issued another summons to Nicole Graff for violation of the nuisance dog statute, *§ 22-363*, on April 4, 2001. Nicole Graff also paid a fine to dispose of this charge.

On April 27, 2001, the Killingworth Zoning Enforcement Officer issued a "cease and desist" order requiring the plaintiffs to "remove all dogs in excess of four." The plaintiffs filed an appeal of that order to the Zoning Board of Appeals. On June 15, 2001 just prior to the hearing before the Zoning Board of Appeals, the plaintiffs filed this action. [*5] Thereafter the Zoning Board of Appeals upheld the cease and desist order and the plaintiffs appealed that ruling to the Superior Court.

Disscussion of the Law and Ruling

Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Connecticut Bank & Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991).* Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980);* a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book § § 17-45, 17-46; *Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984).* [*6] In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Town Bank & Trust Co. v. Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984).* The test is whether a party would be entitled to a directed verdict on the same facts. *Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New Milford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226 (1995).*

Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. *Scinto v. Stamm, 224 Conn. 524, 530, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993); Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1991).* Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." *Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).* [*7]

Counts One through Five are based entirely on the defendants' alleged complaints to the police or town officials. Count Seven is also based on such complaints but further alleges that the defendants showed a videotape of the plaintiffs' barking dogs to "unknown persons."

The defendants assert that they are shielded from liability with respect to the claims set forth in Counts One though Five and the portion of Count Seven which alleges complaints to public officials under the so-called *Noerr-Pennington* doctrine. That doctrine is used to reference a trio of federal antitrust cases, *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), United Mine Workers v. Pennington, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965),* and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961).* The *Noerr-Pennington* doctrine "shields from the Sherman Act [*15 U.S.C. § 1 et seq.*] a concerted effort to influence public officials regardless of intent or purpose." *United Mine Workers v. Pennington, supra, 670.* [*8] The United States Supreme Court has reasoned that "it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and

procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *California Motor Transport Co. v. Trucking Unlimited, supra,* 510-11.

In *Zeller v. Consolini,* 59 Conn. App. 545, 758 A.2d 376 (2000), the Connecticut Appellate Court applied the *Noerr-Pennington* doctrine to immunize the defendants from liability for claims of tortious interference and vexatious litigation after they repeatedly appealed from rulings favorable to the plaintiffs, thereby delaying the plaintiffs' attempts to construct a shopping mall. The Court recognized that the *Noerr-Pennington* doctrine had been widely applied to provide immunity for actions arising out of petitioning local government:

Application of the *Noerr-Pennington* doctrine to the situation in this case--petitioning activity directed at local governments--already [*9] is well established. E.g., *Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 379-84, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991) (city council); *Juster Associates v. Rutland,* 901 F.2d 266, 270-72 (2d Cir. 1990) (city); *Racetrac Petroleum, Inc. v. Prince George's County,* 786 F.2d 202, 203 (4th Cir. 1986) (county zoning board); *Bob Layne Contractor, Inc. v. Bartel,* 504 F.2d 1293, 1296 (7th Cir. 1974) (city zoning board and council). Indeed, many of our own trial courts have applied the *Noerr-Pennington* doctrine in their decisions. E.g., *Roncari Development Co. v. GMG Enterprises, Inc.,* 45 Conn. Supp. 408, 414, 718 A.2d 1025 (1997) (19 Conn. L. Rptr. 237), citing *Connecticut National Bank v. Mase,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 269180 (January 31, 1991); *Abrams v. Knowles,* Superior Court, judicial district of New London at Norwich, Docket No. 95287 (December 4, 1990) (3 Conn. L. Rptr. 9); *Yale University School of Medicine v. Wurtzel,* Superior Court, judicial district of New Haven, Docket No. 275314 (November 9, 1990) (2 Conn. L. Rptr. 813). [*10]

*59 Conn. App. at 552-53.*

The Court in *Zeller* further stated:

Furthermore, failure to apply the *Noerr-Pennington* doctrine aggressively may create a "chilling effect" on the first amendment right to petition in zoning and other matters. See *Ottensmeyer v. Chesapeake & Potomac Telephone Co.,* 756 F.2d 986, 993-94 (4th Cir. 1985). Indeed, such a chilling effect can be a virtual deep freeze when individual citizens not versed in the legal system and without financial resources do not exercise potentially meritorious legal challenges for fear of costly and protracted, retributive litigation from opponents.

