LEXSEE 2003 US DIST LEXIS 9998

TEBRA HOWARD, Plaintiff, -vs- COMMUNITY ACTION ORGANIZATION OF
ERIE COUNTY, INC., Defendant.

01-CV-0784E(F)

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NEW YORK

*2003 U.S. Dist. LEXIS 9998*

**May 30, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted, defendant's request for attorneys' fees denied, and action dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Tebra Howard, PLAINTIFF: Gregory A Mattacola, Esq, Chiacchia & Fleming, LLP, Hamburg, NY USA.

For Community Action Organization of Erie County, Inc, DEFENDANT: Adam W Perry, Esq Temp, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY USA.

For Community Action Organization of Erie County, Inc, DEFENDANT: Lester G Sconiers, Sconiers & Sconiers, Niagara Falls, NY USA.

**JUDGES:** JOHN T. ELFVIN, S.U.S.D.J.

**OPINIONBY:** JOHN T. ELFVIN

**OPINION:**
MEMORANDUM and ORDER n1

   n1 This decision may be cited in whole or in any part.

Howard asserts claims for alleged violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.*, the Equal Pay Act ("EPA"), *29 U.S.C. § 206(d)*, Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000 et seq.*, New York Executive Law § 290 et seq. n2 and *New York Labor Law § 194*. Howard [*2] alleges that she is paid less than a male co-worker with the same responsibilities by defendant Community Action Organization ("CAO"), which operates Community Action and Head Start programs in Erie County. CAO filed a motion for summary judgment on February 3, 2003.

   n2 Also known as New York's Human Rights Law.

Howard was hired by CAO as a teacher's assistant in 1989. CAO promoted her to the position of Administrative Assistant for Data Entry at the Southtowns Head Start Program on September 21, 1998 at an annual salary of $ 22,000. As discussed in her EEOC charge, Howard's duties included gathering data from the Head Start Centers and entering it into a database, analyzing data for comparative purposes and projections, preparing various reports, updating component supervisors, installing new computers and software and coordinating all data collection.

Howard compares herself to Edward Spillman, an Administrative Assistant for Data Entry who purportedly performs the same job duties, but at a different location. [*3] Spillman earned an annual salary of $ 24,500, which was increased to $ 29,688 on or around March 1, 1998. Spillman thus earned $ 7,688 more than Howard. Spillman's title was changed to Administrative Assistant for Computer Technology and Inventory on or around March 1, 1999.

Case 3:02-cv-01384-MRK    Document 97-9    Filed 06/28/2005    Page 2 of 5

Page 2
2003 U.S. Dist. LEXIS 9998, *

Howard filed a grievance with her immediate supervisor, Christine Ellington, on April 8, 1999 concerning the pay disparity between her and Spillman. After conducting an inquiry, CAO determined that the job functions performed by Howard and Spillman were substantially the same. n3 Consequently, Howard's salary was increased to $ 25,092 on August 24, 2000 and her title was changed to Administrative Assistant for Computer Technology and Inventory. n4 Howard alleges that the continuing pay disparity is based on her sex. CAO, on the other hand, contends that the disparity is a function of its wage scale -- because Spillman has, inter alia, seven years of seniority in his position. Howard filed a claim with the EEOC on November 21, 2000 and a right-to-sue letter was issued August 7, 2001. She filed suit November 6, 2001.

> n3 See Decl. of Adam W. Perry, Esq., Ex. B, at P5. [*4]

> n4 Howard is currently employed by CAO as a Computer Analyst/Trainer.

FRCvP 56(c) states that summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." n5 In other words, after discovery and upon a motion, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Summary judgment is thus appropriate where there is "no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). n6

> n5 Howard cites to New York law in her discussion of the appropriate burdens upon CAO's motion for summary judgment. See Pl.'s Mem. of Law at 3. New York law, however, "does not provide the relevant summary judgment standard for federal court." See Tedesco v. Norfolk Southern Corp., 2002 U.S. Dist. LEXIS 13836, 2002 WL 1628874, at *2 n.5 (W.D.N.Y. 2002) (discussing the appropriate summary judgment standard under federal law). [*5]

> n6 Of course, the moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)). If the moving party makes such a showing, the non-moving party must then come forward with evidence of specific facts sufficient to support a jury verdict in order to survive the summary judgment motion. Ibid.; FRCvP 56(e).

