LEXSEE 2004 U.S. DIST. LEXIS 21107

MARVIN KEY, Plaintiff, v. WAL-MART, INC. AND DR. ANTHONY GORDON, Defendants.

CASE NO. 3:03CV144(RNC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2004 U.S. Dist. LEXIS 21107*

September 29, 2004, Decided

**DISPOSITION:** Defendants' motion for summary judgment granted in part and denied in part. Plaintiff's motion for summary judgment denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Marvin Key, Plaintiff: Loraine M. Cortese-Costa, Pamela J. Coyne, LEAD ATTORNEYS, Durant, Nichols, Houston, Hodgson & Cortese-Costa PC, Bridgeport, CT.

For Wal-Mart, Inc, Anthony Gordon, MD, Defendants: Gregory B. Reilly, Joel L. Finger, LEAD ATTORNEYS, Brown, Raysman, Millstein, Felder & Steiner, New York, NY; Kristi E. Mackin, Mitchell L. Fishberg, LEAD ATTORNEYS, Brown Raysman Millstein Felder & Steiner, LLP, Hartford, CT.

**JUDGES:** [*1] Robert N. Chatigny, United States District Judge.

**OPINIONBY:** Robert N. Chatigny

**OPINION:**

RULING AND ORDER

Marvin Key brings this action against Wal-Mart, Inc. and Anthony Gordon, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq.*, the Connecticut Fair Employment Practices Act ("CFEPA"), *Conn. Gen. Stat. § 46a-60, et seq.*, and Connecticut common law. Defendants have moved for summary judgment on all of plaintiff's claims; plaintiff has moved for summary judgment on two of them. For reasons stated below,

defendants' motion is granted in part and denied in part, and plaintiff's motion is denied.

I. Facts

The pleadings, depositions, affidavits and other exhibits on file show the following. Plaintiff, an African-American optician, worked for Wal-Mart from February 9, 2000 to April 30, 2001 in the vision center at its North Windham store, under the supervision of defendant Gordon, an optometrist. Gordon, who is also AfricanAmerican, was an independent contractor, while plaintiff's immediate Wal-Mart supervisor was Jerome Ellis, the manager of the vision center. During this [*2] time, plaintiff and other opticians were required to perform two types of optometric tests on customers, known as "vision screening" and "pre-testing." Plaintiff asserts that he complained about this because he believed it violated state licensing statutes. Also during this time, Ellis imposed progressive discipline on plaintiff, allegedly for giving poor service to customers, culminating in a "decision-making day" on November 2, 2000, during which plaintiff was supposed to reflect on the customer complaints.

On April 27, 2001, a customer named Huong Nguyen brought her two children into the vision center to be tested. While plaintiff was testing them, Nguyen became concerned that he did not know what he was doing, partly because he asked Gordon a number of questions about the testing, and she was unhappy that plaintiff repeatedly asked her children's names. She complained to Gordon, and Gordon brought her complaints to Ellis's attention. At some point, Gordon also criticized plaintiff for failing to staple a file properly, and this led to an argument between them. Plaintiff alleges that Gordon said he was "tired of black

people messing up," or words to that effect. Plaintiff claims [*3] he told Ellis he was going to complain about this remark, then went into a back room, where he did complain to four men, none of whom he is able to identify. Before Nguyen left the store, she filled out a form complaining about plaintiff's conduct.

During the next working day, April 30, 2001, plaintiff was summoned to meet Roger Noll, the manager of the North Windham store, and Edgar Morales, the co-manager. Noll and Morales terminated his employment at that time, giving as their reasons "poor and unprofessional customer service," "insubordination" and "misconduct with coachings."

## II. Discussion

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe. *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*.

### A. Defendants' Motion [*4]

#### 1. Discharge in violation of public policy

Plaintiff claims that he was wrongfully discharged in violation of public policy. Connecticut recognizes a cause of action for wrongful discharge under the "public policy exception" to at-will employment if the discharge derives from a violation of "important" and "clearly established" public policy. *Thibodeau v. Design One Architects, 260 Conn. 691, 701, 802 A.2d 731 (2002)*. Defendants are entitled to summary judgment on this claim.

