LEXSEE 2000 U.S. APP LEXIS 31322

MICHAEL KODENGADA, Plaintiff-Appellant, -v.- INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.

00-7434

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

2000 U.S. App. LEXIS 31322

December 4, 2000, Decided

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 36563.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New York (B. Parker, J.).

**DISPOSITION:** AFFIRMED.

LexisNexis(R) Headnotes

**COUNSEL:** APPEARING FOR APPELLANT: Morton Alpert, Albert & Kaufman, LLP, New York, NY.

APPEARING FOR APPELLEE: John Houston Pope, Hogan & Hartson L.L.P., New York, NY (Nicole Polley Miller, Hogan & Hartson L.L.P., New York, NY, on the brief).

**JUDGES:** PRESENT: HON. JAMES L. OAKES, HON. DENNIS JACOBS, HON. FRED I. PARKER, Circuit Judges.

**OPINION:**

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be **AFFIRMED**.

Michael Kodengada appeals from a judgment entered by the United States District Court for the Southern District of New York (B. Parker, J.), granting summary judgment in favor of his former employer, International Business Machines Corporation ("IBM") on claims of (i) employment discrimination on the basis of ethnicity, race and religion, as well as (ii) retaliation. On appeal, he challenges only the district court's [*2] disposition of the retaliation claims. See *Kodengada v. International Business Machines Corp., 88 F. Supp. 2d 236 (S.D.N.Y. 2000).*

I

Kodengada claimed that during the summer of 1996, he was harassed by a co-worker, George Baschiera. His retaliatory termination claims arise from a long, rambling e-mail he sent to Baschiera on November 3, 1996. After a long series of childish, belittling personal attacks, Kodengada's e-mail closed by citing comments that Baschiera allegedly had made concerning race and religion.

After sending the e-mail to Baschiera, Kodengada forwarded it to his then-supervisor, Frank DeRobertis. Kodengada alleged that his forwarding of the e-mail was protected activity under the discrimination laws. At about the same time that DeRobertis learned of the e-mail to Baschiera, he received reports that Kodengada had behaved in an inappropriate and threatening manner toward two female employees. DeRobertis also received a complaint from Baschiera, who was very upset by the personal attacks contained in the e-mail.

DeRobertis decided that because of the e-mail to Baschiera, the reports of Kodengada's behavior toward women, and similar reports of [*3] unprofessional conduct, Kodengada should be placed on notice that IBM

would not tolerate further inappropriate conduct on the job. DeRobertis's November 5, 1996 memo to Kodengada warned that Kodengada would be terminated "if there are any subsequent unprofessional incidents." The next day, DeRobertis sent a follow-up memo to Kodengada. DeRobertis wrote that "any condition that may cause arbitration regarding you or your work (technically or otherwise) is to be submitted to me for review and counsel."

Kodengada served the 60 day probationary period without incident. IBM then transferred DeRobertis, who was replaced in January 1997 by Charles Hill. As DeRobertis's replacement, Hill became Kodengada's direct supervisor.

Hill also experienced difficulties with Kodengada. On March 21, 1997, Kodengada was AWOL. On March 26, Hill learned that Kodengada had made a creepy phone call the previous day to Tara Kenny, a female IBM employee, asking whether Kenny found Kodengada attractive, and telling her that he knew what kind of car she drove and exactly where she lived. On March 27, an IBM security officer told Hill that he had investigated complaints that Kodengada brushed up against women [*4] in the IBM cafeteria serving line, caused a disturbance by claiming that the food had made him sick, and refused to pay for a piece of cake he had eaten. Finally, on April 2, 1997, Hill received a complaint from Gary Sills, a project manager, explaining that Kodengada (i) had missed a number of conference calls in connection with a project to which he had been assigned, (ii) had acted in a disruptive manner during a conference call, and (iii) had not been contributing to the project. Further, in a phone call to Sills' home, Kodengada had verbally berated Sills and accused him and his wife of lying.

Hill's concern about these reports was heightened by his knowledge that Kodengada had been cited the previous fall for instances of unprofessional conduct. Hill knew that those instances included the e-mail sent to Baschiera, as well as inappropriate and threatening behavior toward female IBM employees. Hill also knew that Kodengada had been told that further inappropriate behavior would not be tolerated.

Based on all of this information, Hill concluded on April 2, 1997 that Kodengada was "not functioning appropriately in the IBM work environment." Hill fired Kodengada that day.

