LEXSEE 1998 U.S. DIST. LEXIS 15979

SYLVIA J. LAWRENCE, Plaintiff v. AETNA LIFE & CASUALTY COMPANY, AETNA LIFE INSURANCE COMPANY, Defendants

No. 2-90-cv-659(WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1998 U.S. Dist. LEXIS 15979

June 4, 1998, Decided
June 4, 1998, Filed

**DISPOSITION:** [*1] Judgment entered in favor of the defendants.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiff: Howard Allan Boran, Killingworth, CT.

For Defendants: Lauren R. Greenspoon, Albert Zakarian, Hartford, CT.

**JUDGES:** Hon. Warren W. Eginton, Sr. USDJ.

**OPINIONBY:** Warren W. Eginton

**OPINION:**

MEMORANDUM OF DECISION

In this case brought under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), plaintiff Sylvia J. Lawrence alleges that defendants Aetna Life & Casualty Company and Aetna Life Insurance Company ("Aetna") wrongfully terminated her employment to avoid paying her long-term disability benefits under an employee welfare benefit plan. n1 Plaintiff also asserts a state law claim for breach of an implied employment contract.

---

n1 Plaintiff testified that although she worked at Aetna Life Insurance Company, her paychecks were drawn on the account of Aetna Life & Casualty Company.

---

After a five-day bench trial, the court enters the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

FINDINGS OF [*2] FACT

On November 24, 1986, Aetna employed plaintiff as a claims processor. During all relevant times, Aetna maintained a "Sick Pay Plan" which provided short-term disability benefits to its employees unable to work because of a qualifying short-term disability. According to the terms of the Sick Pay Plan policy, a covered employee could receive short-term disability benefits for a maximum continuous period of twenty-six weeks.

Aetna also had a "Long Term Disability Plan" ("LTD Plan"). Those employees whose employment began after January 1, 1982, became eligible for benefits under the LTD Plan on the date they completed twelve months of continuous service with Aetna unless the employee had long-term disability coverage with a previous employer within 31 days of starting employment with Aetna. If the employee had prior long-term disability coverage and it provided a benefit of at least 50% of the employee's previous salary and was payable until the employee reached age 65, LTD plan coverage would begin upon commencement of employment with Aetna.

After LTD coverage began, an employee could qualify for long-term disability benefits after twenty-six continuous weeks of one period of [*3] disability provided that the injury or illness causing the disability met the plan definition of "total disability" and was not excluded under the following preexisting condition clause:

Case 3:02-cv-01384-MRK    Document 97-14    Filed 06/28/2005    Page 2 of 4

Page 2
1998 U.S. Dist. LEXIS 15979, *

> No insurance is afforded under this policy (a) as to a period of total disability commencing during the first twelve months of the employees' current period of insurance under this policy if the disability is caused or contributed to by, or is a consequence of, a disease, injury or pregnancy for which the employee received treatment or services, . . . during the three month period prior to the effective date of such insurance; . . . .

David Seaver, Aetna's Director of Benefits Administration, testified that under the terms of the preexisting condition provision, an employee eligible for long-term disability on the first year anniversary of employment will not have coverage for any claimed total disability which relates back to an injury that occurred 90 days prior to becoming eligible for LTD coverage.

During the course of her employment, plaintiff received several manuals and handbooks regarding employee benefits. Pertinent to this discussion are the manuals entitled the "1985 Working [*4] With You" and "Your Second Paycheck 1988." In the "1985 Working With You," the following language appears:

> The contents of this handbook are presented for your information only. While the company believes wholeheartedly in the policies and procedures described here, they are not conditions of employment. The company reserves the right to change any and all such policies or procedures, in whole or in part, at any time, with or without notice. The language used in this handbook is not intended to create, nor should you interpret this to be, a contract between the company and any one or all of its employees.

"Your Second Paycheck 1988" provides in part that "you may not be eligible for any LTD benefits if you become disabled during the first 12 months of coverage and the cause existed within three months before you were covered."

On October 8, 1987, plaintiff was involved in an automobile accident and sustained injuries for which she received continuing chiropractic treatment from Lewis R. Labbadia, D.C. Plaintiff was thereafter found qualified to receive short-term disability benefits during the following periods: October 9, 1987 to November 15, 1987; May 17, 1988 to [*5] July 22, 1988; and October 13, 1988 to April 12, 1989. Before final approval of her disability benefits through April 12, 1989, Yvonne Belanger, Aetna's Short Term Disability Consultant informed plaintiff, by letter dated April 6, 1989, that a second opinion regarding plaintiff's disability status was necessary in order to make a decision regarding further sick pay. Belanger arranged for an independent medical examination with Dr. Alan D. Russakov, Chief of the Pain and Management Center at Mount Sinai Hospital. Dr. Russakov's evaluation took place on April 10, 1989. At the request of Dr. Rudolph Ross, Medical Director of Aetna's Employee Health Services ("EHS") division, Dr. Russakov telephoned Dr. Ross with the results of the examination on the day it was performed. Based on this conversation, Dr. Ross determined that short-term disability benefits should be denied after April 12, 1989. EHS approved short-term disability benefits under the Sick Pay Plan to April 12, 1989. EHS also advised Robert Kuehnel, an administrator in Aetna's Employee Benefits Division, that plaintiff was physically able to return to work. In a letter dated April 11, 1989 to plaintiff, Kuehnel stated:

> According [*6] to medical information, you are no longer totally disabled from your position as a Senior Output Processor. Therefore, you can return to work on Thursday, April 13, 1989. If you do not return to work on Thursday, April 13, 1989, we will consider that you have voluntarily terminated your employment with Aetna.

