LEXSEE 2000 U.S. APP LEXIS 3801

TONY LOWE, Plaintiff-Appellant, - v. - AMERIGAS, INC., Defendant-Appellee.

No. 99-7813

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

2000 U.S. App. LEXIS 3801

March 10, 2000, Decided

NOTICE: [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

SUBSEQUENT HISTORY:

Reported in Table Case Format at: *2000 U.S. App. LEXIS 10348.*

PRIOR HISTORY: Appeal from the United States District Court for the District of Connecticut (Goettel, Judge).

DISPOSITION: AFFIRMED.

LexisNexis(R) Headnotes

COUNSEL: Appearing for Appellant: Michael Melly, Ronald E. Lasky & Associates, New London, Connecticut.

Appearing for Appellee: Michael L. Banks, Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania.

JUDGES: Present: HONORABLE RALPH K. WINTER, Chief Judge, HONORABLE PIERRE N. LEVAL, HONORABLE FRANK J. MAGILL, * Circuit Judges.

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

OPINION:

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Tony Lowe appeals from Judge Goettel's adverse grant of summary judgment dismissing his action challenging the termination of his employment by AmeriGas. Appellant claims that the district court erred in dismissing his claims of: (i) breach of express oral contract, (ii) breach of implied oral [*2] contract, (iii) wrongful discharge in retaliation for his exercise of free speech, and (iv) negligent misrepresentation. We affirm.

AmeriGas provides propane gas and services propane gas systems in Connecticut and 43 other states. Appellant was hired in May 1995 as AmeriGas's manager of the Killingworth and Waterford districts. When accepting appellee's offer of employment, appellant signed an "Employee Acknowledgment" form that stated "I . . . recognize that my employment relationship with the Company is based on the concept of employment-at-will and as such I may terminate my employment at any time with or without cause, with or without notice and the Company may do the same." Appellant also received appellee's Human Resources Policies handbook, which clearly stated on page 1 under the heading "Employment-At-Will"

> Employees of the Company are hired on an at-will basis, meaning that employees are hired for an indefinite term and that either party, the employer or the employee, may terminate the employment relationship at any time, with or without cause or notice.

No representative of the Company, including its officers, has any authority to make any agreement contrary [*3] to the foregoing.

On February 1, 1996, appellee terminated appellant's employment, citing his "relatively short tenure with the company, ongoing problems with customers and employees, . . . serious violations of government regulations and company policy, non-compliance and insubordination." Among the violations of company safety policies and government regulations that appellee alleged was appellant's failure to remove "temporary [propane] tanks installed on November 15, 1995 at Fashion Plaza which should have been removed within two days pursuant to an agreement with the Fire Marshal and [which] were still there on January 29, 1996 despite numerous phone calls from the local Fire Marshal."

Appellant disputes the underlying facts concerning the problems with the Fire Marshal. Although he admits that he met with the Fire Marshal and said he "would dedicate [his] men to repairing the roof at the Fashion Plaza so that the temporary tanks . . . could be removed," he denies ever promising to remove the tanks in two days. Appellant claims that weather conditions prevented his employees from completing the project in timely fashion, and he denies any knowledge of the Fire Marshal's [*4] calls. However, he does not dispute that the Fire Marshal communicated to appellee that Lowe had made the "two day" promise but failed to follow up over the ensuing two months, as documented in a February 6, 1996 letter sent by the Fire Marshal to appellee as a "follow up to [a] telephone conversation on Monday January 29, 1996." Similarly, although appellant denies mistreating customers and employees and denies any knowledge of complaints, he does not dispute that appellant actually received the numerous complaints well documented in the record.

We review the district court's grant of summary judgment de novo, see *de la Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 20 (2d Cir. 1996), viewing the evidence in the light most favorable to appellant and making all inferences in appellant's favor, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Summary judgment is appropriate only where no reasonable jury could find for the nonmovant and may not be granted when there is a genuine dispute over material fact, though summary judgment may be granted where the evidence is "merely colorable" or [*5] "not significantly probative." *Anderson*, 477 U.S. at 249.

