LEXSEE 1995 US DIST LEXIS 10296

EMANUEL PISANA, Plaintiff, - against - MERRILL LYNCH & CO., INC., Defendant.

93 Civ. 4541 (LMM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1995 U.S. Dist. LEXIS 10296*

July 20, 1995, Decided
July 24, 1995, FILED

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

For EMANUEL PISANA, plaintiff: Judith P. Vladeck, Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY.

For MERILL LYNCH & COMPANY, INC., defendant: Jill L. Rosenberg, ORRICK HERRINGTON & SUTCLIFFE, New York, NY.

**JUDGES:** LAWRENCE M. McKENNA, U.S.D.J.

**OPINIONBY:** LAWRENCE M. McKENNA

**OPINION:**

MEMORANDUM AND ORDER

McKENNA, D.J.

Plaintiff, Emanuel Pisana ("Pisana"), brought this action against Defendant, Merrill Lynch & Co., Inc. ("Merrill Lynch"), alleging violation of the Age Discrimination in Employment Act, as amended, *29 U.S.C. § 621*, et seq. (1985) ("ADEA"), related state law violations, and breach of employment contract. Merrill Lynch has moved the Court for summary judgment, pursuant to *Fed. R. Civ. P. 56*. For the reasons discussed below, Merrill Lynch's motion is granted.

**I. Facts**

Emanuel Pisana worked for Merrill Lynch as a telecommunications manager for seven years. He was discharged in December, 1992, at the age of 46, in a reduction in force ("RIF") in Merrill Lynch's Telecommunications Division. Pisana claims that the RIF was motivated, at least in part, by age discrimination rather than by legitimate business reasons. He complains of several actions allegedly taken by Merrill Lynch, including the division of his former job responsibilities between two younger employees; the retention of predominantly younger, less qualified managers in the RIF; and the failure to rehire him [*2] when his original position was reconstituted a year after his discharge.

Pisana also claims that Merrill Lynch breached an implied employment contract with him. He argues that the employee handbook, which prohibits reprisals against employees who utilize an internal complaint procedure, gives rise to a limitation on Merrill Lynch's ability to fire him as an "at will" employee. Pisana, who used the complaint procedure in an attempt to expose wrongdoing in his department, believes that his discharge may have resulted from a contractually prohibited reprisal.

**II. Standard for Summary Judgment**

Summary judgment should be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; see also *Celotex Corp. v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The moving party must demonstrate the absence of any genuine issue of material fact. See *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*. "[A] fact is material when its resolution would 'affect the outcome of the suit under governing law,' and a dispute is genuine [*3] 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Hetchkop v. Grundolt Carpet Workroom, Inc.*, 1994 WL 7524 at *2 (S.D.N.Y.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)); see also *Celotex*, 477 U.S. at 322-24. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. The nonmoving party's "evidence . . . is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 112 S. Ct. 2072, 2077, 119 L. Ed. 2d 265 (1992) (quoting *Anderson*, 477 U.S. at 255).

The Second Circuit has suggested caution in granting summary judgment in discrimination cases where intent and state of mind are at issue. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). However the Court subsequently characterized Gallo as expressing "an unexceptionable principle of considerable lineage," and reaffirmed the availability of summary judgment in discrimination [*4] cases. *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994).

### III. ADEA Claim

#### A. McDonnell Douglas Analysis

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) provides a three stage analysis for ADEA claims, with the burden of production shifting between plaintiff and defendant, but with the ultimate burden of proof always resting on the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2747-48 (1993). First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. If the prima facie case is established, the defendant must then "articulate some legitimate, nondiscriminatory reason" for its actions. *Id. at 802*. This burden is satisfied by the proffer of a lawful reason for the defendant's actions. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256-58, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). The defendant's reason need not be one that a court would agree with, but it must not be discriminatory. *Wilson v. Supreme Color Card, Inc.*, 703 F. Supp. 289, 300 (S.D.N.Y.), aff'd without [*5] opinion, 880 F.2d 1320 (2d Cir. 1989).

Once the defendant has satisfied this requirement, the plaintiff must prove, by a preponderance of the evidence, that the defendant's reason was a pretext for age discrimination. *McDonnell Douglas*, 411 U.S. at 804. Discrimination need not be the sole reason for the termination, but it must be a "but for" cause. n1

n1 "The ADEA applies only where plaintiffs establish that age-discriminatory animus was the 'but for' cause of the challenged employment action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 172 (2d Cir. 1993); see also *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir. 1983) (plaintiff "was required to prove only that, even if performance and attitude were factors in his termination, nevertheless he would not have been fired but for his age"); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) ("prohibited factor was at least one of the 'motivating factors'").

