<u>SUJATA NICHANI</u>
<u>VS.</u>
<u>UNITED TECHNOLOGIES CORP. AND OTIS ELEVATOR COMPANY</u>
CIVIL ACTION NO. 3:02CV1384 (MRK)

# Exhibit 2

Defendants' Reply to Plaintiff's Opposition to
Motion for Summary Judgment

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357  Page 1 of 9
Service: Get by LEXSEE®
Citation: 2001 u.s. dist. lexis 14357

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 2 of 10

*2001 U.S. Dist. LEXIS 14357, \**

BARBARA CAVUOTO, Plaintiff v. OXFORD HEALTH PLANS, INC., Defendant

3:99-CV-00446 (EBB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2001 U.S. Dist. LEXIS 14357

June 13, 2001, Decided

**DISPOSITION:** [\*1] Oxford's Motion for Summary Judgment [Doc. No. 73] GRANTED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant insurance company, alleging claims under Title VII, the Americans with Disabilities Act (ADA), and the Equal Pay Act (EPA). The insurance company moved for summary judgment on those claims.

**OVERVIEW:** As to the Title VII case, the employee failed to set forth a prima facie case, as the circumstances of her termination did not give rise to an inference of discrimination. At the time of her termination, the employee had been working for approximately six months under a corrective action letter, issued due to her perceived lack of managerial skills and the treatment of her employees. Although the employee was replaced by a male, she had recommended, one month before her termination, a supervisory promotion for the man and conceded in her deposition that he had experience equal to hers in payroll. As to the ADA claim, the court found that the employee offered no evidence that she was disabled, due to premenstrual syndrome, within the meaning of the ADA. Further, she offered no evidence that the insurance company believed that she suffered from an impairment that, if it truly existed, would have been covered under the ADA and that the company discriminated against her on that basis. As to the EPA claim, the employee failed to establish a prima facie case, as she failed to show that the comparators were performing equal work.

**OUTCOME:** The company's motion was granted.

**CORE TERMS:** summary judgment, payroll, prima facie case, termination, comparator, non-discriminatory, user, essential element, nonmoving party, genuine, defeat, male, job description, disability, training, gender, skill, genuine issue of material fact, issues of material fact, substantially equal, business decision, burden of proof, party opposing, genuine issue, state of mind, moving party, set forth, burden-shifting, well-pleaded, deposition

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof

**HN1** In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Although the moving party has the initial burden of establishing that no factual issues exist once that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

**HN2** If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357    Page 2 of 9

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 3 of 10

other facts immaterial. In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

HN3± In the context of a motion for summary judgment, the court is mandated to resolve all ambiguities and draw all inferences in favor of the nonmoving party. Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. If the nonmoving party submits evidence which is merely colorable, or is not significantly probative, summary judgment may be granted. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

HN4± Summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation. The United States Supreme Court has recently reiterated that trial courts should not treat discrimination differently from other questions of fact. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

HN5± The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN6± In a Title VII case based on alleged gender discrimination, where there is no direct or overt evidence of such discrimination, the court is to apply the now well-settled burden-shifting framework of the McDonnell-Douglas decision in order to determine whether summary judgment is warranted. First, the plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN7± In the context of a Title VII gender discrimination case, if the plaintiff succeeds in setting forth her prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Should the defendant set forth such a non-discriminatory reason, the presumption arising from the prima facie case drops from the picture. For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered non-discriminatory reason is a mere pretext for discrimination. The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false and that more likely than not discrimination was the real reason for the employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN8± The court cannot second guess the business decisions of a defendant, even if they seem unjust or unfair. A business decision need not be good or even wise. It simply has to be nondiscriminatory. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Other Laws

HN9± As to the "regarded as" subset of the Americans with Disabilities Act (ADA), a plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an impairment that, if it truly existed, would be covered under the ADA and that the employer discriminated against the plaintiff on that basis. More Like This Headnote

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357 Page 3 of 9

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 4 of 10

Labor & Employment Law > Discrimination > Disability Discrimination > Other Laws
HN10⚡ Temporary disabilities are not covered by the Americans with Disabilities Act. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN11⚡ Mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. More Like This Headnote

