Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717                                    Page 1 of 11
Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 1 of 11

Service: Get by LEXSEE®
Citation: 2005 us. dist. lexis 3717

*2005 U.S. Dist. LEXIS 3717, **

GEORGE MACALUSO and SANDRA MACALUSO, Plaintiffs - against - HERMAN MILLER, INC., Defendant.

01 Civ. 11496 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 3717

March 9, 2005, Decided
March 10, 2005, Filed

**DISPOSITION:** [*1] Defendant's motion for summary judgment dismissing complaint granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff consumer and his wife filed suit against defendant manufacturer alleging causes of action for negligence, breach of express and implied warranties, and strict liability in tort. The wife also sought damages for loss of consortium. The manufacturer moved for summary judgment.

**OVERVIEW:** Plaintiffs sought damages for injuries allegedly sustained as a result of the consumer's use of a chair manufactured by defendant. Plaintiffs alleged that the consumer was injured in an accident caused by a design or manufacturing defect in the chair or by a failure to warn of an inherent danger in the use of the chair. The court first found that the manufacturer made an initial showing that there was no material issue of fact as to the existence of a defect and that there was no evidence of a defect in the chair used by the consumer. Next, the court found that plaintiffs' expert witness's analysis was based on incorrect factual assumptions that rendered all of his subsequent conclusions purely speculative. Moreover, without the ability to inspect the original chair, all of the expert's conclusions with respect to the "exemplar" chair were speculative because there was no evidence that the exemplar chair had the same condition that caused the actual chair back to recline in the way described by the consumer at his deposition. Thus, the plaintiffs had provided no evidence that the chair in which the alleged accident occurred was defective.

**OUTCOME:** The manufacturer's motion was granted.

**CORE TERMS:** chair, photograph, fractured, summary judgment, exemplar, broken, deposition testimony, manufactured, manufacturer, deposition, failure to warn, material issue of fact, moving party, cause of action, tile, strict products liability, expert testimony, reliable, speculative, happened, backwards, fracture, recline, hit, duty to warn, manufacturing defect, depicted, leaned, angle, air

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** The standard for granting summary judgment is well established. Summary judgment may not be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717 Page 2 of 11

Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 2 of 11

fact. The substantive law governing the case will identify those facts that are material and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN2** Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible. More Like This Headnote

Torts > Products Liability > Breach of Warranty
Torts > Products Liability > Negligence
Torts > Products Liability > Strict Liability

**HN3** Under New York Law, a manufacturer can be liable for injury caused by the manufacturer's product under theories of negligence, breach of express or implied warranty, and strict liability in tort. More Like This Headnote

Torts > Products Liability > Negligence

**HN4** In the context of products liability, a claim of negligence requires that the plaintiff prove that the manufacturer was responsible for a defect that caused injury, and that the manufacturer could have foreseen the injury. More Like This Headnote

Torts > Products Liability > Breach of Warranty

**HN5** In the context of products liability, a breach of implied warranty claim requires that the plaintiff prove that the product is not fit for the ordinary purposes for which such goods are used. More Like This Headnote

Torts > Products Liability > Strict Liability

**HN6** In the context of products liability, a claim under strict products liability law requires a showing that (1) the product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care. More Like This Headnote

Torts > Products Liability > Breach of Warranty
Torts > Products Liability > Negligence
Torts > Products Liability > Strict Liability

**HN7** In the context of products liability, an essential element is the existence of a defect in the product. More Like This Headnote

Torts > Products Liability > Breach of Warranty
Torts > Products Liability > Negligence

**HN8** In the context of products liability, the elements that the plaintiff must prove in order to show a defect differ depending on the claim. A product is defective for the purposes of breach of an implied warranty claim if it is not fit for the ordinary purposes for which such goods are used when the product leaves the hands of the manufacturer. A product is defective for the purposes of a negligence or strict products liability claim if it is not reasonably safe. More Like This Headnote

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717                                Page 3 of 11

Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 3 of 11

Torts > Products Liability > Duty to Warn
Torts > Products Liability > Negligence
Torts > Products Liability > Strict Liability

