UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUJATA NICHANI | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV1384 (MRK) |
| v. | : | |
| | : | |
| UNITED TECHNOLOGIES CORP., and | : | |
| OTIS ELEVATOR COMPANY | : | |
| | : | |
| Defendants. | : | August 9, 2005 |

**<u>AFFIDAVIT OF LOUIS DELORETO</u>**

The undersigned, Louis DeLoreto, having been duly sworn, hereby deposes and says as follows:

1. I am over the age of eighteen (18) and believe in the obligation of an oath.

2. This Affidavit is based on my personal knowledge or information available to me from sources under my control.

3. I am employed by Otis Elevator Company ("Otis") as Senior Safety Manager for Otis North America Area.

4. I am personally familiar with the documents discussed below, and with the procedures set forth below that Otis has implemented to ensure protection of the confidential information contained within those documents.

5. The documents discussed below contain information concerning Otis's products, procedures, and internal policies, which have been developed over a period of years. These include engineering information and designs, maintenance and repair methods and techniques, work processes and procedures, service programs, and codes. Otis has expended substantial

funds, investment, expertise, and experience to develop, test, analyze, refine, revise, and protect the ways and means Otis conducts its business and the products it designs, manufactures, and maintains. This investment, among other things, comprises Otis's intellectual property and is contained, in part, within the trade secrets and confidential information contained in the documents discussed below.

6. Otis has taken extensive steps to insure that its trade secrets and confidential information are not disclosed to unauthorized individuals or entities. Otis conducts its business with building and mechanical contractors, building developers and owners, building consultants, architects, and homeowners. The economic advantages arising out of Otis's products and practices is vast and lucrative to those actual and potential competitors who can acquire and distribute such information. By developing and applying measures to protect and preserve the confidentiality of this information, Otis recognizes that there is independent economic value, actual and potential, in retaining such information for in-house use only and in keeping such information from becoming generally known to the public, including Otis's actual or potential business competitors.

7. Through its intellectual property, including the items discussed below, Otis has gained a competitive advantage in the manufacturing, servicing, and repair of Otis elevator and escalator systems. To maintain its competitive economic advantage, Otis's trade secrets and confidential information are disclosed only to authorized individuals or entities..

8. Otis has taken several steps to protect its trade secrets, including, but not limited to the following:

(a) Negotiation of union agreements incorporating a Trade Secret Agreement to be executed by all employees associated with the International Union of Elevator Constructors, including, but not limited to, mechanics, helpers, adjusters and construction workers;

(b) Execution of Trade Secret Agreements by all Otis employees associated with the International Union of Elevator Constructors, including, but not limited to, mechanics, helpers, adjusters and construction workers;

(c) Execution of Intellectual Property Agreements by non-union Otis employees, including Plaintiff Sujata Nichani;

(d) Execution of Non-Disclosure Agreements by Otis field operations employees including mechanics, helpers, adjusters, and construction workers;

(e) Secure facilities wherein the Otis trade secrets are drafted, edited, revised and prepared for distribution;

(f) Twenty-four hour security with individual computer-coded identification cards for use by Otis employees at the facilities where Otis trade secrets are drafted, edited, revised and prepared for distribution;

(g) Secure facilities throughout Otis's North American Area where the Otis trade secrets are held, including locations where such documents are maintained by Otis's local or regional offices;

(h) Limited and updated distribution lists of Otis personnel or persons authorized to receive Otis technical and training documents;

(i) Monitored procedures to be followed by Otis employees requesting copies of Otis technical and training documents for the limited purpose of servicing Otis equipment;

(j) With respect to certain technical and training documents, Otis employees requesting such documents must secure a supervisor's approval before such documents are provided to them;

(k) Ensuring that all Otis trade secrets with respect to technical and training documents are only forwarded to recognized Otis local or regional offices once the request for such has been confirmed and authorized;

(l) Ensuring that those requesting any of the Otis trade secrets are authorized to receive such documents and things, including, but not limited to, confirming the employment status of the individual requesting technical or training material by reference to the employee's payroll number or social security number;

(m) Exit interviews with departing Otis employees in which (i) Otis representatives take all reasonable steps to ensure the return of all Otis property, including the return of all originals and copies of Otis trade secrets and confidential information; and (ii) Otis representatives set forth the departing employee's obligations to protect Otis trade secrets, both under common law and under statutory enactments where applicable; and

(n) Prosecution (both civil and criminal) by Otis of individuals and entities that violate statutory or common law protections afforded Otis with respect to its trade secrets.

9.  I am familiar with Otis's Standard Work Processes ("SWPs"). SWP's contain abbreviated descriptions of maintenance procedures. Copies of SWPs may be ordered only by supervisors or superintendents and are prepared and intended for use only by Otis employees. Otis has developed SWPs to provide authorized personnel with a synopsized compilation of technical information to give Otis personnel engaged in field operations, readily accessible summaries of technical information to provide prompt, standardized service and thereby create an economic advantage for Otis and a benefit to Otis's customers. Otis employees are prohibited from reproducing, disclosing, or distributing SWPs.

10. Otis's SWP for Rigging and Hoisting is not available to the general public and is developed for and used exclusively by Otis personnel. The information contained therein is highly confidential and helps Otis to maintain a competitive advantage in the elevator industry.

11. In the regular course of its business, Otis continuously monitors its activities and gathers information in an effort to improve its operations and maintain its competitive advantage over competitors. Otis periodically measures and prepares reports on its accident rates at the various locations within its operations. These documents/reports are prepared at the direction of Otis management and are used exclusively by Otis to improve its operations, measure performance, and assess responsibility. These documents are non-public, contain confidential and proprietary information, and are subject to the non-disclosure agreements in place between Otis and its employees discussed above.

12. Whenever there is a fatality or serious injury at Otis, an Executive Summary is prepared following an internal investigation. These Executive Summaries are used exclusively by Otis to gain a better understanding of why and how the accident occurred, in an effort to reduce future occurrences. These documents/reports are prepared at the direction of Otis

management and are used exclusively by Otis to improve its operations, measure performance, and assess responsibility. These documents are non-public, contain confidential and proprietary information, and are subject to the non-disclosure agreements in place between Otis and its employees discussed above.

13. Depending on the situation, Otis occasionally retains outside counsel to assist in the investigation and preparation of these reports. Following the death of Daniel McQuillan, an Otis employee, Otis retained Attorneys John T. McNamara and Harold Engel. The reports were prepared in connection with the McQuillan fatality either directly by or under the supervision of Otis's retained counsel.

_____
Louis DeLoreto

Subscribed and sworn to before me this ___9___ day of August 2005.

_____
Commissioner of Superior Court / Notary Public

ROSE GOMEZ
**NOTARY PUBLIC**
MY COMMISSION EXPIRES SEP 30, 200_