## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

SUJATA NICHANI,                    :          CIVIL NO. 302CV1384 (MRK)

      Plaintiff          :

      v.                 :

OTIS ELEVATOR COMPANY and          :
UNITED TECHNOLOGIES               :
CORPORATION                        :

      Defendants          :          DECEMBER 28, 2005

### PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
### OF LEAVE TO FILE FOURTH AMENDED COMPLAINT

### INTRODUCTION

While Plaintiff cannot dispute that over 2 years have passed since Plaintiff's

complaint was amended to allege claims of retaliatory discharge, that discovery is

closed, and summary judgment motions decided, the fact is Defendants will suffer no

prejudice if the Court permits her leave to amend.  The prior pleadings in this case put

Defendants on notice of the 29 U.S.C. § 215(a)(3) claim, and indeed, alleged all that the

federal rules require.  The Fourth Amended Complaint relies on the same theory of

liability that was previously alleged (that Defendants retaliated against Plaintiff for filing

charges of discrimination); the difference is that the Fourth Amended Complaint seeks

to cite a specific statute in an individual count.

The Defendants twist the record in an attempt to have the Court believe that they

would be prejudiced by the Fourth Amended Complaint.  In fact, the Defendants have

always had notice of that claim.  Though the specific statute was not cited previously,

the Plaintiff's EEOC and CHRO affidavits (which Defendants always had in their

1

possession and indeed requested in discovery) were incorporated by reference into

each complaint. Moreover, Defendants' argument ignores the Federal Rules' liberal

pleading requirements by faulting the Plaintiff for not specifically citing the Equal Pay

Act in support of a claim of retaliation, (Defs.' Mem. at 4), even though all of the facts

supporting that claim were timely alleged within months after the retaliation occurred, in

the EEOC and CCHRO proceedings and in this action.

## LEGAL ARGUMENT

### 1.    The Defendants Have Always Been On Notice of Plaintiff's Claim

The record of this dispute, both before the administrative agencies and this

Court, establish undeniably that the Defendants knew that Plaintiff's claims of retaliation

were premised on the fact that she had previously filed a charge of discrimination for

"earning a different rate of pay." From then on Defendants were on notice, through the

additional and amended claims before the EEOC and CCHRO, and the pleadings in this

action, that Plaintiff was claiming Defendants retaliated against her for filing the charge

of discrimination:

- August 23, 2001: Plaintiff files her first CCHRO and EEOC complaint (Case Numbers 0210090 and 16aa11425), alleging that she was "earning a different rate of pay" than Bradford Russell, and that she believed the Defendants had violated the Equal Pay Act, 29 U.S.C. § 206.

  Exhibit A, attached.

- April 26, 2002: Plaintiff files her second CCHRO and EEOC charge alleging that she was "retaliated against" for a "previously filed claim" and again alleges that the Defendants violated the Equal Pay Act, 29 U.S.C. § 206. The retaliatory conduct alleged does not include, at this time, Plaintiff's termination because it had not occurred, but rather states:

  I believe that the Respondent has retaliated against me for my protected activity of filing the charge of discrimination by (1) not awarding me stock options under the Plan even

2

though I have received them for the past 6 years and have continued to perform at the highest level; and (2) not giving me a bonus under the Performance Incentive Plan, even though I have continued to perform at the highest level.

Exhibit B, attached.

- October 2, 2002:  Plaintiff files her First Amended Complaint in this action, alleging the filing of the August 23, 2001 Charge of Discrimination, and further alleges that she received no stock options "in retaliation for her protected activity of filing charges of discrimination."  First Amended Compl. ¶ 40.  She also alleges that she did not receive any bonus the year she filed her charges of discrimination.  First Amended Compl. ¶ 42.  More importantly, she alleged in Count 5 of the First Amended Complaint (titled "Violation of 29 U.S.C. § 206 et seq.) that she "continued to receive unequal pay and wages than her male counterparts" First Amended Compl. Count Five, ¶ 45.

- July 17, 2003:  Plaintiff's Second Amended Complaint is filed, which, ion Count Six labeled retaliation in violation of Title VII, alleges specific retaliatory conduct against her for "filing her charges of discrimination."  Second Amended Complaint, Count Six, ¶ 58.

