**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUJATA NICHANI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV1384 (MRK) |
| v. | : | |
| | : | |
| UNITED TECHNOLOGIES CORP. and | : | |
| OTIS ELEVATOR COMPANY, | : | |
| | : | |
| Defendants. | : | APRIL 6, 2006 |

## <u>DEFENDANTS' PROPOSED JURY INSTRUCTIONS</u>

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, Defendants United

Technologies Corp. ("UTC") and Otis Elevator Co. ("Otis") respectfully submit the following

proposed jury instructions.  Defendants expressly reserve the right to further modify, supplement

and/or amend these proposed instructions.

1

**PROPOSED JURY INSTRUCTION NO. 1**

**FILING OF LAWSUIT, BURDEN OF PROOF**

The Plaintiff, Sujata Nichani, to whom I will refer as "Ms. Nichani" or "Plaintiff," claims that the Defendants, to whom I will refer as "Otis" and/or "UTC" or "Defendants", discriminated against her on the basis of her gender and retaliated against her by terminating her employment because she made discrimination claims. Otis denies that it discriminated against Ms. Nichani or did anything unlawful. Otis instead contends that Ms. Nichani's employment was terminated because she failed, in her role as head of safety for Otis's North America Region, to deploy and implement certain Otis safety standards, which failures came to light after an Otis employee fell down an elevator shaft and was killed on the job.

Ladies and gentlemen, I must remind you that the mere filing of a lawsuit containing allegations or claims against another person or business is proof of nothing. And you must not draw any inference from the fact that a lawsuit was filed. To decide whether a case has been proved in accordance with all of the requirements of law on which I will instruct you, you must look to the evidence, for it is from that evidence that you must determine whether Ms. Nichani has or has not proved each of her claims. Your verdict must be based absolutely and solely upon the law I give you and the evidence presented to you during the trial of this case.

**PROPOSED JURY INSTRUCTION NO. 2**

**CORPORATE DEFENDANTS**

In this case, Defendants are both corporations, with Otis being a subsidiary of UTC. This fact must not influence your decision in this case. In the eyes of the law, a corporation is a person and is entitled to the same fair trial as an individual. Considerations of the size of the

Company or its financial position have no place in this trial.  This case is not to be decided on the basis of relative size or wealth.  All parties stand equal under the law and are to be dealt with as equals in a court of justice.

Source:  Devitt & Blackmar, §§ 71.01, 71.04 (1998).

## PROPOSED JURY INSTRUCTION NO. 3

### SYMPATHY

In deciding the facts of this case, you must perform your duties as jurors without bias or prejudice as to any party.  Your verdict may not be based on any element of sympathy.  For instance, you cannot find for Ms. Nichani simply because of some general feeling that Otis should have treated her differently.  The question for you is not whether Ms. Nichani, in your view, was treated fairly or unfairly, well or badly, but whether she has proved all of the elements of her legal claims by a fair preponderance of the evidence.

Source:  Parcinski v. Outlet Co., 673 F.2d 34 (2d Cir. 1982).

## PROPOSED JURY INSTRUCTION NO. 4

### BUSINESS DECISIONS

An employer is entitled to make its own subjective business decisions.  You are not to substitute your judgment for that of Otis in its employment decisions.  You may not second guess business decisions made by Otis, and you are not to decide whether Otis, in offering legitimate, non-discriminatory reasons for terminating Ms. Nichani, was right, correct or wise in its reasons.  The law does not require an employer to use any particular criteria in making employment decisions.  Otis need not be right, correct or wise in its reasons.  Even erroneous,

poor or illogical employment decisions are not illegal.  Your only inquiry is whether decisions

regarding the termination of Ms. Nichani's employment were motivated by her gender or her

claims of gender discrimination.

Source:  <u>Fisher v. Vassar Coll.</u>, 114 F.3d 1332, 1346 (2d Cir. 1997) (en banc); <u>Williams v.
Williams Elecs., Inc.</u>, 856 F.2d 920, 923 (7th Cir. 1988); <u>Fallon v. Illinois</u>, 882 F.2d 1206, 1212
(7th Cir. 1989); <u>Craft v. Metromedia, Inc.</u>, 766 F.2d 1205, 1210 (8th Cir. 1985); <u>Georgen-Saad v.
Tex. Mut. Ins. Co.</u>, 195 F. Supp. 2d 853 (W.D. Tex. 2002); <u>Wheatley v. Wimico County</u>, 390
F.3d 328, 334 (4th Cir. 2004).

<u>**PROPOSED JURY INSTRUCTION NO. 5**</u>

**ADMISSIONS AND PRIOR INCONSISTENT STATEMENTS**

There was evidence in this case to the effect that parties made statements on occasion

before trial in depositions, responses to interrogatories, or in documents or other writings that

differ from the testimony he or she has given on the stand.  You are entitled to consider these

statements in two respects.

First you are entitled to consider that information in weighing that witness's

credibility.  A witness's testimony may be less credible, and may be discredited completely,

when he or she has made a statement on another occasion that is inconsistent with his or her

present testimony or claim.

Second, if a certain witness is a party to the case, such as the plaintiff, the statements

made by her are what our law terms "admissions."  An admission of a party to a suit, made out of

court, is admissible as proof of the matter stated in it.  In other words, if you choose to do so, you

may treat a party's out of court statement as proof of the facts contained therein.  It is for you to

determine what weight is to be given to any alleged admission.  In that connection, you should

consider the circumstances under which the statements were given as bearing upon the weight to

be accorded them.

Source: <u>Gosselin v. Perry</u>, 166 Conn. 152, 161, 348 A.2d 623 (1974); <u>Worden v. Francis</u>, 153 Conn. 578, 581-82, 219 A.2d 442 (1966).

## PROPOSED JURY INSTRUCTION NO. 6

### GENDER DISCRIMINATION

     1.  Under federal and state law, an employer may not take an adverse action against an employee because of his of her gender.  The mere fact that Ms. Nichani is a woman and was terminated is not sufficient, in and of itself, to establish her claim of gender discrimination. Moreover, the law does not prohibit an employer from making employment decisions based on factors other than gender.  It is Ms. Nichani's burden to prove by a preponderance of the evidence that Otis took an adverse employment action against her because of her gender.  In other words, Ms. Nichani must prove that her gender was a motivating factor in Otis's decisions. You must decide whether Ms. Nichani has proved by a preponderance of evidence that, for instance, Otis would not have terminated her if she had been a male and everything else had remained the same.  If you determine that gender was not a motivating factor in Otis's decisions, then you must find for Otis on Ms. Nichani's gender discrimination claim.  Likewise, if you find that Ms. Nichani's employment was terminated because of factors other than gender, then you must find for Otis.

Source:  <u>Model Jury Instructions: Employment Litigation</u>, § 1.02 (ABA 2d ed. 2005); Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u>, §171.20 (5th Ed. 2001); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 146-47 (2000); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 517-19, 519 (1993); <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000); <u>Schnabel v. Abramson</u>, 232 F.3d 83, 88 n.2 (2d Cir. 2000).