*59 Conn. App. at 553-54.*

In multiple jurisdictions, First Amendment *Noerr-Pennington* immunity has been extended to complaints made to agencies with regulatory authority for the activity in question. *Havoco of America, Ltd. v. Hollobow,* 702 F.2d 643 (7th Cir. 1983) (complaints and accusations reported to the Securities and Exchange Commission were privileged); *Eaton v. Newport Bd. of Educ.,* 975 F.2d 292, 77 Ed.Law Rep. 681 (6th Cir. 1992) (lobbying for discharge of school principal was protected [*11] by the *First Amendment*); *Westfield Partners, Ltd. v. Hogan,* 740 F. Supp. 523, 525-26 (N.D.Ill. Jun 19, 1990) (petitioning local zoning board to have thoroughfare vacated as a road is protected by the *First amendment*); *Zavaletta v. American Bar Association,* 721 F. Supp. 96, 98 (E.D.Va. 1989) (communications to other governmental bodies about views on the accreditation of law schools was protected by the First Amendment right to petition); *Forro Precision, Inc. v. International Business Machines Corp.,* 673 F.2d 1045, 1059 (9th Cir. 1982) (the *Noerr-Pennington* doctrine applied to citizen communications with police); *Ottensmeyer v. Chesapeake & Potomac Telephone Company,* 756 F.2d 986 (4th Cir. 1985) (the *Noerr-Pennington* doctrine applied to shield telephone company from liability for its complaints to police).

The *Zeller* Court recognized the "sham" exception to the *Noerr-Pennington* doctrine:

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60-62, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), the court outlined a two part test to define sham [*12] litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *Id.,* 60. Second, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use [of] the governmental process--as opposed to the outcome of that process--as an anticompetitive weapon . . ." (Citations omitted; internal quotation marks omitted.) *Id.,* 60-61. Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form. *Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.,* 858 F.2d 1075, 1082 (5th Cir. 1988), cert denied, 490 U.S. 1047, 109 S. Ct. 1955, 104 L. Ed. 2d 424 (1989).

There are no issues of fact with respect to any "sham" aspect of the defendants' actions here. The plaintiffs have presented no evidence to dispute that Nicole Graff was arrested twice and adjudicated guilty twice for keeping dogs that barked excessively. They

also do not dispute that Killingworth [*13] has issued a cease and desist order against them for keeping an excessive number of dogs. In the only evidence submitted in opposition to the Motion for Summary Judgment, their own deposition transcripts, the plaintiffs admit that during the periods at issue in this case they kept between 9 and 20 dogs on their property. The defendants' complaints about the plaintiffs' dogs were clearly not objectively baseless.

The defendants' complaints to public officials which form the bases of Counts One through Five and a portion of the basis of Count Seven, cannot form the basis of liability under the *Noerr-Pennington* doctrine. Moreover, while the plaintiffs allege in Count Seven that the defendants showed a videotape of their barking dogs to "third persons," the defendants have presented evidence that they showed the videotape only to public officials, and the plaintiffs have presented no evidence to support their allegation that the videotape was shown to third persons. A party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book § § 17-45, 17-46; [*14] *Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984)*. Therefore, summary judgment is hereby entered against the plaintiffs in favor of the defendants on all Counts of the Amended Complaint on the basis of the *Noerr-Pennington* doctrine

The defendants have advanced several additional grounds to support summary judgment in their favor. They argue that to the extent the plaintiffs allege defamation by the defendants as the underlying cause of their emotional distress, their claims must fail because defamation requires 1) a statement of fact, as opposed to opinion, which statement is 2) false. *Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 794, 734 A.2d 112 (1999)*. This court agrees with the defendants. The fact that the plaintiffs had dogs that barked excessively is not false: Ms. Graff was cited for nuisance dogs and admitted the nuisance dog violations by paying fines. The plaintiffs admit that they kept between 9 and 20 dogs on their property. Whether keeping that number of dogs constituted an illegal kennel is a matter of opinion.

The defendants also argue that as a matter of law there was no intentional infliction of [*15] emotions distress by the defendants. In *Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337 (1986)*, the Supreme Court articulated a four-part conjunctive test for the tort of intentional infliction of emotional distress. The plaintiffs must allege and prove that "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Id. at 253*. The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Thomas v. Saint Francis Hospital and Medical Center, 990 F. Supp. 81, 91 (D.Conn. 1998)*. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *Bell v. Board of Education, 55 Conn. App. 400, 410, 739 A.2d 321 (1999)*. [*16] Only where reasonable minds disagree does it become an issue for the jury. *Id.*" *Appleton v. Board of Education, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000)*.

The defendants' conduct in complaining to the police and town authorities about barking dogs on their neighbors' property was not even mildly extreme or outrageous.

For the foregoing additional reasons, summary judgment may enter against the plaintiffs in favor of the defendants.

By the Court

Aurigemma, J.