With respect to the first prong of Anderson, a genuine issue of material fact exists if the evidence in the record "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, at 248. n7 Stated another way, there is "no genuine issue as to any material fact" where there is a "complete failure of proof concerning an essential element of the nonmoving party's case." Celotex, at 323. Under the second prong of Anderson, the disputed fact must be material, [*6] which is to say that it "might affect the outcome of the suit under the governing law ***." Anderson, at 248.

> n7 See also Anderson, at 252 ("The mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant].")

Furthermore, "in assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000) (citing Anderson, at 255). n8 Nonetheless, mere conclusions, conjecture, unsubstantiated allegations or surmise on the part of the non-moving party are insufficient to defeat a well-grounded motion for summary judgment. Goenaga, at 18. n9 Indeed, in order to survive a motion for summary judgment, plaintiffs in discrimination cases must [*7] offer more than "purely conclusory allegations of discrimination, absent any concrete particulars ***." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829, 88 L. Ed. 2d 74, 106 S. Ct. 91 (1985). Summary judgment is nonetheless appropriate in discrimination cases. Holtz v. Rockefeller, 258 F.3d 62, 69 (2d Cir. 2001).

n8 In employment discrimination cases, district courts must be "especially chary in handing out summary judgment *** because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996)*.

n9 *See* footnote 6.

n10 Inasmuch as the "allegations necessary to plead a claim under § 194 are identical to those under the Equal Pay Act," this Court considers Howard's claims in tandem. *Fayson v. Kaleida Health, Inc., 2002 U.S. Dist. LEXIS 18591, 2002 WL 31194559*, at *8 n.25 (W.D.N.Y. 2002) (citing *Gibson v. Jacob K. Javits Convention Ctr. of N.Y., 1998 U.S. Dist. LEXIS 3717, 1998 WL 132796*, at *2 (S.D.N.Y. 1998)).

n11 The Court of Appeals has noted that, "to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Belfi, at 136*.

n12 Notably, the burden that shifts to the defendant after the plaintiff has made a *prima facie* showing is one of persuasion rather than one of production, the latter being the burden that shifts under the *McDonnell Douglas* burden shifting analysis performed in discrimination suits involving, *inter alia,* Title VII.

Inasmuch as Howard has withdrawn her *Title VII and section 290* claims, this Court need not address them. Although CAO seeks attorneys' fees with respect to these claims, this Court denies CAO's request. Accordingly, Howard's Title VII and *section 290* claims will be dismissed.

Howard's EPA and *section 194* claims will now [*8] be addressed. n10 An employer violates the EPA where it pays an employee

"at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex *** for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; (iv) a differential based on any other factor other than sex ***." *29 U.S.C. § 206(d)(1)*.

Accordingly, to establish a *prima facie* case under the EPA, Howard must show that (1) CAO pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility and (3) the jobs are performed under similar working conditions. *Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)*. Unlike Title VII, the EPA does not require discriminatory animus. *Id. at 136*. Once a *prima facie* case is established, the burden of persuasion shifts to the defendant [*9] to show that the wage disparity is justified by one of four affirmative defenses provided for by the EPA as enumerated above. n11 If the defendant meets its burden of persuasion, n12 the plaintiff "may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Ibid.*

[*10]

As applied here, Howard established a *prima facie* case under the EPA because she has demonstrated that (1) CAO paid her less than it paid Spillman, (2) the job functions performed by Howard and Spillman were substantially the same and (3) the jobs are performed under similar working conditions. The burden of persuasion thus shifted to CAO, which demonstrated that Spillman had more experience and seniority than Howard because Spillman obtained his position several years before Howard obtained her position in 1998. n13 Consequently, CAO satisfied its burden of persuasion by demonstrating that Spillman's higher compensation was a result of legitimate non-discriminatory factors -- to wit, experience and seniority. n14 In other words, inasmuch as Howard and Spillman hold the same position, they are entitled to compensation according to the same formula. Nonetheless, compensation differences exist under the formula based on experience and seniority. n15 The burden thus shifted back to Howard, who failed to provide any evidence rebutting CAO's stated reasons for the pay disparity. n16 Indeed, Howard conceded at her deposition that Spillman should be paid more than she is and that he [*11] is more underpaid than she is. n17 Moreover, inasmuch as Howard has failed to establish a violation of *29 U.S.C. § 206*, her FLSA claim will also be dismissed. n18 Accordingly, Howard's EPA, FLSA and *section 194* claims will also be dismissed.