Plaintiff claims that his termination violated public policy in that it was linked to the pre-testing policy, which he views as violating Connecticut's licensing statute for optometrists, *Conn. Gen. Stat. § 20-138a*, and the Connecticut Unfair Trade Practices Act (CUTPA), *Conn. Gen. Stat. § 42-110b*. Plaintiff has shown no violation of clearly established public policy under either statute. The claim that the pre-testing policy violates *§ 20-138a* is based on a debatable interpretation of the statute, one that has not been endorsed by Connecticut courts. n1 Likewise, plaintiff presents no authority, and none has been found, for the proposition [*5] that the pretesting policy violates CUTPA. Because the law plaintiff relies on is not clearly established, it cannot be the basis for a claim of wrongful discharge in violation of public policy.

n1 The statute permits optometric assistant trainees, such as the opticians in the vision center, to perform optometric services if they are "under the direct supervision, control and responsibility of an employing, licensed optometrist." *Conn. Gen. Stat. § 20-138a(b)*. Plaintiff contends that since Gordon was an independent contractor, he should not be viewed as the opticians' employer. He also contends that although Gordon supervised the opticians in performing the tests, he did not exercise the requisite level of control or responsibility.

Plaintiff claims that his discharge also violated the public policy against discharging actual or potential whistleblowers. However, this common law claim is preempted by *Conn. Gen. Stat. § 31-51m*, Connecticut's whistleblower protection [*6] statute. See *Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159, 745 A.2d 178 (2000)*.

#### 2. Breach of implied contract

Plaintiff claims that Wal-Mart breached an implied contract, formed at the time he was hired, by requiring him to perform vision screening and pre-testing. He does not say what the terms of the contract were, and provides no evidence that any contract was formed. Because he fails, in response to defendants' motion, to supply evidence to support an essential element of this claim, summary judgment is appropriate. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

#### 3. Negligent misrepresentation

Plaintiff claims that Wal-Mart is liable for negligent misrepresentation because it failed to inform him when he was hired that he would be expected to perform vision screenings and tests for eye health. The tort of negligent misrepresentation, on the face of it, extends only to supplying false information: "One who, in the course of his business... supplies false information for the guidance of others in their business transactions, is subject to liability... if he fails to exercise reasonable care or competence [*7] in obtaining or communicating the information." *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 218, 520 A.2d 217*. Plaintiff presents no authority for the proposition that the tort extends to failures to inform. n2

n2 Under Connecticut law, the tort of fraudulent misrepresentation may be committed through withholding of information, but the

withholding must be intentional, which is not alleged here. *Pacelli Bros. Transp., Inc. v. Pacelli, 189 Conn. 401, 407, 456 A.2d 325 (Conn. 1983).*

Plaintiff claims that Wal-Mart made another negligent misrepresentation when it encouraged him to consult Gordon on questions relating to vision testing; he claims that he was terminated in part because he asked such questions, provoking Nguyen's written complaint that he appeared not to know what he was doing. In response to defendants' motion, plaintiff provides no citation to evidence in the record showing that such representations were made. Without evidence establishing [*8] the content of the representations, a reasonable jury could not conclude that they were false. Thus, summary judgment is appropriate on this claim as well.

4. Title VII and CFEPA race discrimination claims

Plaintiff claims that Wal-Mart terminated him because of his race in violation of Title VII and CFEPA. Defendants contend that these claims cannot survive the three-step, burden-shifting analysis used to test the sufficiency of discrimination claims. *Reeves, 530 U.S. at 142-43 (Title VII); Wroblewski v. Lexington Gardens, Inc., 188 Conn. 44, 53, 448 A.2d 801 (1982)* (CFEPA). Their argument has considerable force, but not enough to prevail at the summary judgment stage.

Defendants contend that plaintiff fails to meet his initial burden of presenting a prima facie case on the ground that he has not shown that he was terminated in circumstances justifying an inference of discrimination. Plaintiff presents evidence that two white opticians and Ellis (who is white) were not terminated despite problems with treatment of customers. n3 Their cases are not identical to plaintiff's, but they may be considered because there is a "reasonably close resemblance [*9] of the facts and circumstances . . . .." *Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).* This evidence of disparate treatment satisfies the minimal burden of establishing a prima facie case.

n3 Plaintiff also seeks to present evidence regarding a fourth white employee, Dave Peterson. However, Peterson was terminated, and plaintiff presents no evidence that shows that his case was handled differently from plaintiff's.

Defendants contend that plaintiff cannot sustain his ultimate burden at step three in the analysis of showing that the stated reason for his termination -- he was "a poor performer who treated customers poorly" -- is a pretext for discrimination. Defendants' nondiscriminatory explanation for the discharge is corroborated by substantial evidence showing that customers complained about plaintiff's treatment of them and that he received progressive discipline regarding those complaints before he was terminated. (Def.'s Exs. A-6, A-7, A-8.). To create a genuine issue of fact [*10] as to whether this explanation is a pretext for discrimination, plaintiff must present evidence that the explanation is false, or that the real reason for the termination was race. *Reeves, 530 U.S. at 146-49.* Plaintiff has no direct evidence to present to a jury that Wal-Mart had a racial motive. n4 This leaves the circumstantial evidence that three white employees were treated more leniently. This evidence, which defendants do not rebut, is marginally sufficient to create an issue of fact as to whether race played a role in the termination. Accordingly, defendants are not entitled to summary judgment on plaintiff's discrimination claims.

n4 Gordon's alleged racial remark was made by a non-decisionmaker (Gordon was not a Wal-Mart employee and there is no evidence to link him to the termination decision), and the remark on its face indicates Gordon's personal feeling, not any knowledge of Wal-Mart's propensity to discriminate. Plaintiff also seeks to present evidence of another racial remark allegedly made by Ellis. However, the court has already struck that evidence as inadmissible hearsay. [Doc. # 127.]