Kodengada [*5] filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") the following September, charging harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. The EEOC declined to pursue the case, noting that a "further review of the evidence, specifically, your E-mail on November 3, 1996 to your co-worker indicates that this matter appears to be a personality clash with your co-worker(s)." The EEOC also found "no evidence to indicate that [Kodengada was] subjected to discriminatory remarks or that [his] discharge was in retaliation for having filed an internal complaint."

II

On appeal, Kodengada challenges only the district court's grant of summary judgment on the retaliation claims. He contends that a jury should decide whether his termination on April 3, 1997 resulted from his forwarding of the Baschiera e-mail to DeRobertis the previous November.

We review a grant of summary judgment de novo. See *Butler v. New York State Dept. of Law*, 211 F.3d 739, 743 (2d Cir. 2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment [*6] as a matter of law." *Fed. R. Civ. P. 56(c)*; see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The retaliation claims arise under both Title VII and the New York Human Rights Law. "Title VII provides that 'it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter. . . .'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (quoting 42 U.S.C. § § 2000e-3(a)). Similarly, the New York Human Rights Law prohibits retaliation against employees for their opposition to discriminatory practices. See *N.Y. Exec. Law § 296(1)(e)*; *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 & n.9 (2d Cir. 1996). We consider the state law claims in tandem with the VII claims "because New York courts rely on federal law when determining claims [*7] under the New York Human Rights Law." *Reed*, 95 F.3d at 1177.

To survive a motion for summary judgment on a retaliation claim, a plaintiff first must make out a prima facie case. See *Quinn*, 159 F.3d at 768; *Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999). In order to establish a prima facie case, the plaintiff needs to show "'[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Quinn*, 159 F.3d at 769 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995)).

Kodengada's termination is an adverse employment action. And we will assume, as the district court concluded, that his forwarding of the Baschiera e-mail to his supervisor constitutes protected activity. But see the subsequent decision in *Matima v. Celli, 228 F.3d 68, 79 (2d Cir. 2000)* ("Disruptive or unreasonable protests against discrimination are not protected activity under Title VII and therefore cannot support [*8] a retaliation claim."). However, we conclude that Kodengada failed to satisfy the causation element of his prima facie case. Accordingly, we affirm the district's court grant of summary judgment on that ground.

Kodengada has produced no direct evidence that would support a finding of a causal nexus between his complaint to DeRobertis and Hill's decision to fire him. Although "'the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action,'" *Quinn, 159 F.3d at 769* (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988))* (emphasis added), a five month interval is too long to support a causation argument without other probative evidence. See *Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)* (A three and one-half month interval, without other evidence, is insufficient to demonstrate causation and survive defendant's motion for summary judgment.). Moreover, significant events intervened. DeRobertis, the recipient of the e-mail, had left Kodengada's group over three months before Kodengada [*9] was fired, and played no role in the termination decision. And there is no dispute that Hill received three separate reports of bizarre and inappropriate conduct by Kodengada during the week before Hill terminated him.

Unable to rely on direct evidence or temporal proximity, Kodengada seeks to establish causation via a two-step argument that misrepresents the record. He contends that (1) DeRobertis placed Kodengada on probation on November 5 in retaliation for alerting DeRobertis on November 3 about Baschiera's insensitive remarks, and (2) Hill based his decision to fire Kodengada partly on DeRobertis's retaliatory imposition of probation five months earlier. The record does not sustain this argument. DeRobertis testified that Kodengada was placed on probation because of "the note that went to George Baschiera," not because Kodengada later forwarded the message to DeRobertis. And that e-mail easily justified a warning because it was a harsh attack on Baschiera's competence, intelligence, and education. Baschiera was upset by the attack, and DeRobertis viewed it as the culmination of a pattern of unprofessional conduct by Kodengada toward his co-workers.

The record also shows [*10] that to the extent Hill considered Kodengada's prior record, his concerns mirrored those of DeRobertis. Hill testified his decision to fire Kodengada was based partly "the confrontation between Mr. Kodengada and another Information Technology Architect, George Baschiera, in November 1996." The issues, again, were Kodengada's verbal assault on a colleague and the consistency of that attack with a pattern of inappropriate behavior toward co-workers.

Without evidence sufficient to support a finding of causation, Kodengada fails to make out a prima facie case of retaliation. See *Richardson, 180 F.3d at 443* (conclusory allegations are insufficient to establish a prima facie case of Title VII retaliation in the context of summary judgment). Summary judgment therefore was properly entered in favor of IBM on the retaliation claims.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED**.