By written report dated April 13, 1989, Dr. Russakov remarked that plaintiff stated that she was ready to return to work on a modified basis. He concluded that plaintiff was "medically stable with no physical restrictions."

Plaintiff did not return to work on April 13 pursuant to the instructions in Kuehnel's letter. On April 14, 1989, Barbara Kingsbury, then of Aetna's Employee Benefits Division, wrote plaintiff a memorandum stating that plaintiff must report to EHS on Monday, April 17, 1989, to discuss any further restrictions she had received from her doctors. Plaintiff received the memorandum but did not report.

In a letter dated April 19, 1989, Kuehnel wrote:

> Based on your recent IME, Employee Health Services has determined that you were able to return to work on 4/13/89. You did not return on 4/13/89 and on 4/14/89 you were contacted by Barbara Kingsbury from [*7] our Human Resources Department. At that time, you were told to get a note from your doctor stating any restrictions and that you must

return to work on Monday, 4/17/89. Since you did not return to work on Monday, 4/17/89 we have considered you voluntarily terminated.

David Seaver testified that because plaintiff did not have long-term benefits with her prior employer, she did not become eligible for LTD plan coverage until November 24, 1987, the first year anniversary after the commencement of her employment. Plaintiff's automobile accident occurred on October 8, 1987, within 90 days prior to the commencement of coverage under the LTD plan. Seaver explained that the preexisting condition clause precluded plaintiff from LTD coverage because her total disability arose out of injuries she sustained 90 days before the start of LTD coverage.

CONCLUSIONS OF LAW

Wrongful Discharge under ERISA

Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [*8] [an employee welfare benefit plan].

An essential element of a claim under § 510, is that the employer was motivated in part by the specific intent to deprive or interfere with the employee's entitlement to benefits. A claim under § 510 is not sustainable where the loss of benefits is "a mere consequence of, but not a motivating factor behind, a termination of employment." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)(citations omitted).

Plaintiff cannot demonstrate that Aetna had the specific intent to deprive her of benefits under the LTD plan because based on the LTD policy language and the extrinsic evidence produced at trial, plaintiff was not eligible for such benefits. The preexisting condition clause excludes coverage for any period of total disability commencing during the first twelve months after an employee becomes eligible for long-term disability if the employee received treatment for that injury during the three months prior to the time the long-term disability became effective. The three month period of treatment referred to in the preexisting condition clause refers to the three months prior to the start date of the LTD coverage, [*9] not to the three months prior to the commencement of the plaintiff's employment as plaintiff argues.

This interpretation is supported by the manual "Your Second Paycheck 1988" which plaintiff testified that she received and read and which states that an employee may not be eligible for any LTD benefits if the employee becomes disabled during the first twelve months of coverage and the cause existed within three months before the employee was covered. Because plaintiff is precluded from receiving LTD benefits under the terms of the policy, her claim that Aetna intentionally interfered with the attainment of those benefits must fail.

B. Breach of Contract Claim

Plaintiff claims that the "1985 Working With You" manual sets forth a progressive discipline policy which created an implied employment contract with plaintiff that she could not be terminated without just cause.

Under Connecticut law, an employee hired for an indefinite term is terminable at the will of the employer absent an agreement by the parties to contrary. The plaintiff bears the burden of demonstrating that the employer agreed, by words, conduct or action, to accept some form of contractual commitment that [*10] the employee could not be terminated without just cause. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 15, 662 A.2d 89 (1995). Statements which are neither sufficiently promissory nor sufficiently definite to support contractual liability will not give rise to an implied contract. *D'Ulisse-Cupo v. Board of Directors of Notre Dame High Sch.*, 202 Conn. 206, 214, 520 A.2d 217 (1987). An employee's belief that a contract of employment exists is not sufficient to support an implied contract claim. *Reynolds v. Chrysler First Commercial Corp.*, 40 Conn. App. 725, 730, 673 A.2d 573 (1996).

Plaintiff's claim must fail because the "1985 Working With You" manual explicitly states that it "is not intended to create, nor should you interpret this to be, a contract between the company and any one or all of its employees." Moreover, the statements made regarding progressive discipline in the "1985 Working With You" manual are not sufficiently promissory or definite to sustain plaintiff's claim of an implied contract. For instance, the manual does not state that certain disciplinary procedures are mandatory or that an employee cannot be terminated for other reasons. [*11] See *Markgraf v. Hospitality Equity Investors, Inc.*, 1993 Conn. Super. LEXIS 426, *7, 1993 WL 53604, at *3 (Conn. Super. Ct. Feb. 19, 1993)(court granted summary judgment to employer finding that progressive discipline portion of handbook did not state that the disciplinary procedures were compulsory or that an employee could not be terminated for other reasons). Accordingly, plaintiff's breach of implied contract is without merit.

1998 U.S. Dist. LEXIS 15979, *

## CONCLUSION

Based on the foregoing, the Clerk is directed to enter judgment in favor of the defendants and close the file in this case.

Dated this 4Th day of June 1998 at Bridgeport, Connecticut.

Warren W. Eginton, Senior U.S District Judge