Appellant's first two claims are that C. Stephen Sheffield, who recruited him for this job, made express and implied promises that he would be afforded notice and procedural job protections. However, appellant's claims of breach of express and implied oral contract are belied by his having signed an Employee Acknowledgment that clearly stated he would be an employee-at-will and also referenced the company's Human Resources Policies, which clearly stated on the first page that no representative or officer of the company could alter this employment-at-will status. We thus affirm the grant of summary judgment as to these claims for substantially the reasons stated by the district court. See *Lowe v. AmeriGas, Inc.*, 52 F. Supp. 2d 349, 356-58 (D. Conn. 1999).

Appellant next claims that he was wrongfully discharged in retaliation for exercising his right to free speech, in violation of Connecticut law, see *Conn. Gen. Stat. § 31-51q* ("[No] employer . . . [may] subject[] any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first [*6] amendment to the United States Constitution . . . ."). Appellant asserts that he made numerous complaints to management about safety concerns that predated his employment with the company. According to appellant, he was fired in retaliation for these complaints.

To assert a valid claim under section 31-51q, appellant must show: (i) that he engaged in protected speech, (ii) that he was fired because of that speech, and (iii) that such speech did not "substantially or materially interfere with his bona fide job performance or with his working relationship with his employer." *Lowe*, 52 F. Supp. 2d at 359 (citing *Winik-Nystrup v. Manufacturers Life Ins. Co.*, 8 F. Supp. 2d 157, 159 (D. Conn. 1998); *Williams v. Bayer Corp.*, 982 F. Supp. 120, 123 (D. Conn. 1997)). Assuming arguendo that appellant's complaints are protected speech, we find that he has proffered no evidence that would permit a reasonable jury to find a causal nexus between that speech and his termination.

The only evidence that appellant raised safety concerns are a pair of memoranda he wrote to management. The first memorandum was written to Bill Russell, appellee's [*7] Regional Vice President, on November 20, 1995. Appellant wrote the memo to respond to his district's 1995 audit performance, which he admitted to be "inexcusable." The memorandum focused on the "lack of training, commitment, and turn over at the district level," and suggested that the problems in the district pre-dated appellant's arrival. In its conclusion, the memorandum stated

> This district has had years of neglect in its management. The administrative problems are a result of training, commitment, and turn over. The safety

problems are *explosive*. Prior to my arrival, the plant and the equipment would and could have been rendered inoperable by the appropriate government agencies. Since then, we have eliminated many of the safety problems. . . . I fully except [sic] the responsibility [for] this audit, although many of the violations existed prior to my employment.

The second memorandum was Lowe's monthly report to Gasparino, dated January 24, 1996. The two-page memo discussed Lowe's assessment of district performance, subdivided under a number of headings - Operations, Competitive Activity, Training, Programs, Employee Issues, and, lastly, Safety Issues. [*8] The "Safety Issues" portion of the memorandum follows:

> Killingworth and Waterford have 8 installations that fall under the federal pipeline safety regulations. Until recently, the districts have done nothing to comply with the mandates passed down from the government. The Connecticut Department of Public Utilities and Control has pressured on [sic] our office to comply with these regulations. Each installation must have an emergency action plan as well as an operation and maintenance plan. I would appreciate if the safety department could assist us with [this] matter.

No reasonable jury could infer that appellant was fired in retaliation for submitting these memoranda. Appellant suggests that we infer a causal connection merely because "the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Although temporal proximity can sometimes provide circumstantial evidence of retaliation, appellant has not offered any plausible theory that his disclaimers inconspicuously inserted in run-of-the-mill reports to management would motivate his superiors [*9] to act against him. Indeed, when deposed about his firing, appellant himself made no mention of retaliation for safety concerns but instead complained only of a "personal problem" between him and Gasparino. Furthermore, as noted, there is uncontradicted evidence in the record that appellee received numerous, significant complaints about him from the Fire Marshal, customers, and employees. In sum, there is no evidence that would permit a rational jury to conclude that appellant's firing was causally related his raising safety concerns in the two memoranda. Thus, summary judgment for appellee on this claim is appropriate.

Finally, appellant correctly notes that a defendant might well be liable for the tort of negligent misrepresentation though not liable for breach of contract. See, e.g., *D'Ulisse-Cupo v. Board of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 520 A.2d 217, 223 (1987). However, appellant must show that he justifiably relied on the negligent misrepresentation. See id. Because appellant signed a written acknowledgment that he was to be an employee-at-will and that also referenced the company's guide stating that no employee could modify those employment-at-will [*10] terms, no reasonable jury could find that appellant justifiably relied on Sheffield's alleged misrepresentations.

We therefore affirm.