The Second Circuit has observed that:

> some evidence [*6] [of age bias] is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason for the discharge.

*Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) (citations omitted) (emphasis in original). Plaintiff's argument that "the stated [non-discriminatory] purpose is implausible, absurd or unwise" may be sufficient to create a genuine issue of material fact. *DeMarco*, 4 F.3d at 171.

#### B. Conceding Pisana's Prima Facie Case

The four elements an ADEA plaintiff must prove in order to establish a prima facie case are: (1) membership within the protected age group, (2) qualification for the position, (3) discharge, and (4) discharge under circumstances "giving rise to an inference of discrimination." *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993); *Maresco v. Evans Chemetics*, 964 F.2d 106, 110-11 (2d Cir. 1992). The first three elements are frequently undisputed, as in [*7] the present case (Def.'s Mem. at 11 n.2.), or lend themselves to ready determination.

The more consistently troublesome issue is the fourth element, the determination of whether the complained of personnel action meets the nebulous standard of having occurred under circumstances "giving rise to an inference of discrimination." *Maresco*, 964 F.2d at 111. The fourth element may be established with

Case 3:02-cv-01384-MRK    Document 97-17    Filed 06/28/2005    Page 3 of 10

Page 3
1995 U.S. Dist. LEXIS 10296, *

direct, statistical or circumstantial evidence. *Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100, 104 (2d Cir. 1989)*. Recognizing the difficulty of establishing discriminatory intent, n2 particularly in the context of a RIF, the burden placed on a plaintiff to establish a prima facie case is "modest." *Woroski, 31 F.3d at 109*.

> n2 Employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a "smoking gun," such as a notation in an employee's personnel file, attesting to a discriminatory intent . . . . A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.
>
> *Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991)*.

[*8]

In a preliminary review of the circumstances surrounding Pisana's discharge, the Court found little that would give rise to an inference of age discrimination. Nevertheless, given the minimal burden imposed upon an ADEA plaintiff to establish a prima facie case, Pisana's detailed recitation of facts allegedly evidencing discriminatory animus, and Merrill Lynch's anticipatory proffer n3 of a non-discriminatory reason for his termination, the Court finds it expeditious to simply concede the existence of the fourth element, and therefore the sufficiency of Pisana's prima facie case. The Court moves directly to the final stage of the McDonnell-Douglas analysis to determine if Pisana has "produced sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false." *Woroski, 31 F.3d at 109-110*.

> n3 On a motion for summary judgment, a defendant in a discrimination action is unlikely to rely solely on arguments relating to the insufficiency of plaintiff's prima facie case. Defendants invariably attempt to justify their actions as nondiscriminatory, prefaced by a statement to the effect of "even if the Court determines that Plaintiff has established a prima facie case, it is clear that Plaintiff cannot possibly meet his or her ultimate burden."

[*9]

### C. Employee's Self-Evaluation and Employer's Subjective Business Decision

As a preliminary matter, the Court rejects Pisana's most forcefully advanced argument. Pisana contends that, given his "excellent" level of performance, n4 his discharge is inexplicable, unless it is assumed to be motivated by discriminatory and/or retaliatory animus. In particular, Pisana contends that discrimination is evidenced by the fact that his qualifications exceeded those of younger workers who were either retained in the RIF, or who were promoted into positions that he was qualified for. Pisana focuses on three individuals: Philip Portera ("Portera"), age 37, who, rather than being fired in the RIF, was promoted to manager of the Network Management Group; and Arthur Wallach ("Wallach"), age 33, and Gerald Maloney ("Maloney"), age 34, who assumed Pisana's job responsibilities, for a time, upon his termination. Pisana provides a lengthy analysis of why he was a better choice than Portera for manager of Network Management, and why Wallach and Maloney lacked the experience or ability to take over his existing job responsibilities.

> n4 During Pisana's seven years at Merrill Lynch, his performance was excellent. For his last five years of his employment, Pisana's performance was rated as "Exceeded Requirements." . . . Pisana's peers and superiors held him in great esteem.
>
> (Pl.'s Mot. at 4.)

[*10]

The irrelevance of this argument arises from the fact that Merrill Lynch has at no time claimed that Pisana's performance was either deficient or related to his termination. Merrill Lynch states that "in the fall of 1992, the Telecommunications Division underwent a restructuring which was aimed at consolidating functions, eliminating redundancies, maximizing efficiency and improving service to Merrill Lynch." (Def.'s Reply Mem. at 2.) "Plaintiff's position was eliminated because his job was viewed by [his Department head] to be expendable and capable of being performed by other existing employees." (Def.'s Mem. at 21; Sieben Aff. P 18; Seeto Aff. P 21; Ex. 3 to Seeto Aff.)