Labor & Employment Law > Equal Pay > Other Laws
HN12⚡ In order to state a prima facie case of salary discrimination based on sex under the Equal Pay Act, a plaintiff must demonstrate that (i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort and responsibility; (iii) the jobs are performed under similar working conditions. A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal. However, jobs which are merely comparable are insufficient to satisfy a plaintiff's prima facie burden. More Like This Headnote

Labor & Employment Law > Equal Pay > Other Laws
HN13⚡ In the context of the Equal Pay Act, the burden is on the plaintiff to prove that her position is substantially equal to the other comparators. The plaintiff faces a high standard of proof and, as it is her burden to prove her prima facie case, she may not argue an inference of equal work merely from the defendant's failure to prove otherwise. Rather than the insubstantial, inconsequential, or minor differences between the jobs, the court applies the equal work standard on the basis of the substantial differences such as those customarily associated with differences in wage levels. 29 C.F.R. § 1520.14(a). Job titles or job descriptions are not determinative without corroborating evidence of actual job content. More Like This Headnote

**COUNSEL:** For BARBARA CAVUOTO, plaintiff: Eugene N. Axelrod, Employment Law Group, Woodbridge, CT.

For OXFORD HEALTH PLANS, INC, BRENDAN SHANAHAN, SCOTT THIBEAULT, NICK DAUKAS, defendants: David J. Burke, John Higgins Kane, Arthur K. Engle, Robinson & Cole, Stamford, CT.

**JUDGES:** ELLEN BREE BURNS, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION: RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Barbara Cavuoto ("Plaintiff" or "Cavuoto") brought a nineteen-count Complaint against Defendant Oxford Health Plans, Inc. ("Defendant" or "Oxford") and three of its employees. Defendants moved to dismiss the Complaint as to seventeen counts, excluding the Title VII gender claim and the claim brought pursuant to the Equal Pay Act ("EPA"). The Court granted the motion as to sixteen of the counts and the three individual Defendants. It denied the motion as to the claim brought pursuant to the Americans With Disabilities Act ("ADA"). Following the completion of discovery, Oxford now moves for summary judgment on the remaining three counts of the Complaint.

**STATEMENT OF FACTS [*2]**

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The Court assumes familiarity with its Ruling on Defendants' Motion to Dismiss and incorporates the facts of that Ruling herein.

Cavuoto was employed by Oxford from June 26, 1995 to on or about March 9, 1998. When initially hired, she supervised just two people. As the demands of converting to a new computerized payroll system grew, Plaintiff would go to her supervisor, Brendan Shanahan ("Shanahan"), and request that she be able to hire

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 5 of 10

Page 4 of 9

new help. As he answered affirmatively in each instance, during the period between January, 1997 and March, 1998, she supervised ten to fifteen employees.

Between July 31 and August 4, 1997, while Plaintiff was away on a business trip, eight of her employees from the Payroll Department went to Scott Thibeault ("Thibeault"), the Director of Compensation and Benefits, to complain about Plaintiff's running of the Department. According to Thibeault's contemporaneous notes of the meetings, the complaints included the following:

- Barbara was very unprofessional . . . she humiliated people in front of their [*3] peers, she screamed at them and called them stupid.

- Barbara was very inconsistent in her application of policy and . . . the training was unreasonably short.

- Barbara was very mean to her employees, she looked down on them, made them feel that she (Barb) was the only one that knew anything and that everyone else was like garbage.

- Morale was very low and something had to change or we would lose the whole department. Payroll has serious exposure due to undocumented practices, no paper trail and inconsistent application of policies.

- She was very bright but had no people skills and no delegation abilities.

Following these meetings, Thibeault wrote a memo to Shanahan, copied to Jeanne Wisnewski, then Oxford's Vice President of Human Relations. An investigation ensued into the complaints that Thibeault had received. During this investigation, the Payroll employees were interviewed by both Shanahan and representatives of the Human Resources Department. As a result of the investigation, Shanahan met with Cavuoto and gave her a Corrective Action Letter. After requesting that an audit it required be deleted, a request honored by Shanahan, Cavuoto signed the amended [*4] Letter.

The Letter provided, in pertinent part, that her treatment of her employees was not "consistent with either Oxford's Standard of Conduct, nor [sic] our approach to leadership." To that end, Plaintiff was directed to immediately modify her negative approach, take Leadership Essentials training, participate in HR Essentials and seek additional support from the Employee Assistance Program as needed. The Letter added that the "improvement in this area needs to be immediate and sustained." Finally, the Letter concluded that "in the event that the concerns and complaints continue, further severe action will be necessary." Plaintiff's Exhibit U.