**HN9** In the context of products liability, in strict products liability and negligence claims, the plaintiff must prove the elements of each type of defect the plaintiff is alleging. There are three types of defects in products liability cases: a design defect, a manufacturing defect, and a defect in the form of the absence or inadequacy of warnings for the use of the product. In a design defect case, the plaintiff must prove (1) although the product was manufactured according to its intended design, the design itself devised a product that was not reasonably safe, and (2) there was a feasible alternative design for the product that would have been safer and that would have prevented the plaintiff's injury. In a manufacturing defect case, the plaintiff must prove that the product failed to perform in the intended manner due to a flaw in the manufacturing process. To prove a defect in the form of a failure to warn, the plaintiff must show that (1) the defendant manufacturer had a duty to warn; (2) against dangers resulting from foreseeable uses about which the defendant knew or should have known; and (3) failure to warn was the proximate cause of the harm. There is no duty to warn of well-known or obvious dangers. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN10** On a motion for summary judgment, the moving party bears the initial burden of showing the absence of a material issue of fact. Once the moving party has made an initial showing that there is no material issue of fact, the burden shifts to the non-moving party to show the existence of a material issue of fact. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

**HN11** It is well-settled that an affidavit submitted by a party in response to a motion for summary judgment must be disregarded to the extent that it contradicts that party's prior deposition testimony. More Like This Headnote

Evidence > Witnesses > Expert Testimony

**HN12** An expert's conclusions are not sufficiently reliable to be admissible. Fed. R. Evid. 702 requires a trial judge to ensure that all expert testimony is both relevant and reliable. Fed. R. Evid. 702. In order for an expert's opinion to be reliable, the trial court must ensure that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. More Like This Headnote

**COUNSEL:** For Geoorge Macaluso and Sandra Macaluso, Plaintiffs: Jeffrey Lessoff, New York, NY.

For Herman Miller, Inc., Defendant: Adam D. Cahn, Barton, Barton & Plotkin, L.L.P., New York, NY; Gerald N. Swartz, Gerald Neal Swartz, New York, NY.

**JUDGES:** John G. Koeltl, United States District Judge.

**OPINIONBY:** John G. Koeltl

**OPINION: OPINION & ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiffs, George Macaluso ("Macaluso") and his spouse Sandra Macaluso, brought this action seeking damages for injuries allegedly sustained as a result of Macaluso's use of a chair manufactured by the defendant, Herman Miller, Inc. The complaint alleges that Macaluso was injured in an accident caused by a design or manufacturing defect in the chair or by a failure to warn of an inherent danger in the use of the chair. The complaint alleges causes of action by Macaluso for negligence (first cause of action), breach of

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717

Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 4 of 11

Page 4 of 11

express and implied warranties (second cause of action), and strict liability in tort (third cause of action). Sandra Macaluso seeks damages for loss of consortium and other losses she allegedly sustained as a result of the injuries sustained by Macaluso (fourth cause of action).

This action was originally [*2] brought in New York State Supreme Court, Bronx County, and removed to this Court on the basis of diversity of citizenship jurisdiction. The defendant now moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment dismissing all claims against it. For the reasons stated below, the defendant's motion for summary judgment is granted.

I.

*HN1* The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, [*3] in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); see also Consol. Edison, Inc. v. Northeast Utilities, 332 F. Supp.2d 639, 642 (S.D.N.Y. 2004).

*HN2* Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 805-06, 143 L. Ed. 2d 966, 119 S. Ct. 1597 (1999); Celotex, 477 U.S. at 322; Powell v. Nat. Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); [*4] Trumps v. Toastmaster, 969 F. Supp. 247, 254 (S.D.N.Y. 1997). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); [*5] see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Consol. Edison, 332 F. Supp.2d at 643.

II.

The following facts are undisputed unless otherwise noted.

The plaintiffs claim that on or about February 12, 2000, Macaluso was using a chair manufactured by the defendant when the chair broke, causing Macaluso to fall and sustain injuries. (Compl. at PP11-15.) Macaluso described the accident in a deposition taken on June 27, 2002. (Deposition of George Macaluso, dated June 27, 2002 ("Macaluso Deposition"), attached at Affirmation of Gerald Neal Swartz in Support of Motion for Summary Judgment, dated June 24, 2004 ("Def. Aff."), Ex. D.) Macaluso described how the accident happened:

> Q: Now, let's get to the accident itself, if you would be good enough; could you tell us in your words how it happened?