- September 16, 2003: Plaintiff files her third charge with the CCHRO and EEOC, alleging retaliation arising out of her termination of employment.  This charge was assigned Case Number 0410094 and EEOC Case Number 16A-2004-00030.

Exhibit C, attached.

- June 23, 2004:  Plaintiff's Third Amended Complaint is filed that includes all of the charges of discrimination filed before the CCHRO and EEOC, and the most recent release to sue.

Defendants have always been on notice that Plaintiff has claimed retaliation for **filing charges of discrimination**.  Even if the Court credits Defendants' argument that the previously alleged retaliation claims needed to specifically cite the Equal Pay Act,(Defs.' Mem. at 4), "Title VII [retaliation] proceedings should have put defendants on notice of the possibility" that Plaintiff would claim retaliation under the Equal Pay Act.

See Grattan v. Burnett, 710 F.2d 160, 163 (C.A.Md.,1983), aff'd on other grounds, 468

U.S. 42, 46, n.8, 104 S.Ct. 2924, 2927 (1984)(plaintiff permitted to add claims of race

and sex discrimination raised four years after initial complaint).  Defendants' claim of

prejudice and surprise should fall on deaf ears.

### 2.    Delay without Prejudice is Insufficient to Deny Leave to Amend Under Rule 15

Plaintiff's counsel did not intentionally withhold the 29 U.S.C. 215(a)(3) claim, nor

delay in bad faith.  The delay and failure to specifically cite this statute was the result of

inadvertence.  Long v. Wilson, 393 F.3d 390, 401(3rd Cir. 2004)(inadvertence does not

equal bad faith).  The liberal rules of federal pleading should not preclude the Plaintiff's

claim from proceeding on its merits.  And, more importantly, where there is no prejudice,

as is the case here, the Court should grant the Plaintiff leave to amend.

Rule 15 of the Federal Rules of Civil Procedure "reflects two of the most

important principles behind the Federal Rules: pleadings are to serve the limited role of

providing the opposing party with notice of the claim or defense to be litigated, and

'mere technicalities' should not prevent cases from being decided on the merits."  See 6

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure: Civil 2d § 1471 (2d ed.1990).  "The rule in the Second Circuit has been to

allow a party to amend its pleadings in the absence of prejudice or bad faith."

Independence Ins. Service Corp. v. Hartford Financial Services Group, Inc., 2005 WL

1038991, *4 (D.Conn., 2005). See also State Teachers Retirement Bd. v. Fluor Corp.,

654 F.2d 843, 856 (2d Cir. 1981)(delay alone, unaccompanied by such an "apparent

reason" does not usually warrant denial of leave to amend"); Bowles v. Reade, 198 F.3d

752, 758 (9th Cir.1999)("[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend."); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690 (8th Cir.1981)(district court abused discretion in denying leave to amend complaint to add count when no prejudice resulted from two and one-half year delay and facts underlying new and old counts were similar); Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 1084 (C.A.D.C.,1998)(length of a litigation is relevant only insofar as it suggests either bad faith on the part of the moving party or potential prejudice to the non-moving party should an amendment be allowed).

There is no undue burden on the Court, nor will the Defendants' suffer any prejudice. The facts underlying the 29 U.S.C. §215(a)(3) claim have been fully litigated. No further discovery is necessary by either side. The trial can proceed as scheduled.

### 3.    No Further Discovery is Necessary, and Defendants' Claim to the Contrary is Incredible

Defendants' make much of Plaintiff's multi-day deposition as if another full day would be spent on the Equal Pay Act retaliation claim. The truth is, Defendants during that deposition never focused on specific theories of retaliation, though Defendants were on notice of the retaliation claim for filing the charge of discrimination. Even Defendants' written discovery request to Plaintiff never specifically addressed any of the retaliation claims directly, but were rather general interrogatories and requests for production. Indeed, Defendants' specifically requested documents provided to the EEOC and CCHRO, and any statements concerning the subject matter of the action.[1]

---

[1] 14.    State whether you, your attorney, or any other representative(s) has any statement(s) of witnesses(s), signed or otherwise in writing adopted or approved by the person making it, or any stenographic,

Even where discovery has been closed, a pretrial conference is scheduled and trial is close, Courts have granted leave to amend where there is no prejudice and a party has been aware of a claim. See O'Brien v. Board of Educ. of Deer Park Union Free School Dist. Deer Park Public Schools, 92 F.Supp. 2d 110, 115 (E.D.N.Y.,2000) (leave granted though defendant had no compelling reason for not asserting defense, EEOC was aware of the defense, proceedings would not be delayed, and EEOC would suffer no prejudice); Hargett v. Valley Federal Sav. Bank, 60 F.3d 754, 763 (C.A.11 (Ala.),1995)(leave granted when defendant filed motion to amend four days before the pretrial conference because plaintiff on notice of defense before the pretrial conference").