2.   In deciding whether Ms. Nichani has met her burden of proving that Otis intentionally discriminated against her because of her gender, you also must consider any legitimate, nondiscriminatory reason or explanation stated by Otis for its decision to terminate Ms. Nichani.  You have heard evidence that Otis terminated Ms. Nichani due to her failures to deploy and implement Otis safety standards and policies, which failures came to light as a result of the McQuillen fatality and investigation.  In order to find for Ms. Nichani, you must find that Otis's stated reasons for terminating Ms. Nichani, i.e., her deficiencies as head of safety, were merely a pretext for discriminating against Ms. Nichani because of her gender.  Conversely, if you find that Ms. Nichani was terminated because for her failures to deploy and implement Otis safety standards and policies, and not because of her gender, then you must find for Otis.

Source:  Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u>, §171.77 (5th Ed. 2001); <u>Model Jury Instructions: Employment Litigation</u>, § 1.02 (ABA 2d ed. 2005); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 146-47 (2000); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 517-19, 519 (1993); <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000); <u>Schnabel v. Abramson</u>, 232 F.3d 83, 88 n.2 (2d Cir. 2000).

3.   As I already mentioned, Ms. Nichani has the burden of proving that Otis intentionally discriminated against her because of her gender.  In assessing whether gender was a determinative factor, you may consider whether Otis's explanation for its decisions is credible; but even if you do not believe Otis's explanation, that alone does not show that Otis intentionally discriminated against Ms. Nichani.  In other words, Ms. Nichani cannot prevail if she proves only that Otis's reasons for its decisions are untrue but fails to prove that her gender actually played a determinative role in those decisions.

Source:  Model Jury Instructions: Employment Litigation, § 1.02 (ABA 2d ed. 2005); Kevin F.
O'Malley, Jay E. Grenig, Hon. William C. Lee, Federal Jury Practice and Instructions, §171.20
(5th Ed. 2001); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146-47 (2000); St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517-19, 519 (1993); Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973); James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000); Schnabel v. Abramson,
232 F.3d 83, 88 n.2 (2d Cir. 2000).

        4.   Thus, your duty is to decide, based on the instructions I give you, whether Ms.

Nichani has proven by a preponderance of the evidence that Otis took an adverse employment

action against her because of her gender.  This means that Ms. Nichani must prove that gender

was a determinative factor in the sense that "but for" her employer's motive to discriminate

because of gender, her employment would not have been terminated.  You may not find for Ms.

Nichani simply because you feel sorry for her.  Likewise, you may not find for Ms. Nichani to

reward her for past services to Otis or because of some general feeling that she deserved better

from her employer.  If you find that Ms. Nichani has not proven that Otis's decisions were made

because of her gender, you must enter a verdict for Otis.

Source:  Model Jury Instructions: Employment Litigation, § 1.02 (ABA 2d ed. 2005); Kevin F.
O'Malley, Jay E. Grenig, Hon. William C. Lee, Federal Jury Practice and Instructions, §171.20
(5th Ed. 2001); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146-47 (2000); St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517-19, 519 (1993); Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973); James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000); Schnabel v. Abramson,
232 F.3d 83, 88 n.2 (2d Cir. 2000).

## PROPOSED JURY INSTRUCTION NO. 7

### RETALIATION

        1.   Under federal and state law, an employer may not retaliate against an employee

because she engages in an activity protected under state and federal discrimination laws.  Here,

Ms. Nichani alleges that Otis retaliated against her because she filed a claim of discrimination

with the Connecticut Commission on Human Rights and Opportunities, a.k.a., the CHRO.  In

other words, Ms. Nichani has the burden of proving by a preponderance of the evidence that Otis

took certain adverse employment actions against her because she filed a charge of

discrimination.

Source: Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, Federal Jury Practice and Instructions, §171.25 (5th Ed. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768-69 (2d Cir. 1998); Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996); Tomka v. Seiler, Corp., 66 F.3d 1295, 1308 (2d Cir. 1995);   Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990); Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 374 (D. Conn. 1999).


        2.  For Ms. Nichani to prove her claim of retaliation, you must determine whether

she has proven by a preponderance of the evidence that Otis's decisions were motivated by her

filing a charge with the CHRO.   In other words, you must decide whether Otis would not have

terminated Ms. Nichani but for the fact that she raised claims of discrimination at the CHRO and

everything else had remained the same.  You must find for Otis, however, if you find that Ms.

Nichani's charge of discrimination was not the reasos Otis terminated her employment.

        A plaintiff can prove causation through direct evidence of retaliatory animus or

circumstantially by showing that the protected activity was followed closely by a discriminatory

treatment.  A substantial time lapse, however, between an employee's protected activity and the

adverse employment action is counter-evidence of a causal connection.  Accordingly, in

considering whether Ms. Nichani has proven that Otis retaliated against her, you should consider

how much time elapsed between her filing charges with the CHRO and her termination.  Here,

Ms. Nichani filed her charge with the CHRO in August 2001 and was not terminated until March

2003. Thus, you may consider this one and a half-year gap in deciding whether Otis terminated

Ms. Nichani because of her charges with the CHRO or because of other reasons.

Source: <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001); <u>Kodengada v. IBM</u>,
No. 00-7434, 2000 U.S. App. LEXIS 31322 (2d Cir. Dec. 4, 2000); <u>Johnson v. Palma</u>, 931 F.2d
203, 207 (2d Cir. 1991); <u>Sumner v. United States Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990);
<u>Reed v. Conn. Dep't of Transp.</u>, 161 F. Supp. 2d 73, 83 (D. Conn. 2001); <u>Hollander v. Am.
Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990); <u>Johnson v. Univ. of Wisconsin-Eau Claire</u>, 70
F.3d 469, 480 (7th Cir. 1995); <u>Bayard v. Riccitelli</u>, 952 F. Supp. 977, 987 (E.D.N.Y. 1997);
<u>Parmlee v. Conn. Dep't of Revenue Servs.</u>, 160 F. Supp. 2d 294, 304-05 (D. Conn. 2001);
<u>Barlow v. Connecticut</u>, 319 F. Supp. 2d 250 (D. Conn. 2004).

     3.     Otis denies that it retaliated against Ms. Nichani for raising claims of

discrimination. You have heard evidence that Ms. Nichani was terminated for her failure to

deploy and implement Otis safety standards and policies, which failure came to light during the

investigation following the death of Daniel McQuillen. In order to find for Ms. Nichani, you

must find that Otis's stated reasons for terminating Ms. Nichani, i.e., her deficiencies as head of

safety, were merely a pretext for retaliating against Ms. Nichani for filing her charge of

discrimination. Conversely, if you find that Ms. Nichani was terminated because of her failure to

deploy and implement Otis safety standards and policies, and not because she filed a charge with

the CHRO, then you must find for Otis on Ms. Nichani's claim of retaliation.