n13 Although the parties dispute when Spillman obtained his current position (or an analogous position), Howard nonetheless concedes that Spillman obtained his position several years before her. *See* Decl. of Gregory A. Mattacola, Esq., at P4; Pl.'s Mem. of Law, at 12. Moreover, although Howard had been employed by CAO since 1989 (as a teaching assistant), that position was not similar to the Administrative Assistant for Computer Technology and Inventory position.

n14 *See Belfi, at 136-137* (finding that the defendant satisfied its burden of persuasion by proffering gender-neutral explanation that male comparators had greater seniority, thereby shifting the burden back to the plaintiff); *Harker v. Utica College of Syracuse University, 885 F. Supp. 378, 389-390 (N.D.N.Y. 1995)* (granting defendant's motion for summary judgment on the ground that plaintiff's male comparator was paid more because he had more experience and seniority than plaintiff); *Christiana v. Metropolitan Life Ins. Co., 839 F. Supp. 248, 250 (S.D.N.Y. 1993)* ("Courts hesitate to substitute their judgment for that of the employer 'who has established and applied a bona fide job rating system, provided that it does not discriminate on the basis of gender.'") (citation omitted); *cf. Corning Glass Works v. Brennan, 417 U.S. 188, 204, 41 L. Ed. 2d 1, 94 S. Ct. 2223 (1974)* (noting that the EPA "contemplates that a male employee with 20 years' seniority can receive a higher wage than a woman with two years' seniority"). [*12]

n15 The evidence indicates that Head Start's 1991 Wage Scale was the operative document for compensation prior to 2000. From this premise, Howard contends that "longevity of service" is specifically mentioned in the 1991 Wage Scale but that seniority or "years in position" is not. Nonetheless, the 1991 Wage Scale is being taken out of context. It reads in relevant part:

> "The underlying philosophy of the CAO Wage Scale Study is that it should be designed and implemented so that each staff member has a fair and equal opportunity to be recognized for those accomplishments which contribute to our offering a Head Start experience high quality [sic] to Erie County's low-income children and families. *Those accomplishments may include but are not limited to:* *** longevity of service." (emphasis added).

Accordingly, "longevity of service" is merely one *example* of an accomplishment that CAO may take into consideration while setting compensation for its employees. The EPA does not require a defendant's legitimate gender-neutral reason to be previously published. Howard also contends that the Buffalo Public School System formula was used to award Spillman a raise, but that it is not contained in the 1991 Wage Scale. Such formula, however, is incorporated by reference; it is therefore effectively contained in the 1991 Wage Scale. Inasmuch as Howard has failed to proffer any evidence of discriminatory application of this formula, she has failed to create a genuine issue of material fact with respect to this issue. [*13]

n16 *See Belfi, at 136* ("The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices.") (citation omitted); *Harker, supra note 14, at 391*.

n17 *See* Howard Dep. at 143-144, 147, 161-163, 168-169, 175. Although this testimony was based upon Head Start's 2000 wage scale as opposed to the 1991 wage scale operative for most of the relevant time period, such is not determinative. As noted above, the 1991 wage scale contained a non-exhaustive list of accomplishments that CAO would consider in establishing salaries. Howard's grievance and subsequent events appear to have highlighted the need for a more definitive statement with respect to "years in position" as an accomplishment that would be recognized by CAO. Hence the 2000 wage scale. In any event, as noted above, CAO was not required to previously publish the fact that it considered an employee's "years in position" when establishing salaries. Such is a legitimate gender-neutral explanation for the wage disparity that plaintiff has failed to rebut.

n18 Howard fails to allege or demonstrate any retaliation, which could support a FLSA claim under *29 U.S.C. § 215*. Indeed, after filing

her grievance, her salary was increased and she has received several raises and a promotion.

[*14]

Accordingly, it is **ORDERED** that defendant's motion for summary judgment is granted, that defendant's request for attorneys' fees is denied, that this action is dismissed and that the Clerk of the Court shall close this case.

DATED: May 30, 2003

JOHN T. ELFVIN

S.U.S.D.J.