[*11]

5. Title VII and CFEPA retaliation claims

Plaintiff also claims that Wal-Mart terminated him in retaliation for complaining about Gordon's alleged racial remark, in violation of Title VII and CFEPA. The sufficiency of these claims is tested using the same three-stage burden-shifting analysis. *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768-69 (2d Cir. 1998)(Title VII); Wroblewski, 188 Conn. at 64 (CFEPA).* Plaintiff has met the minimal burden of making a prima facie case of retaliation through his testimony that he told Ellis, the day before his termination, that he intended to make such a complaint. n5 Defendants have, as noted above, presented a legitimate explanation for the termination. The question, then, is whether plaintiff has raised a triable issue that this explanation was a pretext for retaliation. Plaintiff can meet this burden by showing a temporal connection between the protected activity and the termination and offering at least some evidence to rebut the employer's explanation. See *Quinn, 159 F.3d at 770 (2d Cir. 1998); Bombero v. Warner-Lambert Co.,*

*142 F. Supp. 2d 196, 211 (D. Conn. 2000).* [*12] The former requirement is satisfied because Wal-Mart terminated him one working day after Ellis became aware that he was going to complain about the racial remark; the latter is satisfied by the evidence of disparate treatment discussed above. Thus, summary judgment on these claims is not appropriate.

n5 A plaintiff's announcement of an intent to file an internal complaint about a possible violation of Title VII is enough to establish a protected activity. See *Stein v. New York State Dept. of Motor Vehicles, 841 F. Supp. 42, 48 (N.D.N.Y. 1993).*

6. CFEPA claim against Gordon

Plaintiff claims that Gordon aided and abetted his discriminatory termination, in violation of *Conn. Gen. Stat. § 46a-60(a)(5)*, by deliberately provoking the April 27 incident and by soliciting Nguyen's written complaint against him, in order to help Ellis carry out a preexisting plan to terminate him because he is black. Defendants argue correctly that plaintiff has not presented sufficient [*13] evidence to support this claim. Plaintiff presents no evidence that Gordon asked Nguyen to write her complaint, or that he "provoked" the events that led to her complaint. n6 The evidence that Gordon conspired with Ellis to get rid of plaintiff comes to nothing more than a fellow employee's testimony that Gordon and Ellis were "best friends," which does not show the existence of a conspiracy. (Pl.'s Ex. 2 at 30.) Plaintiff's only relevant evidence on this point shows merely that Gordon brought Nguyen's concerns about plaintiff to Ellis's attention. n7 This is insufficient to establish that Gordon aided and abetted racial discrimination by WalMart . Summary judgment on this claim is therefore appropriate.

n6 Nguyen in fact testified that "the manager" (apparently Ellis) asked her if she wanted to write a complaint against plaintiff, and

that she did not remember if Gordon also asked her about it. (Pl.'s Ex. 7 at 75.) The evidence shows that Nguyen initially complained about plaintiff to Gordon, not that Gordon provoked the incident that led to her complaints.

n7 Gordon testified at his deposition that he brought Nguyen's concerns to Ellis (Pl.'s Ex. 12 at 70), and Nguyen wrote in her original complaint about plaintiff that Gordon had "brought this matter to the managers" (Pl.'s Ex. 14). The "black people messing up" remark, if made, does not show that Gordon aided and abetted discrimination, in the absence of any evidence of actions taken by Gordon that could reasonably be said to have done so.

[*14]

B. Plaintiff's Motion

Plaintiff moves for summary judgment on his claims for wrongful discharge in violation of public policy and negligent misrepresentation. As discussed above, these claims cannot survive summary judgment. Thus, plaintiff's motion must be denied.

III. Conclusion

Accordingly, defendants' motion for summary judgment [Doc. # 73] is granted as to the claims for discharge in violation of public policy, breach of implied contract, negligent misrepresentation, and aiding discrimination, and denied in all other respects. Plaintiff's motion for summary judgment [Doc. # 48] is denied. The claims remaining in this action are plaintiff's Title VII and CFEPA claims against Wal-Mart for racial discrimination and retaliatory termination.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2004.

Robert N. Chatigny

United States District Judge