The mere assertion of a reduction in force does not, of course, insulate a defendant from scrutiny for ADEA violations. *Hagelthorn, 710 F.2d at 81; Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829, 88 L. Ed. 2d 74, 106 S. Ct. 91 (1985)*. Courts do, however, place a greater burden on plaintiffs in such

Case 3:02-cv-01384-MRK    Document 97-17    Filed 06/28/2005    Page 4 of 10

Page 4
1995 U.S. Dist. LEXIS 10296, *

cases to prove an intent to discriminate. *Rosengarten v. J.C. Penney Co.*, 605 F. Supp. 154, 157 (E.D.N.Y. 1985) (In RIF scenarios, "the perception of the decision-maker, and [*11] not that of the plaintiff himself . . . is relevant.")

Employers are free to terminate employees for subjective business judgments so long as their actions are not taken for discriminatory reasons. *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921-22 (2d Cir. 1981); see also *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982) ("The [ADEA] does not authorize the courts to judge the wisdom of a corporation's business decisions."), cert. denied, 459 U.S. 1103, 74 L. Ed. 2d 950, 103 S. Ct. 725 (1983); *Drown v. Portsmouth Sch. Dist.*, 435 F.2d 1182, 1186 (1st Cir. 1970) (employers have the "prerogative to be shortsighted and narrowminded"), cert. denied, 402 U.S. 972, 29 L. Ed. 2d 137, 91 S. Ct. 1659 (1971); *Donaldson v. Merrill Lynch & Co.*, 794 F. Supp. 498, 504 n.3 (S.D.N.Y. 1992) (citation omitted) ("The essence of a RIF is that competent employees who in more prosperous times would continue and flourish with a company may nevertheless have to be fired.").

Rather than relying on the "subjective business judgment" doctrine, Merrill Lynch has chosen to respond substantively to the attacks on Portera, Wallach and Maloney. Merrill Lynch notes that these [*12] employees received ratings of "Exceeded Requirements" or "Far Exceeded Requirements" -- equal or superior to Pisana's ratings -- in relevant periods preceding the RIF. n5 (Exs. 2-5 to Seeto Suppl. Aff.) Merrill Lynch further notes that, prior to the reorganization, Portera was promoted to "Grade 33" managerial status from the "Grade 32" status that he had shared with Pisana. (Ex. 1 to Rosenberg Supp. Aff.)

n5 Seeto, for example, observes that Maloney received a "Far Exceeded Requirements" rating three years in a row, the highest possible rating, and one never achieved by Pisana. (Seeto Suppl. Aff. P 9)

Cases such as Parcinski and Stanojev demonstrate that Merrill Lynch is not obliged to prove the wisdom of its business judgments, so long as those judgments were not tainted by discrimination. With no claim by Merrill Lynch that Pisana's work was deficient in any regard, and in the absence of any independent evidence of discriminatory taint, discussed infra, Pisana's self-evaluation is not relevant [*13] to the instant motion.

**D. Reduction in Force**

It is uncontested that, pursuant to a reorganization, the total number of employees in Telecommunications and another division was to be reduced by 50 persons, or 10% of the existing staff. (Def.'s 3(g) P 20; Pl.'s 3(g) P 20.) To achieve this reduction, Phil Seeto, the new head of Network Operations (a department within Telecommunications), recommended the merger of two units: Reporting and Compliance -- managed by Pisana, with Network Performance and Support -- managed by Portera. (Id. P 30.) In consequence of the merger, one of these two managers was no longer required.

As a result of the staff reductions, the head count in Telecommunications alone was reduced by January, 1993 by at least 21 persons, 14 of whom were in Network Operations. (Id. P 47; Sieben Aff. P 21.) Pisana was one of eight managers within Network Operations. Seven of those eight individuals were over the age of 40, and therefore within the protected class immediately before the staff reductions. n6 (Id. P 50; Seeto Aff. P 31; Evans Aff. P 3.) Each manager within the protected class, except for Pisana, was retained. Furthermore, several of the retained [*14] individuals were older than Pisana. (Seeto Aff. PP 30-31.) This fact alone strongly suggests that the RIF was not pretextual for age discrimination. See, e.g., *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 118 (2d Cir. 1991) (retention of three older employees relevant to ADEA claim); *Parcinski*, 673 F.2d at 36 (fact that three of four retained workers in RIF were in protected class justified JNOV for employer).

n6 Two additional managers, who were under 40 years of age, had been transferred to another division by November 1, 1992. (Pl.'s 3(g) P 50; Def.'s Reply Mem. at 10 n.10.)