On March 9, 1998, Plaintiff was terminated, because "the problems in the Payroll department had not subsided since [Plaintiff was] made aware of them [in July of 1997]". Plaintiff's Exhibit X.

## LEGAL ANALYSIS

### I. The Standard of Review

HN1 In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) [*5] (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist "once that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." Sylvestre v. United States, 771 F. Supp. 515, 516 (D.Conn. 1990).

HN2 If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. Accord, Goenaga v.

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357 Page 5 of 9

Case 3:02-cv-01384-MRK   Document 99-3   Filed 06/28/2005   Page 6 of 10

March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In [*6] this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. Lamontagne v. E.I. DuPont de Nemours & Co., 834 F. Supp. 576, 580 (D.Conn. 1993), aff'd 41 F.3d 846 (2d Cir. 1994).

*HN3* The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965, 121 L. Ed. 2d 359, 113 S. Ct. 440 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-52 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor). See also, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

The Second [*7] Circuit has held that *HN4* summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). See Shumway v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir.1997) (upholding grant of summary judgment for defendant in Title VII sex discrimination case). The Supreme Court has recently reiterated that trial courts should not treat discrimination differently from other questions of fact. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

*HN5* "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue [*8] of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson 477 U.S. at 247-48 (emphasis in original).

## II. The Standard As Applied

### Title VII

*HN6* In a Title VII case based on alleged gender discrimination, where there is no direct or overt evidence of such discrimination, this Court is to apply the now well-settled burden-shifting framework of McDonnell-Douglas v. Green, 411 U.S. 792, 802-804, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) in order to determine whether summary judgment is warranted. Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir.2000).

First, the plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. See McDonnell Douglass, 411 U.S. at 802. [*9]

Ordinarily, this is not the end of the story. *HN7* If the plaintiff succeeds in setting forth her prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Should the defendant set forth such a non-discriminatory reason, the presumption arising from the prima facie case drops from the picture. St Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 125 L. Ed. 2d 407, 113 S. Ct. 2742 ((1993). For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered non-discriminatory reason is a mere pretext for discrimination. The plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false and that more likely than not [discrimination] was the real reason for the [employment action]'". Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996), quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994).

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357

Page 6 of 9

Case 3:02-cv-01384-MRK   Document 99-3   Filed 06/28/2005   Page 7 of 10

In [*10] the present case, the Court finds that it is not necessary to perform this burden-shifting analysis, as it finds that Plaintiff has failed to set forth a *prima facie* case in that the circumstances of her termination do not give rise to an inference of discrimination. McDonnell Douglas, 411 U.S. at 802. Plaintiff has offered no evidence that the complaints concerning her performance were not made to Thibeault. At the time of her termination, Plaintiff had been working for approximately six months under a Corrective Action Letter, issued due to her perceived lack of managerial skills and the treatment of her employees. That Letter required that the necessary improvement set forth therein "needs to be immediate and sustained." Her March 19, 1998 termination letter stated, in pertinent part, that "it was clearly stated to you, **and you concurred**, that the problems in the Payroll department had not subsided since you were made aware of them last July." It is beyond cavil, then, that this reason for her termination had nothing whatsoever to do with her gender.

It is true that Cavuoto was replaced by a male supervisor. However, one month before her termination she [*11] had recommended a supervisory promotion for this man and conceded in her deposition that he had experience equal to hers in payroll. Thus, she was not replaced by a less qualified male. "Rather, the employer has the discretion to choose among equal candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259. Thus, for this reason, also, Plaintiff cannot show proof of discrimination based on gender.

While it is also true that Defendant waited until after the new computer system was up and running prior to terminating Plaintiff, HN8 this Court cannot second guess the business decisions of Defendant, even if they seem unjust or unfair. See Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir.1998) (evidence that employer made poor business decision generally insufficient to set forth genuine issue of material fact; "reason tendered need not be well advised, but merely truthful"). "A business decision need not be good or even wise. It simply has to be nondiscriminatory . . . ." Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 20 (7th Cir.1987), quoted in Dister, 859 F.2d at 1116. [*12] See also Mauro v. SNET, 46 F. Supp. 2d 181 (D.Conn.1999) (summary judgment granted; business reason simply unsound, not discriminatory).