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717 Page 5 of 11

Case 3:02-cv-01384-MRK   Document 99-6   Filed 06/28/2005   Page 5 of 11

A: Okay. I was sitting to the right of my station, I had typed something into a computer and I sat back and as a [sic] sat back the seat kept going. My legs went up in the air. (Witness indicating) And the chair was rolling backwards and then fell over.

Q: Okay. When you say and then fell over, are you referring to the chair [*6] falling over?

A: Yes.

Q: Of course you were in it and you fell over also; is that correct, sir?

A: Yes.

. . . .

Q: What is your impression or perception of what caused you to and the chair to start moving backwards?

A: Well, when I was, I had been typing, when I set [sic] in the chair I set [sic] back and as I set [sic] back the chair just popped. And when it popped, I just, I jumped, you know, like my legs went up in the air. (Witness indicating.) As they went up in the air I fell back and the chair was rolling back and just hit something and fell over.

Q: Do you have any understanding of what made the chair roll back?

A: I guess my momentum when my legs went up in the air.

Q: As you described just now?

A: Yes, sir.

. . . .

Q: You mentioned before in describing part of the accident, you said while the chair was rolling it hit something or it might have hit something.

A: Yes, sir.

Q: Could you tell us did you ever find out or determine what that was?

A: Yes, sir.

Q: And how did you go about making that determination? How did you find out what it was?

A: Well, by looking down.

Q: And how long after [*7] the accident happened did you look down?

A: Well, right after I, after I got up I looked down. And I seen it was a lip in the tile.

Q: Excuse me.

A: A lip in the tile.

Q: Could you explain what you mean by that?

A: Well, the way they're situated the tiles are supposed to come straight together and it looked like from wear and tear it was down. (Witness indicating). There was a lip; one tile was higher than the other.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717

Page 6 of 11

Case 3:02-cv-01384-MRK   Document 99-6   Filed 06/28/2005   Page 6 of 11

(Macaluso Deposition, at 27, 28, 31, 32.)

Using visual aids, Macaluso described the condition of the chair before and after the alleged accident. Macaluso stated that before the alleged accident the chair had been upright. (Id. at 37-38.) He indicated that, of two chairs in a photograph taken by Macaluso and marked as "Defendant's Exhibit A," the chair to the left had the same appearance as Macaluso's chair before he had fallen. (Id. at 21-25; Defendant's Exhibit A, attached at Def. Aff., Ex. F.) He stated that after the accident he picked up the chair, and the cradle of the chair was "tilted backwards like a recliner chair" and the switch that controlled the angle of the chair's recline "swiveled loosely" and "wasn't making the [*8] connection." (Macaluso Deposition at 36-38.) Macaluso indicated that the chair to the right in Defendant's Exhibit A had the same appearance as his chair after he had fallen. (Id. at 21-23; Defendant's Exhibit A, attached at Def. Aff., Ex. F.)

Macaluso identified two other chairs in his office that he was aware had also broken, although he had not actually seen either chair break. (Macaluso Deposition at 52.) One chair had broken at the base, while on the other chair the switch that controlled the chair's angle of recline was broken. n1 (Id. at 52-58.) Macaluso stated that he had seen only one chair that had broken at the base, and that he had taken a photograph of that chair. (Id. at 52-53.) The photograph was marked for identification at the deposition as "Defendant's Exhibit C." (Id.; Defendant's Exhibit C, attached at Def. Aff., Ex. G.) The photograph actually shows a fractured chair base completely separated from a chair.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although this is a similar description to the description the plaintiff gave of the chair in which the plaintiff had fallen, the plaintiff stated that the condition of this other chair was not identical to the condition of the plaintiff's chair after his accident. (Macaluso Deposition at 56-58.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*9]

In May 2000, Macaluso repeated his description of the incident when he filed an Employee's Notice of Injury form with the City of New York. (Employee's Notice of Injury, dated May 10, 2000, attached at Def. Aff., Ex. E.) Macaluso signed the Notice and described how the accident allegedly happened: "while sitting in chair moving sideway's [sic] chair struck a raised part of tile that caused the back of chair to go from upright position to a reclining position and tipping over chair." (Id.)