Prejudice and delay of the proceedings are especially lacking in this case, because the amendment arises from the same common nucleus of facts, and are not "entirely new."   This Court has permitted such claims to be added at the summary judgment stage, when discovery is complete, because the defendant has had "fair notice" of the claims. Coudert v. Janney Montgomery Scott, LLC, 2005 WL 1563325, *3 (D.Conn., 2005)(plaintiff's hostile work environment claims under ADEA and Title VII raised in opposition to summary judgment all stem from the same nucleus of operative

---

mechanical, electrical or other recording or a transcription thereof, made by a party or non-party declarant regarding the subject matter of this case or concerning the actions of any party or witness therein except statements made by a party to their attorneys.

     10.    Please produce any and all documents that concern, refer to, or relate to the complaint filed by plaintiff with the Equal Employment Opportunity Commission against Otis, including, but not limited to, a notice of right to sue letter.

    Defs.' First Set of Interrogatories, No.s 14, 10.

     1.    Please produce any and all documents, tapes, notes, etc. referring or relating to the Complaint filed by Plaintiff with the Connecticut Commission on Human Rights & Opportunities against Otis, including, but not limited to, a release of jurisdiction letter.

    Defs.' First Set of Requests For Production, No. 1.

6

facts and were different variations on Complaint's original theme, which were presumably the focus of the parties' discovery.)

To think that Defendants' three day deposition of Plaintiff, which did not include any specific questions about any claim of retaliation, nor ask Plaintiff why she believed she was terminated, would now turn into a lengthier deposition simply because of the Equal Pay retaliation claim, is unbelievable. Defendants did not question Plaintiff about her specific theories of retaliation, they questioned her about the underlying equal pay claim, her job search, her role in EH&S, and extensively about the fatality investigation involving Daniel McQuillan. No further discovery is necessary.

**4.      Defendants' Claim -- That the 29 U.S.C. § 215(a)(3) Claim is Distinct From Other Claims -- is a Red Herring**

Defendants' contention that this claim is distinct from other claims of retaliation Act, (Defs.' Mem. at 4.), misses the mark, because she did file a formal complaint and alleged that complaint as the ongoing basis for the Defendants' retaliation. While it is true that 29 U.S.C. 215(a)(3) provides protection for filing a charge under the Equal Pay Act, that language means that informal complaints to supervisors of unequal pay may not be protected. Plaintiff has always alleged that Defendants retaliated against her for filing her formal charges of discrimination; she has not alleged informal complaints to her superiors as her protected activity. Defendants' argument on this point is unpersuasive because Plaintiff's complaints alleged all that would be required under 29 U.S.C. § 215(a)(3).

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

**AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE**

DATE:    _August 23, 2001_    CASE NO.: _021009 0_

My name is  _Sujata (Sue) Nichani_
and I reside at _4 West Mary Drive, Simsbury, CT 06070_    ,
The respondent is _United Technologies, Inc._

whose business address is: _One Financial Plaza, Hartford, CT 06101_

I was:

( )terminated                        (x)~~not hired~~/not promoted
( )suspended                        ( )harassed  ( ) sexually harassed
( )placed on probation            (x)demoted
(x)earning a different rate of pay    ( )not reinstated due to a disability
                                    ( )denied union representation
( )warned                            ( )constructively discharged
( )given a poor evaluation        ( )retaliated against
(x)denied a raise                    ( )delegated difficult assignments
( )less trained                        ( )not hired due to a disability

(x)discriminated against in terms and conditions of employment

on _May 1, 2001 through the present,_    and believe that my:

(x) race            (x)national origin        ( )mental disorder
(x) color            ( )marital status        ( )alienage
 (x) sex            ( )physical disability    ( )previously opposed,
                                            filed or assisted
( )related to pregnancy    ( )mental retardation    (x)ancestry
( )learning disability
( )age DOB:        ( )familial status        ( )creed
( )religion            ( )sexual orientation    ( )religious creed

were in part factors in this action. I believe that the respondent violated the following
Connecticut General Sections [statutes] enforced through Section 46a-58(a) and [act(s) listed
below]:

(x )46a-60(a)(1)            (X )Title VII of the Civil Rights Act
( )46a-60(a)(4)                of 1964, as amended, by the Civil Rights Act
                            of 1991
( )46a-60(a)(3)            ( )Age Discrimination in Employment Act, of
                            1967, 29 U.S.C. 621-634

RECEIVED
AUG 2 3 2001
COMM. ON HUMAN RTS. & OPP
SOUTHWEST REGIONAL OFFICE

( )46a-60(a)(5)
( )46a-60(a)(7)( )( )( )( )                    ( )Americans With Disabilities Act, 42 U.S.C. 12101
( )46a-60(a)(8)( )( )( )( )                       et seq.
( )46a-64( )( )                                (x)Equal Pay Act of 1964, 29 U.S.C. 206
( )46a-64c(a)( )( )( )                          ( )Section 504 of the Rehabilitation
( )46a-64c(a)(4)(A)                                Act of 1973, as amended
( )46a-64c( )( )                               (X)Title VIII of the Civil Rights Act of 1968, as amended
( )Sec. 3(1) of PA 91-58                          by the Fair Housing Amendment Act of 1988
   Hire, Discharge, Conditions                     (U.S.C. 3600-6620)

Other: 46a-60(a)(1)

I provide the following particulars:

1.    My name is Sujata (Sue) Nichani, and I reside at 4 West Mary Drive, Simsbury, CT 06070

2.    The Respondent is United Technologies, Inc., whose business address is One Financial
      Plaza, Hartford, CT 06101.

3.    The Respondent employs more than twenty employees.

4.    I am a woman of Asian Indian national origin. I began employment for the Respondent on
      October 15, 1990. I am currently working for the respondent in its Farmington, Connecticut
      location as the Senior Manager in Safety & Environment, for Otis Elevator Company ("Otis"),
      North American Area, and as the Business Practices Officer, North American Area. I first held
      the Senior Manager in Safety & Environment position as of April 1, 1999.

5.    The single formal performance evaluation I received in the Senior Manager position was very
      strong, and I consistently received informal praise for my work from the senior area executive
      to whom I reported as well as others above me in the Otis management structure.

6.    Nevertheless, on April 26, 2001, without any previous notice, respondent informed me that,
      effective immediately, I would be removed from my position so that a male, Brad Russell,
      could take it instead.

7.    I was told that I would be required to assist Mr. Russell in his transition into the Senior
      Manager position, but that I could then have a Branch General Manager position either in
      Atlanta, Georgia, or in San Jose, California. Either of these Branch General Manager
      positions would have required me to move cross-country, and both would have involved a
      significant reduction in my responsibilities. These positions were later posted at one to two
      salary grade levels below the Senior Manager position. In addition, I had previously held two
      Branch Manager positions (known then as Location Manager Positions. I had been promoted
      from the second one in 1997, having fully accomplished the respondent's expectations in the

2

NICH000123

position and been considered highly qualified for advancement.

8.    I declined to accept either of these Branch General Manager jobs, and informed respondent that I considered them inadequate alternatives to the Senior Manager job. Despite statements that it would attempt to place me in a more satisfactory position, respondent failed to offer me any other position as an alternative. I proceeded to assist with the transition.

9.    While working as Senior Manager in Safety & Environment, Brad Russell was paid salary at the director level, which was higher than the senior manager level; was offered the opportunity to earn substantial bonuses; and received benefits including guaranteed stock options. Mr. Russell was not performing the Business Practices Officer duties that I had been responsible for.

10.   When I had held the Senior Manager position prior to Mr. Russell, along with the Business Practices Officer duties, I had been paid salary as a senior manager, earning substantially less than Mr. Russell had earned while he held the Senior Manager position without the Business Practice Officer duties. In addition, I had never been offered the opportunity to earn bonuses of the same magnitude as those available to Mr. Russell, and I had never been offered nor had I received the benefits to which he was entitled while in that position, including the guaranteed stock options.