Source: Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and
Instructions</u>, §§171.25, 171.77 (5th Ed. 2001); <u>Model Jury Instructions: Employment Litigation</u>,
§ 1.02 (ABA 2d ed. 2005); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768-69 (2d Cir.
1998); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 146-47 (2000); <u>Richardson
v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426 (2d Cir. 1999); <u>Cosgrove v. Sears,
Roebuck & Co.</u>, 9 F.3d 1033, 1038-39 (2d Cir. 1993); <u>Wanamaker v. Columbia Rope Co</u>., 108
F.3d 462 (2d Cir. 1997).

     4.     As I already mentioned, it is Ms. Nichani's burden to prove that Otis retaliated

against her for filing a charge of discrimination with the CHRO. In assessing whether Otis

retaliated against Ms. Nichani, you may consider whether Otis's explanation for its decisions is credible; but even if you do not believe Otis's explanations, that alone does not show that Otis retaliated against Ms. Nichani.  In other words, Ms. Nichani cannot prevail on he retaliation claim if she proves only that Otis's reasons for its decisions are untrue but fails to prove that her protected activity played a determinative role in those decisions.

Source: Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u>, §§171.25, 171.77 (5th Ed. 2001); <u>Model Jury Instructions: Employment Litigation</u>, § 1.02 (ABA 2d ed. 2005); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768-69 (2d Cir. 1998); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 146-47 (2000); <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426 (2d Cir. 1999);<u>Cosgrove v. Sears, Roebuck & Co.</u>, 9 F.3d 1033, 1038-39 (2d Cir. 1993); <u>Wanamaker v. Columbia Rope Co.</u>, 108 F.3d 462 (2d Cir. 1997).

    5.    Thus, your duty is to decide, based on the instructions I give you, whether Ms. Nichani has proven by a preponderance of the evidence that Otis terminated her because she filed a charge of gender discrimination.  This means that Ms. Nichani must prove that her protected activity was a determinative factor in the sense that "but for" her employer's motive to retaliate, her employment would not have been terminated.  You may not find for Ms. Nichani simply because you feel sorry for her.  Likewise, you may not find for Ms. Nichani to reward her for past services to Otis or because of some general feeling that she deserved better from her employer or because you disagree with Otis's decision to terminate her.  If you find that Ms. Nichani has not proven that Otis's decisions were made in retaliation for filing a charge of gender discrimination, you must enter a verdict for Otis.

Source:  Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u>, §§171.25, 171.77 (5th Ed. 2001); <u>Model Jury Instructions: Employment Litigation</u>, § 1.02 (ABA 2d ed. 2005); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768-69 (2d Cir. 1998); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 146-47 (2000); <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426 (2d Cir. 1999).

## PROPOSED JURY INSTRUCTION NO. 8

## GENDER DISCRIMINATION AND RETALIATION -- CFEPA

Ms. Nichani also claims that Otis discriminated and retaliated against her in violation of the Connecticut Fair Employment Practices Act (or CFEPA, for short).  CFEPA, like Title VII, makes it unlawful for an employer to discriminate or retaliate against an employee.  If you find that Ms. Nichani did not satisfy her burden of proving gender discrimination or retaliation under Title VII, then you must find for Otis under CFEPA as well.

Source: Conn. Gen. Stat. § 46a-60; Holt v. KMI - Continental, Inc., 95 F.3d 123 (2d Cir. 1996); Ann Howard's Apricots Restaurant, Inc. v. Commission on Human Rights & Opportunities, 237 Conn. 209 (1996); Levy v. Commission on Human Rights & Opportunities, 236 Conn. 96 (1996); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81 (D. Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999); Hill v. Pinkerton Security & Investigation Serv., Inc., 977 F. Supp. 148 (D. Conn. 1997); Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 374 (D. Conn. 1999).

## PROPOSED JURY INSTRUCTION NO. 9

## ADVERSE EMPLOYMENT ACTION

To find for Ms. Nichani on any of her claims of employment discrimination and retaliation, you first must find that she suffered an adverse employment action.  An adverse employment action means a materially adverse change in the terms and conditions of employment.  Thus, not every unfavorable occurrence at work is actionable as an adverse employment action.  Further, to be materially adverse, the challenged action must be more severe than a mere inconvenience or an alteration of job responsibilities.  Examples of materially adverse changes include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material job responsibilities.  Thus, if you find that some of Ms. Nichani's complaints about her treatment at Otis do not amount to adverse employment actions, you may not find for Ms. Nichani on those claims.

Source: <u>Sanders v. N.Y. City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004); <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003); <u>Hepburn v. City of Torrington</u>, 2004 U.S. Dist. LEXIS 15163, *15-16 (D. Conn. 2004) (MRK); <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426, 446 (2d Cir. 1999); <u>Crady v. Liberty Nat'l Bank & Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993).

## PROPOSED JURY INSTRUCTION NO. 10

### PLAINTIFF'S PERCEPTION OF HERSELF IS IRRELEVANT

Ms. Nichani's testimony and personal belief as to her own qualifications and work performance are insufficient to support a claim of intentional gender discrimination or retaliation. The testimony of Ms. Nichani's fellow employees is also insufficient to support her claim. Instead, it is the perception and judgment of Ms. Nichani's supervisors, i.e., those who made the decisions affecting her employment, including her termination, that are relevant to her claim.

Source: <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 595 (6th Cir. 2003); <u>Rosengarten v. J.C. Penney Co.</u>, 605 F. Supp. 154, 157 (E.D.N.Y. 1985); <u>Menard v. First Sec. Servs. Corp.</u>, 848 F.2d 281, 285 (1st Cir. 1988); <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1160 (6th Cir. 1990).

## PROPOSED JURY INSTRUCTION NO. 11

### STRAY REMARKS

You have heard testimony from Ms. Nichani that certain employees of Otis allegedly made gender-related comments. Ms. Nichani alleges that these comments prove discrimination. A comment does not prove discrimination unless Ms. Nichani shows a causal connection between the comment and Otis's decisions about her employment, including the decision to terminate her employment. If Ms. Nichani fails to prove a causal connection between the

comment and her termination, the comment, even if it was made, is not relevant to her

termination and may not be considered in deciding this case.

Source:  <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 251 (1989); <u>Danzer v. Norden Sys.</u>, 151 F.3d 50, 56 (2d Cir. 1998); <u>Golove v. Monroe Cmty. College</u>, 29 Fed. Appx. 695, 699 (2d Cir. 2002); <u>Fisher v. Vassar College</u>, 70 F.3d 1420 (2d Cir. 1995); <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 109-10 & n.2 (2d Cir. 1994); <u>Ostrowski v. Atlantic Mut. Ins. Cos.</u>, 968 F.2d 171, 182 (2d Cir. 1992); <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 779 (8th Cir. 1995).

## **<u>PROPOSED JURY INSTRUCTION NO. 12</u>**

### **DAMAGES**[1]

1.   It is your duty to decide, based on the facts and on the rules of law on which I am

instructing you, first, whether the Defendants are liable, and if so, second, the amount of the

damages Ms. Nichani has proved, if any.