It is also uncontested that Seeto, age 42, proposed Pisana's termination, and that Bruce Sieban, age 49, Director of Telecommunications, approved Pisana's discharge. n7 (Def.'s 3(g) and Pl.'s 3(g) P 20; Ex. 3 to Seeto Aff.) The fact that these decision makers were close to Pisana's age, or older, weakens any suggestion of age discrimination. *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993). [*15]

n7 Pisana claims that Mark Anderson, Seeto's predecessor as Network Operations manager, age 37, was consulted by Seeto about this decision, which would put some decision-making power in the hands of an individual outside of the protected class. Pisana has not, however, contested Merrill Lynch's assertion that

Case 3:02-cv-01384-MRK    Document 97-17    Filed 06/28/2005    Page 5 of 10

Page 5
1995 U.S. Dist. LEXIS 10296, *

Anderson's involvement was limited to agreement concerning the composition of the initial staff reduction list. (Seeto Aff. P 22.)

Were the relevant population expanded from the eight managers within Network Operations to the sixty-four managers within Telecommunications, the number of discharged protected managers would rise from one to three. n8 (Pl.'s Mem. at 30.) Since the average age of Telecommunications managers before the RIF was above forty, (Sieben Aff. P 22), elementary statistics dictates that most samples selected from that pool would contain predominantly protected workers. The three terminations reduced the average age of Telecommunications managers from 42.41 to 42.05, (Ex. 7 to Sieben [*16] Aff. n9 ), an insignificant change for a RIF allegedly motivated by age discrimination. n10

n8 The relevant population cannot be expanded beyond Telecommunications to include other divisions within Global Information Services, as the Pisana decisionmakers, Seeto and Sieben, could not have been involved in discharges within those divisions.

n9 While Pisana halfheartedly disputes these statistics, his data appear suspect. Compare Pl.'s Mem. at 30 (51 year old Healy was discharged) with Def.'s Reply Mem. at 9, 11 n.14 (Healy remains employed at Merrill Lynch today, another "older" worker "saved" from layoff).

n10 Of course, as Pisana observes, the statistical impact of three terminations out of 64 would not be large in any event.

Pisana struggles mightily, but unsuccessfully, to work the statistics in his favor. For example, rather than noting that seven of eight managers in Network Operations were in the protected class, and six of those workers were retained in the RIF, Pisana observes [*17] that he, "the only [Network Operations] manager that Merrill Lynch fired as part of the downsizing, was in the protected age group." (Pl.'s Mem. at 29.) Of course, with a single exception, any discharge from that group would have been the discharge of a protected individual. See *Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir. 1990)* (statistical analysis may show that the most important factor in predicting retention is age, however the benign explanation for this fact is that older persons tend to occupy key management positions).

Pisana similarly observes that the four younger employees in his Reporting and Compliance unit were retained. This fact is irrelevant to Pisana's claim, since the goal of the RIF was not to terminate necessary work units, but only to reduce head count, through, inter alia, the elimination of excess managers. Such a discharge is more properly viewed as an eliminated position than as a replacement of an older person by a younger one in an unchanged position. Discriminatory animus is less easily established where employees are eliminated rather than replaced. *DiCola v. Swissre Holding, Inc., 996 F.2d 30, 33 (2d Cir. 1993).* [*18] Pisana does not appear to be arguing that he should have been retained in one of these four non-managerial positions, simply to provide him with employment. See Id. (higher salaries can be the basis for termination so long as salary is not a surrogate for age).

Pisana relies on *Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100 (2d Cir. 1989),* for the proposition that discriminatory animus is established where a department head is laid off and his staff continues without him. However Pisana relies too heavily on this case, as the Second Circuit articulated five additional factors in its decision to deny summary judgment to the employer. One of those factors was the transfer of the plaintiff's responsibilities to an already overworked coworker, Rossi, who was 30 years younger than the plaintiff. To remedy Rossi's overload, some of her job responsibilities were soon assigned to a new hire, who was 26 years old. Another factor was that the plaintiff in Montana was "the only department head whose position was consolidated into the corporate headquarters and whose staff continued without her." *Id. at 105.* The facts of the instant case bear little resemblance [*19] to Montana.

E. **Pisana's Particularized Allegations of Discrimination**

The Court addresses several of Pisana's remaining allegations of discrimination. First, Pisana contends that Portera told Margaret Kelly, a fellow Merrill Lynch employee, that Kelly's husband and Pisana were "too old" to do their jobs. (Pl.'s Dep. at 868-69.) Kelly told Pisana of this remark sometime after Pisana's discharge. Pisana does not know when the underlying statement was made by Portera, except that it occurred before Portera was transferred from Merrill Lynch's Staten Island facility to Manhattan in mid-1991. (Id. at 869; Portera Aff. PP 5, 10.)