The Court finds that no rational fact-finder could return a verdict for Plaintiff on her Title VII claim. Accordingly, summary judgment is granted as to Count Two of the Complaint.

**ADA**

When ruling on the Defendant's Motion to Dismiss, this Court was mandated to take all allegations of the Complaint as true, including the assertion that Shanahan regarded Cavuoto as an "hysterical female" with emotional problems whom he would not take to management meetings with him, due to her severe premenstrual syndrome ("PMS"). At this juncture, the Court need not accept these allegations as true and, indeed, does not. Plaintiff has had one year of discovery to set forth genuine issues for trial on her ADA claim. This she has failed to accomplish. Plaintiff cites only to the Complaint (paragraph 29) as "evidence" of this assertion. She makes no reference to the claimed disability in her affidavit. Plaintiff's Exhibit D. In contradistinction, Shanahan testified that he did, in fact, take Cavuoto to management meetings with him. Shanahan [*13] Deposition at 80.

Plaintiff testified that she has missed "maybe" two days of work over the years due to her PMS, that she takes no medication for it, nor has she consulted a doctor for any treatment for this alleged disability. Plaintiff's Deposition (Oct. 19, 2000) at 130-132.

The Court now holds that Plaintiff has offered no evidence that she is disabled, due to her PMS, within the meaning of the ADA. HN9 As to the "regarded as" subset of the ADA, a plaintiff "must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the [ADA] and that the employer discriminated against the plaintiff on that basis." Francis v. City of Meriden, 129 F.3d 281, 285 (2d Cir.1997). She has offered no evidentiary support for this allegation,

Thorough research by the Court has revealed no case in which PMS has been held to be such an "impairment" under the ADA. Giving Plaintiff every benefit of the doubt, her PMS, if it is as extreme as she alleges, is still only a temporary disability lasting a few days during a month. HN10 Temporary disabilities are not covered by the ADA. Stronkowski v. St. Vincent's Medical Ctr., 1996 U.S. Dist. LEXIS 22304 [*14] at *18 (D.Conn. August 1, 1996) ("Temporary injuries . . . without substantial limitations and permanent effects, do not

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357    Page 7 of 9

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 8 of 10

warrant protection of the ADA.").

HN11 Mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. Lamontagne, 834 F. Supp. at 580. Inasmuch as Plaintiff has only set forth her subjective opinions as to the effects of her PMS, summary judgment is granted as to Count 5 of the Complaint.

**Equal Pay Act**

The seminal case in this Circuit concerning the EPA is Tomka v. Seiler Corporation, 66 F.3d 1295 (2d Cir.1995). Tomka provides, in pertinent part that:

> HN12
> 
> In order to state a *prima facie* case of salary discrimination based on sex under the EPA . . . a plaintiff must demonstrate that i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort and responsibility: iii) the jobs are performed under similar working conditions. See Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974); Aldrich v. Randolph Central School District, 963 F.2d 520, 524 [*15] (2d Cir.) cert denied, 506 U.S. 965, 113 S. Ct. 440, 121 L. Ed. 2d 359 (1992). A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are "substantially equal." See Lambert v. Genesee Hospital, 10 F.3d 46, 56 (2d Cir.1993) cert. denied, 511 U.S. 1052, 114 S. Ct. 1612, 128 L. Ed. 2d 339 (1994). However, jobs which are "merely comparable" are insufficient to satisfy a plaintiff's prima facie burden. See Id., 10 F.3d at 56 (citing Hodgson v. Corning Glass Works, 474 F.2d 226, 234 (2d Cir. 1973), aff'd 417 U.S. 188 (1974).

Tomka, 66 F.3d at 1310.

HN13 The burden is on the Plaintiff to prove that her position is substantially equal to the other comparators. *Id.* Cavuoto faces a high standard of proof and, as it is her burden to prove her *prima facie* case, she may not argue an "inference of equal work merely from the defendant's failure to prove otherwise." E.E.O.C. v. Sears, Roebuck & Company, 839 F.2d 302, 346 (7th Cir. 1988).

Rather than the insubstantial, inconsequential, or minor differences between the jobs, the court applies the [*16] "equal work" standard on the basis of the "substantial differences such as those customarily associated with differences in wage levels." 29 C.F.R. § 1520.14(a). Job titles or job descriptions are not determinative without corroborating evidence of actual job content. Mullhall v. Advanced Sec., Inc., 19 F.3d 586, 592 (11th Cir.), cert. denied, 513 U.S. 919 (1994).