On December 19, 2003, the plaintiffs and the defendant sent engineers acting as expert witnesses to a storage facility in Queens, New York, to examine the chair. (Plaintiff's Affirmation in Opposition to the Motion for Summary Judgment, dated September 27, 2004 ("Pl. Aff."), P4; Affidavit of Joseph R. Petrella, dated March 30, 2004 ("Petrella Aff."), P3.) The chair, however, was not available for examination, and the experts were presented with what the plaintiffs allege is an "exemplar chair." (Pl. Aff., P4.) The plaintiff was employed by the Department of Transportation of the City of New York and the exemplar chair was produced by the Department of Transportation. To date, the chair in [*10] which the alleged accident occurred has not been located or made available for examination.

The plaintiffs' expert, Arthur P. Weber ("Weber"), relied on the exemplar chair and photocopies of photographs of other chairs in his analysis. One such photograph was Defendant's Exhibit A, which depicted the two chairs that Macaluso, when deposed, said resembled his chair before and after the alleged accident. (Affirmation of Arthur P. Weber, dated Sept. 25, 2004, Ex. 2. ("Weber Report") at 1; Macaluso Deposition at 21-25.) Weber described Defendant's Exhibit A as a photograph of "intact chairs in service." (Weber Report at 1.) Weber also relied upon Defendant's Exhibit C, the photograph that Macaluso, when deposed, said depicted the base of a different chair, that had broken at the base. (Weber Report at 1; Macaluso Deposition at 52-53.) Weber stated that this photograph depicted the chair base "that, at the time of the occurrence, had broken away from the seat and back assembly." (Weber Report at 1.)

Weber used the exemplar chair and these photographs to analyze "the design, assembly and modus operandi of the [exemplar] chair, all as would relate to [Macaluso's fall] from another such [*11] chair that had

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717

Case 3:02-cv-01384-MRK   Document 99-6   Filed 06/28/2005   Page 7 of 11

Page 7 of 11

broken apart from under him." (Weber Report at 1.) Based upon his examination of the exemplar chair and the photographs of the three other chairs, Weber concluded that "the hub [of Macaluso's chair] had fractured and broken completely apart" and that "the proximate cause of the failure of [Macaluso's chair], as it was caused to break apart from under George Macaluso at the time of the occurrence... was the deficient design and/or defective manufacture [of the chair's hub]." (Id. at 4, 6.)

The defendant's expert, Joseph R. Petrella ("Petrella"), however, found no evidence that the chair in which the alleged accident occurred was defective in any manner. Petrella found that the exemplar chair was "designed and manufactured in accordance with sound engineering principles and was suitable for its intended use." (Petrella Aff., P6.) Moreover, Petrella argued that Weber's conclusion that Macaluso's chair was defective because a vertical post in the base fractured at the time of the alleged accident was inconsistent with Macaluso's deposition testimony. (Id., P7.) Petrella concluded that, without an examination of the chair in which Macaluso had the alleged accident, [*12] there was no reason to believe that Macaluso's chair had been designed or manufactured defectively. (Id.)

III

A.

*HN3* Under New York Law, a manufacturer can be liable for injury caused by the manufacturer's product under theories of negligence, breach of express or implied warranty, and strict liability in tort. Merced v. Auto Pak Co., 533 F.2d 71, 75-76 (2d Cir. 1976); Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 477 N.E.2d 434, 437, 488 N.Y.S.2d 132 (N.Y. 1985); Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 450 N.E.2d 204, 207, 463 N.Y.S.2d 398 (N.Y. 1983); Victorson v. Bock Laundry Mach. Co., 37 N.Y.2d 395, 335 N.E.2d 275, 276-77, 373 N.Y.S.2d 39 (N.Y. 1975). Macaluso has alleged each of these theories in his complaint. n2 (Compl. at PP13-15, 19-21, 24.)

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The plaintiff conceded at the argument of the motion that he was no longer contending that there was a breach of an express warranty and indeed there is no evidence of any express warranty. (Transcript of Oral Argument held Jan. 21, 2005, at 17.)