11.   On May 14, 2001, respondent informed me that Mr. Russell had resigned as Senior Manager, within a few weeks after he had taken the position. At that time, respondent offered me the chance to return to the Senior Manager position. I did so.

12.   When I learned of the salary and benefits that Mr. Russell had been earning while in the Senior Manager position, I asked respondent why I was not receiving the same pay and benefits while I was in the same Senior Manager position. Respondent acknowledged that, for reasons it did not identify, Mr. Russell was being compensated in the Senior Manager position at a higher rate than I. It informed me, however, that the job itself had remained a senior manager level job. Despite my inquiries, and respondent's assurances that it would address the issue, neither my salary, nor my bonus opportunities, nor my fringe benefits have been increased since I returned to the Senior Manager position.

13.   Furthermore, of the 18 people who currently report to the Vice President & Senior Area Executive for Otis' North American Area, the only two who are paid as senior managers rather than as directors are the one other employee among the 18 who is of Indian national origin, and myself.

14.   I am aware of other situations in which the respondent has moved one employee into a position without forcing the employee currently in that position into an inferior one. The employees involved in those situations have been male, white employees, with the exception of one, who was a Hispanic male.

15    I am also aware of a recent instance in which the respondent has increased the salary grade level and benefits of an employee to create equality between that employee and others with comparable responsibilities. The employee involved was a white male.

3

NICH000124

16. I believe that my gender and my race, national origin and ancestry were factors in respondent's decisions 1) to remove me from the Senior Manager position when it wished to place Brad Russell in that position; 2) to offer me as alternatives only jobs that were at distant locations, that I had already performed, and that involved substantially less responsibility than the Senior Manager position; and 3) not to offer me an increase in salary and benefits when I returned to the Senior Manager position after Mr. Russell left it, in order to equalize my salary and benefits with those of Mr. Russell and of other employees who report to the Vice President & Senior Area Executive for Otis' North American Area.

17. These events have caused me lost wages and benefits.

4

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

*Sujata Nichani* being duly sworn, on oath, states that s/he is the complainant herein; that s/he has read the foregoing complaint and knows the content hereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated at Bridgeport, Connecticut this ___22d___ day of ___August___, 2001.

_____
Complainant's Signature

Subscribed and sworn to before me this ___22d___ day of ___August___, 2001.

*Sarah W. Post*
~~Notary Public~~/Commissioner of the Superior Court

~~My Commission expires~~_____

RECEIVED
AUG 2 4 2001
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION

5

NICH000126

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

DATE:        April 26, 2002_____

CHRO NO.: 0210475

EEOC NO.: 16AA-201211

RECEIVED
MAY 10 2002
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION

My name is   Sujata (Sue) Nichani
and I reside at 4 West Mary Drive, Simsbury, CT 06070
The respondent is United Technologies, Inc.

RECEIVED
MAY 10 2002
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION

whose business address is: One Financial Plaza, Hartford, CT 06101

I was:

( )terminated
( )suspended
( )placed on probation
( )earning a different rate of pay

( )warned
( )given a poor evaluation
( )denied a raise
( )less trained

( )not hired/not promoted
( )harassed  ( ) sexually harassed
( )demoted
( )not reinstated due to a disability
( )denied union representation
( )constructively discharged
(XX)retaliated against
( )delegated difficult assignments
( )not hired due to a disability

(XX)discriminated against in terms and conditions of employment

on February 28, 2002 through the present and believe that my:

( ) race
( ) color
( ) sex
( )related to pregnancy
( )learning disability
( )age DOB:
( )religion

( )national origin
( )marital status
( )physical disability
( )mental retardation

( )familial status
( )sexual orientation

( )mental disorder
( )alienage
(XX)previously filed claim
( )ancestry

( )creed
( )religious creed

were in part factors in this action.  I believe that the respondent violated the following
Connecticut General Sections [statutes] enforced through Section 46a-58(a) and [act(s) listed
below]:

( )46a-60(a)(1)

(X)46a-60(a)(4)

( )46a-60(a)(3)

( )46a-60(a)(5)