Since Otis must address damages or lose its opportunity to do so, none of the evidence

or discussion relating to damages presented on Otis's behalf should be taken or construed by the

jury as an admission by Otis that it is liable or that Ms. Nichani is entitled to damages.  Quite the

contrary, as has been made clear before you, Otis has denied Ms. Nichani's allegations just as

vigorously as Ms. Nichani has pressed her claims.

Moreover, the fact that I am instructing you as to the proper measure of damages

should not be considered as intimating any view of mine as to which party is entitled to your

verdict in this case.  Instructions as to the measure of damages are given for your guidance and

should only be considered in the event you find in favor of Ms. Nichani in accordance with the

other instructions that I have given you.

---

[1] The Defendants are not presenting proposed jury instructions on the issues of lost wages or mitigation of damages on the Plaintiff's discrimination claims, because those issues are not for the jury.  <u>See</u> <u>Broadnax v. City of New Haven</u>, 415 F.3d 265 (2d Cir. 2005).  Defendants reserve the right to propose such instructions if the Court determines that these issues shall be tried to the jury.

It is for you to decide on the evidence presented and the rules of law I have given you whether Ms. Nichani is entitled to recover from Otis. If you decide that Ms. Nichani has not met her burden of proving her claims, your verdict will be for Otis and you need not go further. Only if you decide that Ms. Nichani has proven that her rights under federal or state discrimination law have been violated by Otis, will you then consider the measure of damages. In other words, if you find that Ms. Nichani has failed to prove any one of the elements of proof that are essential to her claim by a preponderance of the evidence, then your verdict must be against Ms. Nichani and in favor of Otis on this claim. It is Ms. Nichani's burden to prove that she actually suffered damages and that such damages were directly caused by Otis. It is Ms. Nichani's burden to prove the amount of such damages by a preponderance of the credible evidence.

Source: Devitt & Blackmar § 74.02; <u>Kirsch v. Fleet St., Ltd.</u>, 148 F3d 149, 166 (2d Cir. 1998); <u>Protos v. Volkswagen of Am., Inc.</u>, 797 F.2d 129, 137-39 (3d Cir. 1986); <u>Cox v. American Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1562-63 (llth Cir. 1986); <u>Wells v. Meyer's Bakery</u>, 561 F.2d 1268, 1272-73 (8th Cir. 1977); <u>Mempher Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299 (1986); <u>Carey v. Piphus</u>, 435 U.S. 247, 264-65 (1978).

2. The law places a burden upon Ms. Nichani to prove by a preponderance of the evidence facts that will enable you to arrive at the amount of damages with reasonable certainty. While it is not necessary that Ms. Nichani prove the amount of those damages with mathematical precision, she is required to present such evidence as might reasonably be expected to be available under the circumstances.

Federal and state law require proof of a causal link between the claimed violation and the damages sought by Ms. Nichani. Relief is not afforded to Ms. Nichani if she was discharged for any reason other than gender discrimination or retaliation. In other words, damages may not be awarded for a violation if Ms. Nichani would have been terminated even in the absence of the discrimination or retaliation.

Source:  Devitt & Blackmar § 86.07; <u>Buchanan v. City of San Antonio</u>, 85 F.3d 196, 200 (5th Cir. 1996).

        3.   The purpose of compensatory damages is to make Ms. Nichani whole − that is, to compensate her for the damage that she has actually suffered.  You can award compensatory damages only for injuries that Ms. Nichani proves were the proximate result of Otis's alleged wrongful conduct.  Compensatory damages are not allowed as punishment and cannot be imposed or increased to penalize Otis.  You should not award compensatory damages for speculative injuries, but only for those injuries which Ms. Nichani has actually suffered or is reasonably likely to suffer in the future as a result of Otis's conduct.  Compensatory damages must not include any alleged lost wages.

        If you find that Otis discriminated against Ms. Nichani based on her gender or retaliated against her for filing gender claims, then you must determine an amount that is fair compensation for her damages.  You may award compensatory damages only for injuries that Ms. Nichani proves were caused by Otis's allegedly unlawful conduct.  You may award damages for any pain, suffering or mental anguish that Ms. Nichani experienced as a consequence of Otis's allegedly unlawful act.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  The damages that you award must be fair compensation – no more and no less.

        If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guess work.

Source:  Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u>, §171.90 (5th Ed. 2001); Committee on Pattern Jury Instructions District Judges Association Fifth Circuit, Pattern Jury Instructions (Civil Cases), 15.2 (1991); <u>Broadnax v. City of New Haven</u>, 415 F.3d 265 (2d Cir. 2005).

## <u>PROPOSED JURY INSTRUCTION NO. 13</u>

### PUNITIVE DAMAGES

In addition to the claims for damages already mentioned, and only if you find that Otis is liable to Ms. Nichani, should you then consider whether Ms. Nichani is entitled to punitive damages.  Punitive damages are awarded only in exceptional cases as the punishment of a defendant and a warning to others to keep them from following a defendant's example.

You may award these damages only if you determine by a preponderance of the evidence that Otis's acts were done with either: (1) actual malice, i.e., an evil-minded act, or (2) a wanton and willful disregard for the rights of another -- in other words, a deliberate act with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of the act.  Simply because you may have determined that Otis is liable does not justify an award of punitive damages.  It is your duty to determine the credibility, relevance, and significance of each piece of evidence and whether it supports Ms. Nichani's contention that Otis acted with evil-mindedness or wanton and willful disregard for her rights.

If you determine that the facts justify an award of punitive damages, you should try to determine a fair, just, and reasonable amount for Ms. Nichani under all the circumstances.  Punitive damages are not intended to compensate Ms. Nichani for injuries but rather to punish Otis and to prevent similar conduct in the future.  Punitive damages must bear a reasonable relationship to Ms. Nichani's actual injury.  No single numerical equation, however, has been made to link punitive to compensatory damages.  In determining a reasonable relationship to the actual injury, you must consider all relevant factors.  These include:

    (1)      the impact or severity of a defendant's conduct;

    (2)      the amount of time a defendant conducted itself in this manner;

    (3)      the amount of compensatory damages;

    (4)      the potential profits a defendant may have made from its conduct;

    (5)      the attitudes and actions of a defendant after the misconduct was discovered; and

    (6)      the effect of the damages award on a defendant's financial condition.

Source: State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003);  3C Kevin F. O'Malley et al., Federal Jury Practice and Instructions Civil §§ 170.64 (5th ed. 2000); Luciano v. Olsten Corp., 110 F.3d 210, 219-20 (2d Cir. 1997); Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996); Arnone v. Town of Enfield, 79 Conn. App. 501, 521 (Conn. App. Ct. 2003); Burrell v. Yale Univ., 2004 Conn. Super. LEXIS 1185, 3-5 (Conn. Super. Ct. 2004).

# JURY INSTRUCTION NO. 14

## EQUAL PAY ACT

**Plaintiff's Burden - Generally**

    1.      Ms. Nichani claims that Otis paid her less wages than Brad Russell and Pat Dowson because of her gender in violation of the Equal Pay Act.  To prevail on her claim, Ms. Nichani must prove by a preponderance of the evidence that: (1) she was doing substantially equal work on a job requiring substantially equal skill, effort, and responsibility as jobs held by members of the opposite sex; (2) the job was performed under similar working conditions; and (3) she has been paid a lower wage than members of the opposite sex doing substantially equal work.  If you determine that the Plaintiff has failed to prove any of these three elements, your verdict must be for Otis.