As Pisana has not alleged that Portera had any input with regard to Pisana's discharge, the Court declines to consider this double hearsay remark. (Pl.'s Mem. at 31 & n.20.) See *Carroll v. ITT Corp., 37 Fair Empl. Prac. Cas. (BNA) 1712, 1714 (S.D.N.Y.)* (hearsay statements to ADEA plaintiff, including one from his department head that chairman did not want company "to become a home for old engineers" did not create triable issue as to

Case 3:02-cv-01384-MRK    Document 97-17    Filed 06/28/2005    Page 6 of 10

Page 6
1995 U.S. Dist. LEXIS 10296, *

company-wide policy of age discrimination), aff'd, *779 F.2d 38 (2d Cir. 1985)*; *Price Waterhouse v. Hopkins,* [*20] *490 U.S. 228, 251-52, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)* (stray remarks in the workplace, by themselves, do not prove that discrimination played a part in a challenged employment decision); *Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 316 (6th Cir. 1989)* ("single, isolated discriminatory comment" by plaintiff's supervisor that he "needed younger blood" insufficient to avoid summary judgment).

Second, Pisana contends that Merrill Lynch was obligated to attempt to reassign him to an alternative position within the company, or, subsequent to his termination, to rehire him. Pisana bases this claim upon his termination letter, which contains a notation that he was eligible for rehire, (Ex. P to Beranbaum Aff.), and upon the following language in Merrill Lynch's policy manual:

> It is Merrill Lynch's policy to make every effort to find new positions within the firm for employees whose jobs have been eliminated. They receive priority consideration by departments and offices filling openings.

(Ex. N to Beranbaum Aff. at VI-15.)

With regard to Pisana's reassignment claim, the Court finds, infra section IV, that Merrill Lynch's policy manual fails to convert [*21] Pisana from an "at will" employee to an employee with an implied employment contract. In light of Merrill Lynch's goal of reducing the headcount of Telecommunications and other divisions of Global Information Services by approximately ten percent, the transfer of each and every affected individual within the company to another position would clearly defeat the business purpose of the reorganization, and does not support an inference of age discrimination. *Rose, 902 F.2d at 1421.*

It is true, however, that an employer's failure to transfer older employees, while according such treatment to younger ones, will support an ADEA claim, at least to the extent of establishing a prima facie case. See, e.g., *Rottersman v. CBS, Inc., 726 F. Supp. 484, 492 (S.D.N.Y. 1989)* (prima facie case established in corporate streamlining where only the oldest affected employee, the sixty-two year old plaintiff, discharged rather than transferred); *Marshall v. Arlene Knitwear, Inc., 454 F. Supp. 715 (E.D.N.Y. 1978)* (prima facie case established where sixty-two year old worker discharged, shortly before securing pension benefits, while much younger workers were retained), aff'd in part and [*22] rev'd in part, *608 F.2d 1369 (2d Cir. 1979)*; *Sheahan v. CBS, Inc., 1994 U.S. Dist. LEXIS 2623, at *19 (S.D.N.Y. Mar. 3, 1994)* (denying summary judgment where material issue of fact as to whether positions were located for younger news correspondents, but not plaintiff, where evidence suggested plaintiff may have been qualified for reassignments given to younger workers.)

In the present case, Pisana claims that "Seeto went out of his way to rescue the jobs of mediocre performers in their thirties" and that "Merrill Lynch's failure to use the same measures to protect Pisana's job that it took to protect younger employees' jobs supports an inference of discrimination." (Pl.'s Mem. at 27.) Pisana observes, for example, that 35 year old manager Rich Gilbride was "given a reprieve by Seeto." Id. However Pisana has not rebutted Merrill Lynch's assertion that Gilbride, with a 1992 rating of "Exceeded Requirements," was retained because another employee in his unit voluntarily resigned. (Pl.'s Mem. at 27; Seeto Dep. at 327; Def.'s Reply Mem. at 6 n.5.)

More significantly, Pisana has not claimed that he was qualified to perform the same job as Gilbride. To the extent that workers, [*23] particularly managers with expertise in multiple technical areas, are not "fungible," there is no reason to expect that discharges may be consistently avoided through internal transfers. No argument has been advanced that Merrill Lynch had an obligation to create a new position for Pisana merely to keep him on the payroll. *Stanojev, 643 F.2d at 920.*

Merrill Lynch has documented several variations from the initial list of proposed staff reductions, which are devoid of suggestions of age discriminatory animus. The fact that these substitutions occurred within several different work units further suggests that Pisana was not singled out for termination as opposed to transfer. Merrill Lynch also points to workers in the protected class, close to Pisana's age or older, who received a "reprieve" from the initial list, including Bill Cea, age 44 (Exs. K and L to Beranbaum Aff.; Def.'s Reply Mem. at 7) and Robert Healy, age 51 (Ex. 5 to Sieben Aff.; Ex. 4 to Rosenberg Suppl. Aff; Def.'s Reply Mem. at 9 n.9.) Finally, the egregious facts present in cases such as Rottersman and Sheahan are entirely absent from the case at bar. No rational fact-finder, looking at this pattern of [*24] discharges, transfers, and "reprieves," could find that Merrill Lynch's proffered reason for discharging Pisana was pretextual.