In the present case, Plaintiff named three male comparators, all of whom held the title "manager". The first was the Project Manager - Application Development. The second was Manager of Accounts Payable. The third was Manager of Billings and Accounts Receivable.

Oxford's job description for the first position lists the following as "Key Accountabilities":

> - Develops and maintains a productive working relationship with project sponsors and key system users;
> 
> - Recommends alternative systems approaches for workability and economic feasibility; looks for and advises IS management on the possible use of existing systems that can be applied to a problem;
> 
> - Works closely with other groups to coordinate plans and activities including coordination to [*17] facilitate development projects, maintenance projects, the coordination of software upgrades, the installation of new systems, as well as systems developed externally or packaged software.

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357 — Page 8 of 9

Case 3:02-cv-01384-MRK   Document 99-3   Filed 06/28/2005   Page 9 of 10

- Adheres to Oxford's Software Development Methodology and insures that staff members do the same; insures adherence of the application group to formal processes, standards and total quality practices in all activities.

- Develops and maintains projects plans, including project duration estimates, throughout the project life cycle; tracks actuals against a baseline project plan. Develops work plans, task sequencing and to the extent to which tasks may be performed concurrently.

- Prepares and delivers regular project status reports as required by management.

- Estimates project resource needs including analysts, programmers, user personnel, consultants and equipment.

- Analyzes functional specifications and oversees system design to solve the business problem; supervises and guides the detailed design and development activities for entire applications.

- Reviews documentation and assures it is complete, acceptable and in accordance with standards.

- Performs constant [*18] tracking and communicates effectively throughout the release life cycle including post-implementation follow up and review with Users and Production Support.

The second named manager, the Manager of Accounts Payable, had the following responsibilities and work projects:

- Develops and implements A/P trade accounts procedures and A/P policies and procedures.

- Works with Planning and Budgeting Department to establish general ledger budget codes.

- Handles any escalated trade payable issues.

- Coaches and develops staff; educates staff on use of new policies and procedures.

While no job description was located for the third comparator, the Manager of Billings and Accounts Receivable, Cavuoto testified at her deposition that the following were his responsibilities:

- To send out invoices to customers for bills and to collect money coming in.

- Maintaining relationships with the health brokers so that Oxford could increase their membership.

- Paying the brokers a commission for business that they sold on Oxford's behalf.

- Paying the commissions to Oxford salesmen.

Although she had over one year to depose this comparator to determine [*19] what, if any, his other job responsibilities were, Plaintiff never did so, regardless of the fact that it was her burden of proof at issue.

Plaintiff had composed the job description for the Payroll Manager's position and listed, *inter alios*, the following functions of that department:

- Ensure compliance with Oxford Company policy.

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14357  Page 9 of 9

Case 3:02-cv-01384-MRK    Document 99-3    Filed 06/28/2005    Page 10 of 10

- Provide ongoing support and training of Kronos Time and Attendance to all system users.

- Ensure all Oxford employees receive an accurate and timely biweekly paycheck.

- Prepare manual checks in accordance with the Manual check policy.

- Ensure all Oxford employees receive an accurate and timely W-2.

- Oversee the preparation of all payroll tax returns.

- Administration of company relocation policy.

- Provide prompt courteous customer service to all Oxford employees regarding any payroll issues.

- Calculate employer 401K company match.

- Timely remittance of payroll taxes.

It is beyond peradventure that the core responsibilities of these jobs are not comparable under the standards set forth above and Plaintiff has failed to make her *prima facie* case as to the EPA. The actual job content [*20] and responsibilities in no way share "equal work" considerations nor are they "substantially similar", within the strictures of the EPA. Inasmuch as Plaintiff has failed to show the comparators were performing equal work, summary judgment is granted as to Count Seventeen.

## CONCLUSION

Plaintiff has failed to set forth any genuine issues of material fact as to which she would bear the burden at trial. No rational factfinder would find for her on any of her three remaining causes of action. Accordingly, Oxford's Motion for Summary Judgment [Doc. No. 73] is hereby GRANTED. The Clerk is directed to close this case.

SO ORDERED

———

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Date at New Haven, Connecticut this 13th day of June, 2001.