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN4* A claim of negligence requires [*13] that the plaintiff prove that the manufacturer was responsible for a defect that caused injury, and that the manufacturer could have foreseen the injury. Robinson v. Reed-Prentice Div., 49 N.Y.2d 471, 403 N.E.2d 440, 444, 426 N.Y.S.2d 717 (N.Y. 1980). *HN5* A breach of implied warranty claim requires that the plaintiff prove that the product is not "fit for the ordinary purposes for which such goods are used." See Denny v. Ford Motor Co., 87 N.Y.2d 248, 662 N.E.2d 730, 736, 639 N.Y.S.2d 250 (N.Y. 1995); Robinson, 403 N.E.2d at 443. *HN6* A claim under strict products liability law requires a showing that: (1) the product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care. Urena v. Biro Manufacturing Co., 114 F.3d 359, 363 (2d Cir. 1997).

*HN7* An essential element of all of these claims is the existence of a defect in the product. See Denny, 662 N.E.2d at 736 [*14] (comparing defect required for strict products liability with defect required for breach of implied warranty); Robinson, 403 N.E.2d at 444 (describing requirement of defect in product liability action based on theory of negligence); Tardella v. RJR Nabisco, Inc., 178 A.D.2d 737, 576 N.Y.S.2d 965, 966 (App. Div. 1991) ("Whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury and... that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued.")

*HN8* The elements that the plaintiff must prove in order to show a defect, however, differ depending on the

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717

Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 8 of 11

Page 8 of 11

claim. A product is defective for the purposes of breach of an implied warranty claim if it is not "fit for the ordinary purposes for which such goods are used" when the product leaves the hands of the manufacturer. See Denny, 662 N.E.2d at 736; Robinson, 403 N.E.2d at 443. A product is defective for the purposes of a negligence or strict products liability claim if it is "not [*15] reasonably safe." Denny, 662 N.E.2d at 735-36.

HN9 Moreover, in strict products liability and negligence claims, the plaintiff must prove the elements of each type of defect the plaintiff is alleging. There are three types of defects in products liability cases: a design defect, a manufacturing defect, and a defect in the form of the absence or inadequacy of warnings for the use of the product. McCarthy v. Olin Corp., 119 F.3d 148, 155 (2d Cir. 1997); Sage v. Fairchild-Swearingen Corp., 70 N.Y.2d 579, 517 N.E.2d 1304, 1307, 523 N.Y.S.2d 418 (N.Y. 1987); Robinson, 403 N.E.2d at 443. In a design defect case, the plaintiff must prove: (1) although the product was manufactured according to its intended design, the design itself devised a product that was not reasonably safe, and (2) there was a feasible alternative design for the product that would have been safer and that would have prevented the plaintiff's injury. See Urena, 114 F.3d at 364-65; Rypkema v. Time Mfg. Co., 263 F. Supp.2d 687, 692 (S.D.N.Y. 2003) (citing Voss, 450 N.E.2d at 208); Denny, 662 N.E.2d at 735, n.3. In a manufacturing [*16] defect case, the plaintiff must prove that the product failed to perform in the intended manner due to a flaw in the manufacturing process. Denny, 662 N.E.2d at 735, n.3. To prove a defect in the form of a failure to warn, the plaintiff must show that: (1) the defendant manufacturer had a duty to warn; (2) against dangers resulting from foreseeable uses about which the defendant knew or should have known; and (3) failure to warn was the proximate cause of the harm. See Santoro v. Donnelly, 340 F. Supp. 2d 464, 485 (S.D.N.Y. 2004); see also Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000); Liriano v. Hobart Corp., 92 N.Y.2d 232, 700 N.E.2d 303, 305, 677 N.Y.S.2d 764 (N.Y. 1998). There is no duty to warn of well-known or obvious dangers. Burke v. Spartanics, Ltd., 252 F.3d 131, 137 (2d Cir. 2001); Jiminez v. Dreis & Krump Mfg. Co., 736 F.2d 51, 55 (2d Cir. 1984); Billiar v. Minnesota Mining & Mfg. Co., 623 F.2d 240, 243 (2d Cir. 1980).

B.