(X)Title VII of the Civil Rights Act
        of 1964, as amended, by the Civil Rights Act
        of 1991

( )Age Discrimination in Employment Act, of
        1967, 29 U.S.C. 621-634

1

NICH000139

( )46a-60(a)(7)( )( )( )( )
( )46a-60(a)(8)( )( )( )( )
( )46a-64( )( )( )
( )46a-64c(a)( )( )( )
( )46a-64c(a)(4)(A)
( )46a-64c( )( )
( )Sec. 3(1) of PA 91-58
   Hire, Discharge, Conditions

( )Americans With Disabilities Act, 42 U.S.C. 12101
   et seq.
(XX)Equal Pay Act of 1964, 29 U.S.C. 206
( )Section 504 of the Rehabilitation
   Act of 1973, as amended
( )Title VIII of the Civil Rights Act of 1968, as amended
   by the Fair Housing Amendment Act of 1988
   (U.S.C. 3600-6620)

Other:_____

I provide the following particulars in further support of my claim.

1.    My name is Sujata (Sue) Nichani, and I reside at 4 West Mary Drive, Simsbury, CT 06070

2.    The Respondent is United Technologies, Inc., whose business address is One Financial Plaza, Hartford, CT 06101.

3.    I filed a claim with the CHRO on or about August 23, 2001, and my claims have passed the Merit Assessment Review and proceeded to investigation. They are assigned CHRO Number 0210090 and EEOC Number 16aa11425. The respondent is represented in that proceeding by the law firm of Day, Berry & Howard.

4.    I am a woman of Asian Indian national origin. I began employment for the Respondent on October 15, 1990. I am currently working for the respondent in its Farmington, Connecticut location as the Senior Manager in Safety & Environment, for Otis Elevator Company ("Otis"), North American Area, and as the Business Practices Officer, North American Area. I first held the Senior Manager in Safety & Environment position as of April 1, 1999.

5.    The single formal performance evaluation I received in the Senior Manager position was very strong, and I consistently received informal praise for my work from the senior area executive to whom I reported as well as others above me in the Otis management structure.

6.    Since I have filed my charge of discrimination with the CHRO and the EEOC, I have continued to perform my job at the highest level, and have received no formal or informal complaints about my work. Indeed, I continue to receive formal and informal praise from other employees. The Respondent has not communicated to me any dissatisfaction in my performance.

2

NICH000140

7.    The respondent maintains a Recognition Stock Option Plan which is designed to permit "outstanding employees whose decisions impact the performance of the company, and whose skilled execution of those decisions helps to add value for shareowners" to "personally benefit from the value those key employees help create."

8.    I have received recognition stock options for the last five (5) years, since 1997. (See Exhibit A attached, letters for (1997, 1998, 1999 and 2000) awarding stock options for "outstanding performance"). From my experience and knowledge of the Respondent, I know that prior to 2002, the award of recognition stock options was very selective, and the Respondent awarded options to only extremely high performing individuals. *Last year I received the maximum allowable award of stock options: 500 shares.*

9.    The Respondent's expanded its Recognition Stock Option Plan this year to permit 40% additional participation than previous years; the obvious result being more employees received options under the Plan.

10.   These stock options are awarded through Statement of Award certificates that are issued every year. This year's certificates were issued at the end of February 2002. I received none. I believe this is in retaliation for my filing of this charge of discrimination, since my performance has remained at the highest level.

11.   The respondent also has a Performance Incentive Plan which identifies key employees and rewards them with a bonus up to 15% of the employee's salary.

12.   In January 2001, I received a 10% bonus payment under the Respondent's Performance Incentive Plan for my performance in 2000. In 2002, I did not receive any bonus.

13.   I believe that the Respondent has retaliated against me for my protected activity of filing the charge of discrimination by (1) not awarding me stock options under the Plan even though I have received them each year since 1997 and have continued to perform at the highest level; and (2) not giving me a bonus under the Performance Incentive Plan, even though I have continued to perform at the highest level.