Source: Model Jury Instructions: Employment Litigation, § 2.04[1][a] (ABA 2d ed. 2005); Corning Glass Works v. Brennan, 417 U.S. 188 (1974); Ryduchowski v. Port Auth., 203 F.3d 135, 142 (2d Cir. 2000); Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995).

**Equal Work**

2.      In considering whether Ms. Nichani was performing work equal to Brad Russell and Pat Dowson, you must consider whether the two positions required substantially equal skill, effort, and responsibility.  The term "skill" as used in the Equal Pay Act refers to a series of factors, including experience, training, education, and ability.  The term "responsibility" as used in the Equal Pay Act means the degree of accountability required in performing the job, particularly the importance of the job duties and the degree of authority delegated to the employee.  Finally, you are not to look solely at job titles in assessing whether two positions are equal.  If you find, for instance, that the degree of training, education, accountability, and/or authority differed between Mr. Russell or Mr. Dowson and Ms. Nichani, then you must find for Otis.

Source: Model Jury Instructions: Employment Litigation, § 2.04[1][c] (ABA 2d ed. 2005); 29 C.F.R. § 1620.13(e); Corning Glass Works v. Brennan, 417 U.S. 188 (1974); Wheatley v. Wimico County, 390 F.3d 328, 334 (4th Cir. 2004); Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995); Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 685-66 (7th Cir. 1998); Buettner v. E. Arch Coal Sales Co., 216 F.3d 707, 719 (8th Cir. 2000); Conigliaro v. Horace Mann Sch., No. 95 Civ. 3555, 2000 U.S. Dist. LEXIS 556, at *14-15 (S.D.N.Y. Jan. 18, 2000); Sobol v. Kidder, Peabody & Co., Inc., 49 F. Supp. 2d 208, 219 (S.D.N.Y. 1999).

**Generally – Shifting of Burdens – Valid Factor Other Than Sex**

3.      If you determine that Ms. Nichani has established by a preponderance of the evidence all the elements of her Equal Pay Act claim, then Otis may prove by a preponderance of the evidence that the difference in pay between Ms. Nichani and Mr. Russell or Mr. Dowson was justified because of a differential based on any factor other than sex.  You do not need to agree with Otis's decision to pay Mr. Russell or Mr. Dowson the salary that it did, so long as Otis's decision was based on something other than Ms. Nichani's gender.  Examples of factors other

than sex include an employee's prior education, prior experience, or higher prior salary.

Especially in the context of managerial positions, you are not to second-guess the importance

that Otis places on these factors.  If you find that Mr. Russell or Mr. Dowson was paid more than

Ms. Nichani because of his prior education, prior experience, or his higher prior salary, then you

must find for Otis.   Similarly, if you find that the difference in pay was based on anything

besides the fact that Ms. Nichani is a woman and Mr. Russell and Mr. Dowson are men, then you

must find for Otis.

Source: Model Jury Instructions: Employment Litigation, §§ 2.02[2][a], 2.02[2][e] (ABA 2d ed. 2005); 29 U.S.C. § 206(d)(1); Corning Glass Works v. Brennan, 417 U.S. 188 (1974); Wernsing v. Dep't of Human Servs., 427 F.3d 466, 468-469 (7th Cir. 2005); Ryduchowski v. Port Auth., 203 F.3d 135, 142 (2d Cir. 2000); Georgen-Saad v. Tex. Mut. Ins. Co., 195 F. Supp. 2d 853 (W.D. Tex. 2002); Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995); Sobol v. Kidder, Peabody & Co., Inc., 49 F. Supp. 2d 208, 219 (S.D.N.Y. 1999); Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1075 (9th Cir. 1999); Howard v. Cmty. Action Org., No. 01-CV-0784E(F), 2003 U.S. Dist. LEXIS 9998, at *10 (W.D.N.Y. May 30, 2003).

## Valid Factors Other Than Sex - Education

4.     As I already mentioned, Otis may justify the disparity of pay between Ms.

Nichani and Mr. Russsell and/or Mr. Dowson by showing that the two have different educational

backgrounds than Ms. Nichani.  To use this defense, an employer must show that the higher

wage being paid is the result of that employee's better or more extensive educational

background.  Otis must also show that the educational background of Mr. Russell and/or Mr.

Dowson is relevant to the job in question.  If you find that Otis paid higher wages to Mr. Russell

and/or Mr. Dowson because of his education, then you must find for Otis.

Source: Model Jury Instructions: Employment Litigation, §§ 2.02[2][a], 2.02[2][e] (ABA 2d ed. 2005); 29 U.S.C. § 206(d)(1); Corning Glass Works v. Brennan, 417 U.S. 188 (1974); Ryduchowski v. Port Auth., 203 F.3d 135, 142 (2d Cir. 2000); Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995); Sobol v. Kidder, Peabody & Co., Inc., 49 F. Supp. 2d 208, 219 (S.D.N.Y.

1999); <u>Stanley v. Univ. of S. Cal.</u>, 178 F.3d 1069, 1075 (9th Cir. 1999); <u>Howard v. Cmty. Action Org.</u>, No. 01-CV-0784E(F), 2003 U.S. Dist. LEXIS 9998, at *10 (W.D.N.Y. May 30, 2003).

## Valid Factors Other Than Sex – Safety Experience

5.      As I already mentioned, Otis may justify the disparity of pay between Ms.

Nichani and Mr. Russsell and/or Mr. Dowson by showing that the two have different amounts of

safety experience in the job in question.  To use this defense, the Otis must show that the higher

wage paid to Mr. Russell and Mr. Dowson was the result of greater safety experience in doing

the particular job and not the result of sex.  If you find that Otis paid higher wages to Mr. Russell

and/or Mr. Dowson because of his experience, then you must find for Otis.

Source: <u>Model Jury Instructions: Employment Litigation</u>, §§ 2.02[2][a], 2.02[2][e] (ABA 2d ed. 2005); 29 U.S.C. § 206(d)(1); <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188 (1974); <u>Ryduchowski v. Port Auth.</u>, 203 F.3d 135, 142 (2d Cir. 2000); <u>Tomka v. Seiler</u>, 66 F.3d 1295, 1310 (2d Cir. 1995); <u>Sobol v. Kidder, Peabody & Co., Inc.</u>, 49 F. Supp. 2d 208, 219 (S.D.N.Y. 1999); <u>Stanley v. Univ. of S. Cal.</u>, 178 F.3d 1069, 1075 (9th Cir. 1999); <u>Howard v. Cmty. Action Org.</u>, No. 01-CV-0784E(F), 2003 U.S. Dist. LEXIS 9998, at *10 (W.D.N.Y. May 30, 2003).