With regard to Pisana's rehire claim, Merrill Lynch notes that while Pisana may have been eligible for rehire, he neither applied for, nor expressed interest in any position at Merrill Lynch after his discharge. Merrill Lynch's policy manual contains no representation that, like a union "recall list," all previously furloughed employees will automatically be considered for rehire. Furthermore, the policy manual explicitly states that the

order of preference for "applicants" for full-time positions is:

1. Employees applying for reinstatement from military leaves of absence.
2. Employees applying for reinstatement from unpaid illness or unpaid maternity leaves.
3. Employees whose positions are being eliminated.
4. Employees seeking transfers (with manager's approval).
5. New applicants and former employees who are eligible for rehire.

(Ex. N to Beranbaum Aff. at VI-15 (emphasis added).) Pisana, who in any event was not an "applicant" for purposes of this list, would fall into the fifth category, on an equal footing with new applicants. [*25] Had Pisana applied for a managerial position subsequent to his termination, Merrill Lynch's failure to consider him might be probative of age discrimination. Given his failure to even apply for such a position, the Court rejects his rehire argument.

Pisana's third argument relates to the alleged "reconstitution" of his position shortly after his dismissal. Pisana's responsibilities were originally distributed between Wallach (performance reporting) and Maloney (vendor management, vendor reporting, contract compliance). (Pl.'s Mem. at 10.) Some months later Pisana claims that Dorothy Horber, who was, at the time, either "in her late thirties," (Pl.'s Mem. at 14), or forty-one years old, (Def.'s Reply Mem. at 15), first assumed the vendor compliance functions, and, some months later, performance reporting.

Pisana compares his situation to the one in Gallo, where within nine months of plaintiff's departure, defendant resurrected plaintiff's job function and assigned it to a newly hired younger employee, refusing to interview plaintiff for the reconstituted position. Gallo bears little similarity to the instant case, in which there was neither the hiring of a new employee, the [*26] refusal to interview, a significant age difference between the two workers, n11 or the purported elimination of plaintiff's responsibilities. n12 Furthermore, it is uncontested that Horber only took over Maloney's portion of Pisana's job responsibilities when Maloney applied for, and obtained, a position in another Merrill Lynch division. Horber continued her previous projects during this period of time. (Seeto Suppl. Aff. PP 17, 18.)

n11 The difference being roughly six years here, rather than 20 to 30 years in Gallo.

n12 In Gallo, the plaintiff was discharged after his employer ceased working on the publications for which plaintiff was responsible. A year later, the employer resurrected the publications. In the instant case, Pisana's responsibilities were redistributed to existing employees who continued to perform other responsibilities as well. Gallo, 22 F.3d at 1225.

While Gallo is not on point, there are numerous cases in which the mere fact that a defendant hired a younger man [*27] to perform the functions at one time assigned to plaintiff was held not to give rise to an inference of discrimination. See, e.g., Frumkin v. IBM Corp., 801 F. Supp. 1029, 1040 (S.D.N.Y. 1992) (no inference of discrimination where "replacement" worker was younger and less experienced); Morser v. AT&T Information Sys., 703 F. Supp. 1072, 1082 (S.D.N.Y. 1989) (no inference of discrimination where duties of fifty-eight year old employee terminated in RIF were reassigned to a younger employee, even where decision was based in part on lack of "future potential"); Suttell v. Manufacturers Hanover Trust Co., 793 F. Supp. 70, 73 (S.D.N.Y. 1992) (distribution of RIF discharged employees' work to remaining younger employees indicates only that the employer was successful in reducing the number of employees required to perform certain tasks); Rose, 902 F.2d at 1422 (9th Cir. 1990) (fact that plaintiff's responsibilities were not assumed by younger co-worker until six or seven months after plaintiff's discharge "substantially weakens" his claim.).

Pisana's allegation of reconstitution, which amount to a long-term corporate conspiracy to replace him with a worker only six years [*28] younger, is entirely without support in the record. Shifting job responsibilities are part of the reality of modern corporate life, particularly in times of economic stress.