HN10 On a motion for summary judgment, the moving party bears the initial burden of showing the absence of a material issue of fact. Celotex, 477 U.S. at 323; [*17] Weinstock v. Columbia University, 224 F.3d 33, 41 (2d Cir. 2000). Once the moving party has made an initial showing that there is no material issue of fact, the burden shifts to the non-moving party to show the existence of a material issue of fact. Celotex, 477 U.S. at 323-24; Weinstock, 224 F.3d at 41; Scotto, 143 F.3d at 115 (1998); Ying Jing Gan, 996 F.2d at 532.

Here, the defendant has made an initial showing that there is no material issue of fact as to the existence of a defect and that there is no evidence of a defect in the chair used by the plaintiff. The defendant argues that the plaintiffs cannot prove the existence of a defect in the chair because Weber's conclusion, based on the exemplar chair, is too speculative and scientifically unreliable to constitute proof of a defect in the chair in which the alleged accident occurred and, moreover, it is based on the erroneous assumption that Macaluso's chair fractured at the base during the alleged accident. This assumption, the defendant argues, is precluded by Macaluso's deposition testimony, which described the chair as reclining suddenly [*18] but does not support any allegation that the base fractured. The defendant also argues that the plaintiffs have offered no proof of a feasible alternative design for the chair that would have been safer and would have prevented the plaintiff's injury, that the chair failed to perform in the intended manner due to a flaw in the manufacturing process, or that there was a danger inherent in the chair that created a duty to warn that the defendant did not satisfy.

Because the defendant has made an initial showing that the plaintiff cannot prove the existence of a defect in the chair in which the alleged accident occurred, the burden has shifted to the plaintiffs to show that there is a material issue of fact as to the existence of a defect in the chair, an essential element for each of the plaintiffs' claims.

C.

The plaintiffs argue that the chair was defective in design, manufacture, and failure to warn. In support of the claim that the chair was defective in design and manufacture, the plaintiffs offer the Weber report and the affidavit of Macaluso dated September 27, 2004, which claim that the chair's defect caused the chair's stem to fracture. To support the claim of a failure to [*19] warn, the plaintiffs offer an additional affidavit of George Macaluso dated February 8, 2005, in which Macaluso affirms that the defect in the chair caused the chair's hub extension at the base to break off when he leaned back, that there were no warnings on the chair

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717  Page 9 of 11

Case 3:02-cv-01384-MRK    Document 99-6    Filed 06/28/2005    Page 9 of 11    Page 9 of 11

advising him of the danger of the stem fracturing if he were to lean back, and that, had such a warning been present, he would not have leaned back in the chair or he would have used a different chair. (Affirmation of George Macaluso dated Feb. 8, 2005 ("Pl. Second Aff.").)

The conclusions drawn by the plaintiffs' expert, Weber, must be disregarded because they were based on the erroneous assumption that the alleged accident occurred when the chair in which Macaluso was sitting fractured at the base. There is no admissible evidence to support that assumption. Through no fault of the defendant, the chair has been unavailable for examination, and thus the chair itself provides no evidence of any fractured base. It is plain from Weber's report that he believed incorrectly that Defendant's Exhibit C, the photograph of a fractured base completely separated from a chair, was a photograph of Macaluso's chair after the alleged [*20] accident, and that, based on this belief, Weber assumed that Macaluso's chair had fractured at the base at the time of the alleged accident. (Weber Report at 1.) It is also plain that Weber believed that Defendant's Exhibit A showed two chairs in proper working condition. (Weber Report at 1.) The assumption that Exhibit C was a photograph of the chair Macaluso used is contradicted by Macaluso's own deposition testimony. Macaluso described Exhibit C as a chair with a fractured base, in contradistinction to his identification of the chairs in Exhibit A, which depicted his chair before and after the accident.

The assumption that Macaluso's chair fractured at the base at the time of the alleged accident is contradicted by the description of the accident that Macaluso gave in his deposition testimony. At his 2002 deposition, Macaluso described the chair in which he had his accident as malfunctioning with respect to the chair's angle of recline, not with respect to the base. (Macaluso Deposition at 36-38.) He described how the chair rolled backwards, hit something, and then tipped over. (Id. at 28.) Macaluso indicated that, after the accident, the chair was "tilted backwards like a [*21] recliner chair" and the switch that controlled the angle of the chair's recline "swiveled loosely" and "wasn't making the connection." (Id.) Macaluso testified that he picked up the chair after the accident, not that he picked up pieces of the chair. (Id. at 37.) He moved it aside and grabbed another chair. (Id. at 36.) Macaluso never testified in his 2002 deposition that the base of the chair in which the alleged accident occurred had fractured.