14.   These events have caused me lost wages and benefits.

3

NICH000141

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

DATE:     August 22, 2003

CHRO NO.:
EEOC NO.:

My name is  Sujata (Sue) Nichani
and I reside at 4 West Mary Drive, Simsbury, CT 06070
The respondents are Otis Elevator Company and United Technologies, Inc.

whose business addresses are:  One Farm Springs Road, Farmington, Connecticut 06032
and  One Financial Plaza, Hartford, CT 06101

I was:

( X)terminated
( )suspended
( )placed on probation
( X)earning a different rate of pay

( )warned
(X)given a poor evaluation
( )denied a raise
( )less trained

( )not hired/not promoted
( )harassed  ( ) sexually harassed
( )demoted
( )not reinstated due to a disability
( )denied union representation
( )constructively discharged
(XX)retaliated against
( )delegated difficult assignments
( )not hired due to a disability

(XX)discriminated against in terms and conditions of employment

on March 21, 2003 and believe that my:

(X) race
(X ) color
(X) sex
( )related to pregnancy
( )learning disability
( )age DOB:
( )religion

(X)national origin
( )marital status
( )physical disability
( )mental retardation

( )familial status
( )sexual orientation

( )mental disorder
( )alienage
(X)previously filed claim
(X)ancestry

( )creed
( )religious creed

were in part factors in this action.  I believe that the respondent violated the following
Connecticut General Sections [statutes] enforced through Section 46a-58(a) and [act(s) listed
below]:

(X )46a-60(a)(1)
(X)46a-60(a)(4)

( )46a-60(a)(3)

(X)Title VII of the Civil Rights Act
      of 1964, as amended, by the Civil Rights Act
      of  1991
( )Age Discrimination in Employment  Act, of
      1967, 29 U.S.C. 621-634

1

( )46a-60(a)(5)
( )46a-60(a)(7)( )( )( )( )
( )46a-60(a)(8)( )( )( )( )
( )46a-64( )( )
( )46a-64c(a)( )( )( )
( )46a-64c(a)(4)(A)
( )46a-64c( )( )
( )Sec. 3(1) of PA 91-58
   Hire, Discharge, Conditions

( )Americans With Disabilities Act, 42 U.S.C. 12101
   et seq.
(XX)Equal Pay Act of 1964, 29 U.S.C. 206
(   )Section 504 of the Rehabilitation
   Act of 1973, as amended
( )Title VIII of the Civil Rights Act of 1968, as amended
   by the Fair Housing Amendment Act of 1988
   (U.S.C. 3600-6620)

Other:_____

     I provide the following particulars in further support of my claim.

1.    My name is Sujata (Sue) Nichani, and I reside at 4 West Mary Drive, Simsbury, CT 06070

2.    The Respondents are United Technologies, Inc., and Otis Elevator Company.

### THE FIRST CHARGES FILED WITH THE CHRO AND EEOC

3.    I filed a claim with the CHRO on or about August 23, 2001, and my claims passed the Merit Assessment Review and proceeded to investigation (they were assigned CHRO Number 0210090 and EEOC Number 16aa11425). I then received a release of jurisdiction and right to sue respectively and filed an action in United States District Court, which is pending as docket number 302CV1384. The respondents are represented in that proceeding by the law firm of Day, Berry & Howard.

### THE SECOND CHARGES FILED WITH THE CHRO AND EEOC

4.    Thereafter, by complaint dated April 26, 2002, I filed with the CHRO charges claiming that the Respondents retaliated against me for filing the charges under CHRO Number 0210090 and EEOC Number 16aa11425. These new charges were assigned CHRO Number 0210475 and EEOC Number 16aa201211. I received a release of jurisdiction and right to sue from the CHRO and EEOC respectively for these claims, which had been made part of my amended complaint in United States District Court, docket number 302CV1384.

5.    I was still employed by Respondents while the CHRO proceedings above and my federal court case were pending.

6.    I am a woman of Asian Indian national origin. I began employment for the Respondents on October 15, 1990. Up until I was terminated on March 21, 2003, I was working for the Respondents' Farmington, Connecticut location as the Senior Manager in Safety & Environment, for Otis Elevator Company ("Otis"), North American Area, and as the Business Practices Officer, North American Area. I first held the Senior Manager in Safety & Environment position as of April 1, 1999.

7.    Up until my performance evaluation on March 21, 2003, the only other formal performance

2

evaluation I received in the Senior Manager position was very strong, and I consistently received informal praise for my work from the senior area executive to whom I reported as well as others above me in the Otis management structure.