## Valid Factors Other Than Sex - Prior Salary

6.      As I already mentioned, Otis may justify the difference in pay between Ms.

Nichani and Mr. Russsell and/or Mr. Dowson by showing that their salaries were based on their

prior rate of pay.  In some instances, employers transfer employees to lower-paying jobs while

maintaining the employee's previous higher wage rate.  Under these circumstances, maintaining

an employee's rate of pay, after reassignment to a job that would otherwise be lower paying, is a

valid reason for the difference in pay even though other employees performing that job are paid

at a lower rate.  If you find this occurred here, then you must find for Otis.

Source: <u>Model Jury Instructions: Employment Litigation</u>, §§ 2.02[2][a], 2.02[2][e] (ABA 2d ed. 2005); 29 C.F.R. § 1620.26; <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188 (1974); <u>Wernsing v.

Dep't of Human Servs., 427 F.3d 466, 468-469 (7th Cir. 2005); Tomka v. Seiler, 66 F.3d 1295, 1310 (2d Cir. 1995); Sobol v. Kidder, Peabody & Co., Inc., 49 F. Supp. 2d 208, 219 (S.D.N.Y. 1999); Christiana v. Metrop. Life Ins. Co., 839 F. Supp. 248, 254 (S.D.N.Y. 1993); Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 844 (6th Cir. 1997); Taylor v. White, 321 F.3d 710, 719 (8th Cir. 2003).

## Damages - Calculation of Amount

7.      If you find that Otis violated the Equal Pay Act, you must now determine the amount of damages, if any, that Ms. Nichani sustained.  You should determine as damages to be awarded the amount of money that will compensate Ms. Nichani for the difference between what she was paid as wages and what one or more male employees were paid for performing jobs requiring substantially equal work, skill, effort, and responsibility that were performed under similar conditions.  In other words, if you find that Ms. Nichani was paid less than Mr. Russell in violation of the Equal Pay Act, then Ms. Nichani's damages would be limited to the difference between her compensation and Mr. Russell's compensation for the period between Mr. Russell's resignation and Ms. Nichani's termination.  If you determine that Ms. Nichani is entitled to damages, you may not award any damages beyond this wage differential.  Further, in fixing the amount of your award, you may not include, or add to an otherwise just award, any sum for the purpose of punishing the defendant or to serve as an example or warning for others.

Source: Model Jury Instructions: Employment Litigation, §§ 2.05[1] (ABA 2d ed. 2005); 29 U.S.C. §§ 216(c), 260; Herman v. RSR Security Services LTD., 172 F.3d 132, 141 (2d. Cir. 1999); Snapp v. Unlimited Concepts, 208 F.3d 928 (11th Cir. 2000); O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 174.72 (5th ed. 2001).

## PROPOSED JURY INSTRUCTION NO. 15

### DEFAMATION

**Defamation - Falsity**

1.     Ms. Nichani claims that Otis defamed her when it presented her Performance Feedback during her termination meeting.  Ms. Nichani carries the burden of proving each element of his claim at trial.  To prevail on a claim of defamation, Ms. Nichani must prove by a preponderance of the evidence that Otis published a false statement to a third person.  Thus, Ms. Nichani has the burden of showing that the alleged defamatory statements were false.  To prove a statement is false, Ms. Nichani must show that the statement conveys an objective fact rather than an opinion, because opinions cannot, as a matter of law, be defamatory.

Here, Ms. Nichani claims that the comments in her Performance Feedback were false.  In determining whether these statements were false, you should consider whether an ordinary person reading a particular statement would understand it as expression of the writer's opinion or as a statement of an existing fact.  The statements at issue were made by Ray Moncini, Erv Lauterbach, and Danny Reese, who all reviewed Ms. Nichani's performance prior to her termination.  If you find that these statements were expressions of opinions, judgments, and/or observations about Ms. Nichani's work performance, and not false statements of fact, then you must find for Otis on Ms. Nichani's defamation claim.  Moreover, even if you find that the statements were factual, you must find for Otis if you also conclude that the statements were factually true.

Source: Model Jury Instructions: Employment Litigation, § 5.02, 5.04, 5.05 (ABA 2d ed. 2005); Kelly v. City of Meriden, 120 F. Supp. 2d 191, 198 (D. Conn. 2000); Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 795, 734 A.2d 112 (1999); Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 312 (D. Conn. 2000); Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp.

543, 551-52 (D. Conn.), <u>aff'd mem.</u>, 104 F.3d 355 (2d Cir. 1996); <u>Goodrich v. Waterbury Republican-American, Inc.</u>, 188 Conn. 107, 112, 448 A.2d 1317 (1982).


## Defamation – Publication

2.      If you find the statements in the performance feedback were false, Ms. Nichani also must prove that Otis communicated the statements to a third person other than Ms. Nichani.

Source: <u>Model Jury Instructions: Employment Litigation</u>, § 5.04 (ABA 2d ed. 2005); <u>Cweklinsky v. Mobil Chem. Co.</u>, 267 Conn. 210, 217, 837 A.2d 759 (2004); <u>Gambardella v. Apple Health Care, Inc.</u>, 86 Conn. App. 842, 849 (Conn. App. Ct. 2005).


## Defamation – Qualified Privilege

3.      If you find that Ms. Nichani has proven all the elements of her defamation claim by a preponderance of the evidence, you next must determine whether the statements in Ms. Nichani's Performance Feedback were protected by a qualified privilege.  Communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are ordinarily protected by a qualified privilege. The purpose of this privilege is to permit the free exchange of necessary business information. In a business, for instance, supervisors need to know about an employee's job performance.  You will conclude that Otis was protected by a qualified privilege if: (1) Otis made the communication in good faith; (2) the communication concerned a matter in which Otis had an interest; and (3) the persons to whom Otis published the communication had a similar interest.

If you conclude that the statements were protected by a qualified privilege, Ms. Nichani has the burden of showing that that the statements were motivated by actual malice.  To prove actual malice, Ms. Nichani must show that Otis knew the statements were false or recklessly disregarded the falsity the statements.  If you conclude that Ms. Nichani has not met her burden of showing the statements were made with actual malice, then you must find for Otis.

Source: <u>Model Jury Instructions: Employment Litigation</u>, §§ 5.05[3], 5.05[4] (ABA 2d ed. 2005); <u>Gaudio v. Griffin Health Servs. Corp.</u>, 249 Conn. 523, 544 n.23, 733 A.2d 197 (1999), <u>Torosyan v. Boehringer Ingelheim Pharms., Inc.</u>, 234 Conn. 1, 27, 662 A.2d 89 (1995), <u>Kelly v. City of Meriden</u>, 120 F. Supp. 2d 191, 198 (D. Conn. 2000).

**<u>Defamation – Damages</u>**

   4. If you find that Ms. Nichani has proven all the necessary elements of her claim of defamation by a preponderance of the evidence, and also find that Otis's statements were not protected by a qualified privilege, then you must determine what amount of damages she has suffered as a result.  The law permits the following types of damages in an action for defamation: (1) compensatory, which may be either general or special; (2) nominal; and (3) punitive.