Pisana's fourth argument is that the RIF was pretextual, because, in 1992 and 1993, Merrill Lynch hired fifty one employees in Telecommunications, including four managers. Pisana has presented no evidence that these hirings relate in any way to the staff reductions at issue here and has failed to rebut Merrill Lynch's evidence that the hirings were motivated by the creation of a new group, Distributed Computing Services, to replace departing employees, and to work on specially funded projects. (Seeto Dep. at 410-22; Sieben Dep. at 276-79; Seeto Aff. P 32; Def.'s Reply Mem. at 17-18). See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993) (reasonable juror could not conclude that reduction in force shortly after adding ten new positions was pretextual, in absence of evidence connecting the events), cert. denied, 128 L. Ed. 2d 72, 114 S. Ct. 1398 (1994).

Pisana's remaining allegations on his ADEA claim are similarly without support in the record, and the Court declines to address them. [*29] While Pisana has presented the Court with a very large number of arguments to defeat summary judgment, their combined weight is negligible, and no disputed material issues of fact remain. Finding the evidence of discriminatory intent to be so slight that no rational jury could find in plaintiff's favor, *Gallo, 22 F.3d at 1224*, the Court grants Merrill Lynch's motion as to the ADEA claim.

### IV. Breach of Contract Claim

"It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987)*. Under limited circumstances, however, New York recognizes that an employee may no longer be terminated at will, because the employer has expressly agreed to limit its termination rights. Id.

Pisana alleges that Merrill Lynch's Management of Human Resources Policies and Procedures manual ("policy manual") created such a limitation. In a section entitled "Work Environment - Employee Problems -- Resolving Employee Complaints" the policy manual states:

> If [*30] an employee you manage has a complaint about any aspect of his or her job (such as an assignment, compensation, benefits, promotions, discipline, etc.), tell him or her about the Firm's employee complaint procedure.
>
> **Supervisor review**: The first step is for the employee to present the problem to his or her manager.
>
> . . . .
>
> Make sure the employees you manage understand that this procedure was set up to resolve their complaints equitably. All reviews and associated records will be strictly confidential. Employees who follow this procedure will not be penalized in any way for using the process.

(Ex. N to Beranbaum Aff. at 111-13 (emphasis added).)

Arguing that the provision created an implied employment contract, Pisana contends that Merrill Lynch breached its contractual obligations when it terminated him. Pisana claims to have relied upon the manual's non-retaliation guarantee when he utilized the complaint procedure to raise three issues with management: alleged improper manipulation of employees' incentive bonuses; alleged misconduct by Portera; and an alleged improper performance rating he received. Pisana believes that his discharge may have resulted, [*31] at least in part, in retaliation for the complaints he lodged. The retaliation claim is presented in a wholly conclusory fashion, without facts or theories that would suggest a causal connection between the two events.

In *Wright v. Cayan, 817 F.2d 999 (2d Cir.), cert. denied, 484 U.S. 853, 98 L. Ed. 2d 112, 108 S. Ct. 157 (1987)*, the Second Circuit reviewed New York caselaw on implied employment contracts. The Court observed:

> It could be argued that *[Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982)]* altered the New York rule that some sort of express limitation must exist, when it noted that in deciding whether the presumption of at will employment is overcome:
>
> > the trier of the facts will have to consider the "course of conduct" of the parties, "including their writings" . . . and their antecedent negotiations. Moreover, . . . it is not [the employer's] subjective intent, nor "any single act, phrase or other expression", but "the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain", which will control.

*57 N.Y.2d at 466-67*. . . . [*32]

However, in the more recent case *Murphy v. American Home Products Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)*, the Court of Appeals reviewed current New York law and concluded:

Case 3:02-cv-01384-MRK    Document 97-17    Filed 06/28/2005    Page 9 of 10

Page 9
1995 U.S. Dist. LEXIS 10296, *

> Absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.
> 
> . . .
> 
> 58 N.Y.2d at 305.
> 
> . . . .
> 
> New York courts have required an express limitation in the wake of Weiner and Murphy. See, e.g., *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725, 492 N.Y.S.2d 9, 481 N.E.2d 549; *Oakley v. St. Joseph's Hospital*, 116 A.D.2d 911, 498 N.Y.S.2d 218 (A.D. 3d Dept. 1986) . . . .

817 F.2d at 1003-04.

Under Weiner, a plaintiff must show: (i) an express promise that he would not be discharged except for just cause; (ii) that such assurance was contained in a written form; and (iii) that the plaintiff relied on that promise to his detriment by leaving a prior position or rejecting other offers of employment. *57 N.Y.2d at 464-66*. The Second Circuit, in what has been called a "totality of circumstances" [*33] approach, views the Weiner factors flexibly. *Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 853 (2d Cir. 1985)* ("If Weiner stands for anything, it stands for the proposition that the merits of a claim alleging breach of an employment contract are not to be determined by application of a formula or checklist; instead the totality of facts giving rise to the claim must be considered.")