At the deposition, Macaluso pointed to a photograph of a chair that he stated looked identical to his chair after the alleged accident. (Id. at 21-23; Defendant's Exhibit A.) In this photograph, the base of the chair is plainly intact. (Defendant's Exhibit A.) Moreover, Macaluso distinguished the picture of the chair with a fractured base, Defendant's Exhibit C, as being a picture of a different chair from the one in which the accident occurred. (Macaluso Deposition at 21-23.) Macaluso stated that the chair in Defendant's Exhibit C was the only chair that he had seen that was broken at the base. (Macaluso Deposition at 52-53.) Macaluso's deposition testimony is therefore inconsistent with the factual assumptions in Weber's [*22] report.

The affidavits of George Macaluso submitted in opposition to the current motion are inadmissible to the extent that they contradict his earlier deposition testimony. HN11 It is well-settled that an affidavit submitted by a party in response to a motion for summary judgment must be disregarded to the extent that it contradicts that party's prior deposition testimony. Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); Reisner v. General Motors Corp., 671 F.2d 91, 93 (2d Cir. 1982). In his affadavit dated September 27, 2004, Macaluso states that the chair hit an uneven part of the tile floor and "made a loud popping sound" that led Macaluso to believe that the base of the chair had broken. (Id., P3.) Macaluso states that when he examined the chair after the accident, he saw that it had "fractured at the stem." (Id.) Similarly, in his affidavit dated February 8, 2005, Macaluso states that the latent danger in the chair was that leaning back in the chair caused the hub extension at the base to fracture. (Pl Second Aff., P3.) For the reasons explained above, these statements are plainly inconsistent with Macaluso's earlier deposition testimony, [*23] and therefore must be disregarded.

HN12 Weber's conclusions are not sufficiently reliable to be admissible. See Daubert v. Merrel Dow Pharm., Inc., 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). Federal Rule of Evidence 702 requires a trial judge to ensure that all expert testimony is both relevant and reliable. Fed.R.Evid. 702. In order for an expert's opinion to be reliable, the trial court must ensure that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; see also Colon v. BIC USA, Inc., 199 F. Supp.2d 53, 69 (S.D.N.Y. 2001).

Weber's analysis fails to meet this standard because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative. Moreover, without the ability to inspect the original chair, all of Weber's conclusions with respect to the "exemplar" chair are speculative because there is no evidence

that the exemplar chair had the same [*24] condition that caused the actual chair back to recline in the way described by Macaluso at his deposition. Weber's conclusion as to the existence of a defect is purely speculative, revealing "too great an analytical gap between the data and the opinion proffered." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152-58, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999) (finding no abuse of discretion in trial court's decision to exclude expert testimony in product liability case against tire manufacturer and distributor, based on finding that expert could not reliably determine cause of failure of particular tire at issue); General Elec. Co. v. Joiner, 522 U.S. 136, 146, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997) (finding no error in district court's decision to exclude evidence "connected to the existing data only by ipse dixit of the expert"); Davidov v. Louisville Ladder Group, LLC, 2005 U.S. Dist. LEXIS 3117, No. 02 Civ. 486734, at *2 (S.D.N.Y. Mar. 1, 2005) (excluding expert testimony inconsistent with facts of case); Mink Mart, Inc. v. Reliance Ins. Co., 65 F. Supp.2d 176, 181 (S.D.N.Y. 1999), aff'd, 12 Fed. Appx. 23, 2000 WL 33223395 (2d Cir. 2000) (finding expert's affidavit inadmissible because it was based on mere speculation [*25] and not evidence that specific product in question malfunctioned).