8.    Since I have filed my charge of discrimination with the CHRO and the EEOC, and the complaint in the United States District Court, I have continued to perform my job at the highest level, and I received no formal or informal complaints about my work until I received a performance evaluation on March 21, 2003.

9.    The respondent maintains a Recognition Stock Option Plan which is designed to permit "outstanding employees whose decisions impact the performance of the company, and whose skilled execution of those decisions helps to add value for shareowners" to "personally benefit from the value those key employees help create."

10.   I had received recognition stock options for five (5) years, starting in 1997. (See Exhibit A attached, letters (for 1997, 1998, 1999 and 2000) awarding stock options for "outstanding performance"). From my experience and knowledge of the Respondent, I know that prior to 2002, the award of recognition stock options was very selective, and the Respondent awarded options to only extremely high performing individuals. *In 2000 I received the maximum allowable award of stock options: 500 shares.*

11.   The Respondents expanded its Recognition Stock Option Plan in 2001 to permit 40% additional participation than previous years; the obvious result being more employees received options under the Plan.

12    These stock options are awarded through Statement of Award certificates that are issued near the end of February every year. Once again – as I alleged in my previous complaint, CHRO Number 0210090 and EEOC Number 16aa11425 -- I received none in 2003. I believe this is in retaliation for my filing the charges of discrimination (docket numbers CHRO 0210090 and 0210475 and EEOC numbers 16aa11425 and 16aa201211), and the action pending in United States District Court, docket number 302CV1384 since my performance remained at the highest level.

13.   The respondent also has a Performance Incentive Plan which identifies key employees and rewards them with a bonus up to 15% of the employee's salary.

14.   In January 2001, I received a 10% bonus payment under the Respondent's Performance Incentive Plan for my performance in 2000. In 2002 nor 2003, I did not receive any bonus.

15.   On or about December 23, 2002, a fatal accident occurred in Jersey City, New Jersey, at a construction project involving the Otis. I, as safety manager, was involved in the internal investigation of this fatality.

16.   While the investigation was ongoing, I was removed from the position of Business Practices Officer, a position that involved overseeing ethics compliance and Respondents' adherence to its internal Code of Ethics.

3

17.    On March 21, 2003, while I was on vacation, I was summoned from home to Ray Moncini's office, the President and Senior Executive for Otis.  Upon my arrival, I was presented with a completed "Performance Feedback" form, and met with Moncini and Ellen McGroary for approximately ten (10) minutes.  At the end of this meeting defendants terminated my employment.

18.    After Defendants' terminated my employment, they replaced me with a male, Pat Dowson, who is compensated at a director level, yet is less qualified for the position.  Moreover, Mr. Dowson is not performing the Business Practices Officer position which I was, up until Respondents removed me from that position.

19.    I believe that the Respondent has retaliated against me for my protected activity of filing the charges of discrimination and filing an action in federal court by (1) not awarding me stock options under the Plan even though I have received them previously and performed at the highest level; (2) not giving me a bonus under the Performance Incentive Plan, even though I performed at the highest level; and (3) terminating my employment in March 21, 2003.

20.    These events have caused me lost wages and benefits.

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Sujata Nichani, being duly sworn, on oath, states that she is the complainant herein; that she has read the foregoing complaint and knows the content hereof; that the same is true of her own knowledge, except as to the matter herein stated on information and belief and that as to these matters she believes the same to be true.

Dated at _____, Connecticut this ___22___ day of _____, 2003.

Middlebury

_____
Complainant's Signature

Subscribed and sworn to before me this ___22nd___ day of _____, 2003.

_____
Notary Public/Commissioner of the
Superior Court

My Commission expires _____

4

## **CERTIFICATION**

This is to certify that a copy of the foregoing was this date mailed by first class

United States mail, postage prepaid, to the following:

Albert Zakarian, Esq.
Day, Berry & Howard LLP
185 Asylum Street
Hartford, CT  06103-3499

Jeffrey J. Tinley, Esq.
Tinley, Nastri, Renehan & Dost, LLP
60 North Main Street, 2nd Floor
Waterbury, CT 06702

Dated:        December 28, 2005                    _____
                   Middlebury, CT                          Anthony R. Minchella