   General compensatory damages refers to normal and usual losses that are to be anticipated when a person's reputation is impaired.  When one's reputation is impaired, this may affect one's relations with others, including business, religious, and family life.  Special compensatory damages may also include injuries other than impairment of reputation that were the natural and proximate result of the defamation.  These damages may include compensation for any emotional distress or bodily harm.

   Nominal damages are available where the insignificant character of the defamatory matter, or the plaintiff's bad character, leads you to believe that no substantial harm has been done to plaintiff's reputation.

   Punitive damages may be awarded in rare cases if you find that a defendant published the defamation either (1) with an improper motive; or (2) with knowledge of its falsity or with reckless disregard of its truth or falsity.  The purpose of awarding punitive damages is to punish the defendant for its conduct and to deter others from similar conduct.

In this type of case, if you find that Ms. Nichani has proven her claim of defamation by a preponderance of the evidence, she is entitled to at least general compensatory damages. If you find, however, that Ms. Nichani's reputation has not materially suffered as a result of the statements in the Performance Feedback, then your damages must be limited to nominal damages. In determining damages, you also may consider any evidence showing that Ms. Nichani had a bad reputation even before the defamation.

Source: Model Jury Instructions: Employment Litigation, §§ 5.06[3], [4], [6] (ABA 2d ed. 2005); DeVito v. Schwartz, 66 Conn. App. 228, 236 (Conn. App. Ct. 2001).

## PROPOSED JURY INSTRUCTION NO. 16

### BREACH OF CONTRACT

1.     In Connecticut, employment relationships are generally at-will, which means that either the employee or the employer may terminate the employment relationship at any time for any reason. Ms. Nichani's employment at Otis was an at-will employment relationship. Thus, generally speaking, she could quit any time she wanted and Otis could terminate her any time it wanted.

There is an exception to the employment-at-will rule when the terms of employment are governed by an employment contract whereby the parties agree to alter the at-will relationship. Here, Ms. Nichani claims that UTC's Code of Ethics constituted a contract and that Otis breached that contract when it terminated her employment. Specifically, Ms. Nichani claims that she was terminated because she refused to falsify the report prepared as part of the investigation following the death of Daniel McQuillen. She further claims that the UTC Code of Ethics contained promises indicating that she would not be terminated or otherwise disciplined for following the Code of Ethics. To prevail on this breach of contract claim, Ms. Nichani must

prove by a preponderance of the evidence that (1) Otis and/or UTC agreed to undertake an actual commitment under which Ms. Nichani could not be terminated for an alleged refusal to falsify a report; (2) Otis's representations were sufficiently definite to show an intent to undertake contractual obligation; and (3) Ms. Nichani accepted Otis's offer or otherwise provided consideration for Otis's contractual obligations.

Ms. Nichani claims that two provisions in the Code of Ethics support contractual liability against Otis.  The first is § 2.5, which states in relevant part: "No retribution will be taken against any employee for contacting the UTC Ombudsman, any level of supervision, the Legal Department, the Business Practices/Compliance Officer or Human Resources representatives to express concerns with business policies or practices.  However the use of these communication channels to report a wrongdoing will not absolve an employee from accountability for personal involvement in such wrongdoing."  The second provision is § 6.3, which states in relevant part: "UTC prohibits any retribution against an individual for reporting anything he/she reasonably believes constitutes a violation or suspected violation of the Code or of any law or regulation." Thus, to prevail on this claim, Ms. Nichani must prove that UTC intended one or both of these provisions to prevent to Otis's management from terminating Ms. Nichani for refusing to falsify a report.  If you find by a preponderance of the evidence that UTC did not intend for these provisions to apply to the facts as alleged and proven by Ms. Nichani, then you must find for Otis on this claim.

Even if you find that UTC's Code of Conduct contained sufficiently promissory language to indicate UTC's intent to form a contract with Ms. Nichani, you must find for Otis unless you also determine that Ms. Nichani has proven that she accepted UTC's offer to form a contract through her conduct.

Source: <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals</u>, 234 Conn. 1, 15 (Conn. 1995); <u>Kent v. AVCO Corp Lowe</u>, 52 F. Supp. at 356-57 (D. Conn. 1999), <u>aff'd mem.</u>, 208 F.3d 203 (2d Cir. 2000); <u>Foster v. Mass. Mut. Life Ins. Co.</u>, No. 3:02CV1433 (PCD), 2004 U.S. Dist. LEXIS 7759 (D. Conn., Apr. 14, 2004); <u>Reynolds v. Chrysler First Commercial Corp.</u>, 40 Conn. App. 725, 730, 673 A.2d 573 (1996).

    2.       If you find that Ms. Nichani has proven that UTC and Otis intended the Code of Ethics to form a contract in this context and that Ms. Nichani accepted that contractual offer or otherwise provided consideration, then you must also must determine whether Ms. Nichani has proven that Otis terminated her because of her alleged refusal to falsify the report regarding the McQuillen death.  Here, Otis denies that it asked Ms. Nichani to falsify a report and also denies that it terminated her because of her alleged refusal; instead, as you heard during the trial, Otis claims that it terminated Ms. Nichani for her failure to deploy and implement Otis safety standards and policies.  If you find that Ms. Nichani failed to prove that she was asked to and refused to falsify a report, then you must find for Otis.  Similarly, if you find that Otis terminated Ms. Nichani for a reason other than her refusal to falsify the report, for example, her failures as head of safety, then you must find for Otis on this claim.

Source: <u>See Gaudio v. Griffen Health Servs.</u>, 249 Conn. 523, 537-39 (1999); <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals</u>, 234 Conn. 1, 15 (Conn. 1995); <u>Kent v. AVCO Corp Lowe</u>, 52 F. Supp. at 356-57 (D. Conn. 1999), <u>aff'd mem.</u>, 208 F.3d 203 (2d Cir. 2000); <u>Foster v. Mass. Mut. Life Ins. Co.</u>, No. 3:02CV1433 (PCD), 2004 U.S. Dist. LEXIS 7759 (D. Conn., Apr. 14, 2004); <u>Reynolds v. Chrysler First Commercial Corp.</u>, 40 Conn. App. 725, 730, 673 A.2d 573 (1996).

    3.       If you find that UTC's Code of Ethics constituted a contract and that Otis breached that conract when it terminated Ms. Nichani, then you must determine the amount of damage Ms. Nichani has suffered as a result of Otis's breach.  An award of damages should place the injured party, to the extent possible, in the same position as that which she would have

been in had the contract been fully performed.  You may not award punitive damages, damages

for emotional distress, or any other non-economic damages.  Remember that Ms. Nichani bears

the burden of showing what, if any, damages she has sustained.  In reaching an amount of

damages, you may consider the amount of wages Ms. Nichani would have earned if Otis had not

breached its agreement.  Ms. Nichani may recover only those damages you determine that the

parties reasonably contemplated when they entered into the contract.  You may not speculate as

to this figure – Ms. Nichani may recover only those damages that he has proven with reasonable

certainty such that your speculation is not required.  In fixing your award you also must consider

that Ms. Nichani was otherwise an at-will employee.  Thus, Otis was under no obligation to

continue her employment for any period of time into the future.  You may also consider the

evidence you heard that Ms. Nichani's position as the head of safety was eliminated

approximately one year after her termination and those safety functions with combined with the

Quality function under Edith DiFrancesco.