Pisana's breach of contract claim is clearly deficient under a mechanical Weiner analysis as regards the first factor, since the handbook clearly did not limit the grounds for discharge to "just cause," and as regards the third factor, since Pisana's "reliance," if any, occurred no earlier than seven years into his employment at Merrill Lynch.

Pisana's claim is also deficient under Gorrill's totality of circumstances approach, in which the Weiner factors remain highly relevant. See, e.g., *Cucchi v. New York City Off-Track Betting Corp., 818 F. Supp. 647, 650-51 (S.D.N.Y. 1993)* (under Gorrill, employee remained "at will" where Policy and Procedures Manual and "Rules of Discipline" statement failed to expressly limit termination to "for cause" grounds, and employee [*34] failed to establish pre-hiring reliance).

Of particular importance under a totality analysis is the disclaimer found, in a typeface and point size identical with the rest of the document, on the first page of the handbook. n13 Under the bold-face subheading "Employment At Will/No Contract", the disclaimer states:

> The policies and procedures set forth in this guide serve as guidelines only to help managers handle human resources issues. This guide and its contents are not intended to create, and do not create, an employment contract or a guarantee of continued employment for any employee. Merrill Lynch is free to terminate an employee at any time for any reason, just as an employee may resign at any time for any reason. . . .

(Ex. N to Beranbaum Aff. (emphasis added).)

   n13 A second disclaimer is found in Pisana's employment application, immediately above his signature line: "my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of Merrill Lynch or myself." (Ex. 2 to Rosenberg Aff.) Pisana concedes that he read the statement before signing his name. (Pisana Dep. at 61.)

[*35]

Pisana characterizes the front page disclaimer as "not conspicuous," (Pl.'s Mem. at 44), and claims that he was unaware of its existence. The Court finds it difficult to reconcile this contention, which in any event is of no legal significance, with Pisana's deposition testimony:

> Q. Did you use it in connection with your responsibilities as a manager?
> A. Absolutely.
> Q. What kind of things did you use it for?
> A. Any time there was any question on lateness, sick days, leaves of absence, I opened it up in front of the employee and would review it. Anything pertaining to myself [sic] I would follow the book.

(Pisana Dep. at 91-92.)

Pisana's reliance on cases in which a disclaimer was hidden, *Jimenez v. Colorado Interstate Gas Co., 690 F.*

Supp. 977, 981 (D. Wyo. 1988), or where the disclaimer was never provided to the employee, *Moore v. Merrill Lynch & Co., 1991 U.S. Dist. LEXIS 10628, 7 I.E.R. Cas. (BNA) 1849 (D.N.J. 1991)*, are clearly inapposite. In fact, the Moore court observed that the disclaimer "if effective against plaintiff, would completely undermine plaintiff's [breach of contract] claim." Id. at 1853.

Handbooks with disclaimers such [*36] as those at issue here do not give rise to an implied employment contract. See, e.g., *Wideberg v. Tiffany & Co., 1992 N.Y. Misc. LEXIS 538, 8 I.E.R. Cas. (BNA) 228, 232 (Sup. Ct. 1992); Schrul v. General Motors Corp., 1994 U.S. Dist. LEXIS 11895*, at *9 (W.D.N.Y. Aug. 8, 1994) (handbook that "unequivocally and unmistakably expressed [the employer's] intent not to be contractually bound by its provisions" did not give rise to implied employment contract).

Furthermore, two courts have previously held that Merrill Lynch handbooks containing the language "the firm is free to terminate an employee at any time for any reason, just as an employee may resign at any time for any reason," established employees as being at will in character. *Delacruz v. Merrill Lynch & Co., 897 F.2d 521*, (D.N.J. filed 1990) (applying New York law), aff'd, *897 F.2d 521 (3d Cir. 1990);* Laboy v. Merrill Lynch & Co., Index No. 27514/86 (Sup. Ct. N.Y. Co. 1986).

The Court concludes that Merrill Lynch did not limit its power to terminate Pisana by statements made in its policy manual. With no employment contract in effect, Pisana's breach of contract claim must also fail.

**V. Conclusion** [*37]

Merrill Lynch's motion for summary judgment is granted. The clerk is directed to enter judgment dismissing the Complaint.

Dated: July 20, 1995

New York, New York

SO ORDERED.

LAWRENCE M. McKENNA

U.S.D.J.