When Weber's purported expert report and Macaluso's recent affidavits that contradict his deposition testimony are excluded, the plaintiffs have provided no evidence that the chair in which the alleged accident occurred was defective. Without any evidence based on the actual chair involved in the alleged accident, the plaintiffs have no potentially viable claim that the chair was defective. See Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) (per curiam) (affirming district court's decision granting summary judgment dismissing products liability case where plaintiff's proposed expert testimony was properly excluded as speculative); Davidov, 2005 U.S. Dist. LEXIS 3117, 2005 WL 486734, at *3 (granting summary judgment in products liability case, after excluding expert evidence, because there was no evidence of defect); Trumps, 969 F. Supp. at 253-54, n.8 (granting defendant's motion for summary judgment when, after plaintiff's expert testimony was excluded as insufficiently reliable, plaintiff's showing that "something happened" was insufficient to prove defendant's liability); [*26] Ali v. Capitol Prods. Corp., 1995 U.S. Dist. LEXIS 8525, No. 92 Civ. 7806, 1995 WL 368446, at *3, n.5 (S.D.N.Y. June 20, 1995) (finding summary judgment appropriate where plaintiff presented no evidence that product had defect when manufactured, particularly because plaintiff's expert never examined actual product, which had since been lost).

It follows that the plaintiffs have also failed to provide any evidence that the particular elements of the specific theories of liability could be proved. The plaintiffs have not provided evidence of a design or manufacturing defect, or that any such defect existed at the time the product was manufactured. The plaintiffs have not provided any evidence that there was a feasible alternative design for the chair that would have been safer and that would have prevented Macaluso's injury. Such a showing is essential to a claim that the chair was defective in design. See, McCarthy, 119 F.3d at 155; Rypkema, 263 F. Supp.2d at 692. Nor have the plaintiffs offered any evidence that there was a flaw in the fabrication process at the time it was manufactured that caused the chair to fail to perform in the intended manner, a showing [*27] that is essential to a claim that the chair was manufactured defectively. See Denny, 662 N.E.2d at 735, n.3. Without evidence of either type of defect alleged, the plaintiffs cannot prove an essential element of its products liability claims.

The plaintiffs have also failed to provide evidence of a defect in the form of a failure to warn. The plaintiffs claim that the latent danger was the danger that the chair would fracture if the user leaned back in it and that, were Macaluso warned of this danger, he would not have used the chair or leaned back in it, causing the chair to fracture and Macaluso to fall and sustain injuries. (Pl. Second Aff., P3.) For the reasons explained above, there is no evidence that such a danger of the chair fracturing existed or that the chair did indeed fracture in this manner, and thus there was no duty to warn of such a danger. The plaintiffs have provided no evidence of a latent danger in the chair resulting from foreseeable uses about which the defendant knew or should have known, and that the failure to warn of this danger was the proximate cause of the plaintiffs' injury.

Because the plaintiffs have presented no evidence from which [*28] a reasonable jury could conclude that they had established the elements of any of their claims, summary judgment should be granted to the defendants dismissing all of the plaintiffs' claims. n3

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Sandra Macaluso's claim must be dismissed because, under New York law, it is completely derivative of the

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 3717

Case 3:02-cv-01384-MRK   Document 99-6   Filed 06/28/2005   Page 11 of 11

Page 11 of 11

existence of a claim by Macaluso. See Liff v. Schildkrout, 49 N.Y.2d 622, 404 N.E.2d 1288, 1291, 427 N.Y.S.2d 746 (N.Y. 1980) (finding that spouse's cause of action for loss of consortium does not exist in common law independent of injured spouse's right to maintain action for injuries sustained); Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 239 N.E.2d 897, 902-03, 293 N.Y.S.2d 305 (N.Y. 1968) ("Where, however, the husband's cause of action has been terminated either by judgment, settlement or otherwise, that should operate to bar the wife's cause of action for consortium").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**CONCLUSION**

For the reasons explained above, the defendant's motion for summary judgment dismissing the complaint is granted. The Clerk is directed to enter **[*29]** judgment dismissing the complaint and closing this case.

**SO ORDERED.**

**Dated: New York, New York**

**March 9, 2005**

**John G. Koeltl**

**United States District Judge**

Service: **Get by LEXSEE®**
Citation: **2005 us. dist. lexis 3717**
View: **Full**
Date/Time: Monday, June 6, 2005 - 10:05 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.