From the figure of damages you reach, you must subtract any amounts that Ms. Nichani

earned or could have earned since her termination.  Ms. Nichani has an obligation to minimize

the damages sustained by seeking comparable employment elsewhere.  She must exercise

reasonable diligence to avoid or mitigate his damages by obtaining new employment.  If you find

that Ms. Nichani could have sought employment at the same or comparable salary level and did

not, then you may conclude that she has not met her duty to mitigate her damages.  If you

determine from the evidence before you that Otis has met its burden of proving that Ms. Nichani

did not mitigate her damages, then her damages must be reduced accordingly.

Source:  Model Jury Instructions: Employment Litigation, § 3.03[6] (ABA 2d ed. 2005);
Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 32-33, 662 A.2d 89, 105-
6 (1995).

### PROPOSED JURY INSTRUCTION NO. 17

### PROMISSORY ESTOPPEL

1.    Ms. Nichani claims that she detrimentally relied on statements in the Code of

Ethics and that Otis terminated her as a result of such reliance.  Like her breach of contract

claim, this claim stems from Ms. Nichani's allegation that she was asked to falsify the

McQuillen report and that she refused to falsify the report.  To prevail on this claim, Ms. Nichani

must prove by a preponderance of the evidence that: (1) the Code of Ethics contained a clear and

definite promise that she would not be terminated for refusing to falsify a report; (2) Otis had a

reasonable expectation that Ms. Nichani would rely on the Code of Ethics in this context; (3) she

reasonably and in fact relied on the Code of Ethics; (4) she was asked to falsify the report,

refused to do so, and was thus terminated as a result of her reliance on the Code; and (5)

enforcement of the promise is necessary to prevent injustice.

Ms. Nichani claims that she detrimentally relied on two provisions of the Code of Ethics.

The first is § 2.5, which states in relevant part: "No retribution will be taken against any

employee for contacting the UTC Ombudsman, any level of supervision, the Legal Department,

the Business Practices/Compliance Officer or Human Resources representatives to express

concerns with business policies or practices.  However the use of these communication channels

to report a wrongdoing will not absolve an employee from accountability for personal

involvement in such wrongdoing."  The second provision is § 6.3, which states in relevant part:

"UTC prohibits any retribution against an individual for reporting anything he/she reasonably

believes constitutes a violation or suspected violation of the Code  or of any law or regulation."

Thus, to prevail on this claim, Ms. Nichani must prove that UTC intended one or both of these

provisions to prevent to Otis's management from terminating Ms. Nichani for refusing to falsify

a report.  If you find by a preponderance of the evidence that UTC did not intend for these provisions to apply to the facts as alleged and proven by Ms. Nichani, then you must find for Otis on this claim.

In addition, Ms. Nichani must show that she was asked to falsify the report and that she in fact relied on the Code of Ethics when she allegedly refused to falsify the report.  If you find that Ms. Nichani did not rely on these statements, then you must find for Otis on this claim.  Alternatively, if you find that Ms. Nichani relied on the Code of Ethics but that such reliance was not reasonable under the circumstances, then you must find for Otis.

Source: Cowen v. Fed. Express Corp., 25 F. Supp. 2d 33, 38 (D. Conn. 1998); D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213, 520 A.2d 217 (1987).

2.      If you find that UTC and Otis intended the Code of Ethics to constitute an enforceable agreement in this context, then you must also must determine whether Ms. Nichani has proven that Otis terminated her because of her alleged refusal to falsify the McQuillen report.  Here, Otis denies that it asked Ms. Nichani to falsify a report and also denies that it terminated her because of her alleged refusal; instead, as you heard during the trial, Otis claims that it terminated Ms. Nichani for her failure to deploy and implement Otis safety standards and policies.  If you find that Ms. Nichani fails to prove that she refused to falsify a report, then you must find for Otis.  Similarly, if you find that Otis terminated Ms. Nichani for a reason other than her refusal to falsify the report, e.g., her failures as head of safety, then you must find for Otis on this claim.

Source: Cowen v. Fed. Express Corp., 25 F. Supp. 2d 33, 38 (D. Conn. 1998); D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213, 520 A.2d 217 (1987).

3.      If you find that Ms. Nichani has proven her claim of promissory estoppel by a preponderance of the evidence, then you must determine the amount of economic loss that she suffered as a result.  You may award damages for any economic loss that Ms. Nichani suffered by relying on Otis's promises not to terminate her.  Damages for detrimental reliance are limited to the economic loss suffered before learning that the promise would not be kept.  This means that any damages award must stop at the point in time when Ms. Nichani learned that Otis was not keeping its alleged promise to her not to terminate her for refusing to falsify the McQuillen report.  In fixing your award you also must consider that Ms. Nichani was otherwise an at-will employee.  Thus, Otis was under no obligation to continue her employment for any period of time into the future.

From the figure of damages you reach, you must subtract any amounts that Ms. Nichani earned or could have earned since her termination.  Ms. Nichani has an obligation to minimize the damages sustained by seeking comparable employment elsewhere.  She must exercise reasonable diligence to avoid or mitigate his damages by obtaining new employment.  If you find that Ms. Nichani could have sought employment at the same or comparable salary level and did not, then you may conclude that she has not met her duty to mitigate her damages.  If you determine from the evidence before you that Otis has met its burden of proving that Ms. Nichani did not mitigate her damages, then her damages must be reduced accordingly.

Source:  Model Jury Instructions: Employment Litigation, § 3.03[6] (ABA 2d ed. 2005); Goldstein v. Unilever, 2004 Conn. Super. LEXIS 1126, 21-22 (Conn. Super. Ct. 2004); Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 32-33, 662 A.2d 89, 105-6 (1995).

THE DEFENDANTS,
UNITED TECHNOLOGIES CORP. and
OTIS ELEVATOR COMPANY


By_____/s/_____
                    Albert Zakarian (ct04201)
                    Victoria Woodin Chavey (ct14242)
                    Douglas W. Bartinik (ct26196)
                    Day, Berry & Howard LLP
                    CityPlace I
                    Hartford, CT 06103-3499
                    (860) 275-0100 (telephone)
                    (860) 275-0343 (facsimile)
                    *azakarian@dbh.com*
                    Their Attorneys

## CERTIFICATION

I hereby certify that the foregoing was sent via overnight mail on this date, to:

Anthony Minchella, Esq.
Law Offices of Anthony R. Minchella, LLC
530 Middlebury Road
Suite 203-204B
Middlebury, CT 06762

Jeffrey J. Tinley, Esq.
Robert Nastri, Esq.
Tinley, Nastri, Renehan & Dost, LLP
60 North Main Street
2nd Floor
Waterbury, CT 06702


_____
        Douglas W. Bartinik