**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUJATA NICHANI, | : | CIVIL NO. 302CV1384 (MRK) |
| Plaintiff | : | |
| v. | : | |
| OTIS ELEVATOR COMPANY and UNITED TECHNOLOGIES CORPORATION | : | |
| Defendants | : | APRIL 24, 2006 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ADMISSIBILITY OF PLAINTIFF'S EXHIBITS 358 AND 359

I.    **Nature of the Proceedings**

Plaintiff has identified as trial exhibits in this matter factual statements from two letters received from Day, Berry & Howard, L.L.P. (Letters attached as Exhibits A and B). The statements offered concern factual admissions about the compensation information for Bradford Russell and Sujata Nichani, the incentive compensation "multipliers" for Bradford Russell and Otis' North American Area ("ONAA"), and finally the range of stock options granted to Level 3's at ONAA. Defendants have objected on under Rule 408 of the Federal Rules of Evidence.

II.    **Argument**

The factual information contained in the letters – though the letters are labeled "For Settlement Purposes" – is entirely admissible. Not only does the letters' author

state that "factual information" is being offered, but nowhere in the letter is an "offer" or "compromise" made to result in exclusion under Rule 408. The magic words "For Settlement Purposes" do not shield the factual information from admissibility.

Rule 408 provides that:

> [e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

A.    Rule 408 does not exclude the letters because the evidence sought to be introduced was not presented as an "offer"

The primary premise underlying Rule 408 is the presence of an offer: "[W]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d. 1992). Rule 408 only applies if a party "proposed to furnish a valuable consideration; in other words, was there an 'offer'?" Dimino v. New York City Transit

# **EXHIBIT A**

# Day, Berry & Howard LLP

### COUNSELLORS AT LAW

Albert Zakarian, Esq.
(860) 275-0290
azakarian@dbh.com
www.dbh.com

January 6, 2003

**VIA FACSIMILE AND U.S. MAIL**

Anthony R. Minchella, Esq.
Zeldes Needle & Cooper P.C.
100 Lafayette Boulevard
P.O. Box 1740
Bridgeport, Connecticut 06601-1740

     Re:   *Nichani v. Otis*

Dear Tony:



    As to your requests:

    1.    We are able to provide the current salary range for an L3 which is $105,000 to $195,000. In addition, the average starting salary for executive appointments to an L3 within NAA in the last two years was $119,791.33. The average salary increase associated with these promotions was 7.5%.

    2.    We do not maintain records in a way that would allow us to respond to this request. Moreover, we do not have a way to determine "positions at United Technologies Corp. and Otis Elevator Co. that require equal skill effort and responsibility as the position held by Sue Nichani ." Please see the information provided in 1 above. In addition, Mr. Bradford Russell's base salary in his L3 position for 1999-2001 was as follows:

PLAINTIFF'S EXHIBIT

358

ALL-STATE LEGAL®

Day, Berry & Howard LLP

Anthony R. Minchella, Esq.
January 6, 2003
Page 2

| 1999 | |
|---|---|
| Base Salary | $136,500.00 |
| 2000 | |
| Base Salary | $145,000.00 |
| 2001 | |
| Base Salary | $153,000.00 |



4.    As an L3, Mr. Bradford Russell's benefits for 1999-2001 were as follows:

| 1999 | |
|---|---|
| Incentive Compensation ("IC") | $ 45,000.00 |
| Stock Options | 4,000.00 |
| 2000 | |
| IC | $ 51,000.00 |
| Stock Options | 3,100.00 |
| 2001 | |
| IC[1] | $    0.00 |
| Stock Options | 3,000.00 |

Mr. Russell was also eligible for a car allowance toward the lease of a new vehicle. That allowance was $16,000 over the life of the lease. Mr. Russell and Ms. Nichani participated in the same insurance, pension and savings plans, and were entitled to the same benefits under those plans.

5.    As to your client's benefits for the years 1999-2002, they were as follows:

Day, Berry & Howard LLP

Anthony R. Minchella, Esq.
January 6, 2003
Page 3

<u>1999</u>
| Position Allowance[2] | $ 12,150.00 |
| 1998 Regional IC Payout | $ 9,214.00 |
| Stock Options | 400.00 |

<u>2000</u>
| Position Allowance[2] | $ 16,200.00 |
| 1999 Regional IC Payout[3] | $ 3,367.00 |
| Stock Options | 500.00 |

<u>2001</u>
| Position Allowance[2] | $ 10,800.00 |
| Position Allowance[2] | $ 5,897.52 |
| Position Allowance "Make-Up"[2] | $ 1,431.90 |
| 2001 PIP Payout-(2000 Program)[4] | $ 12,000.00 |



# Day, Berry & Howard LLP

Anthony R. Minchella, Esq.
January 6, 2003
Page 4

<u>2002</u>
Position Allowance[2]                    $ 17,692.56



Very truly yours,

Albert Zakarian

cc:    Joseph C. Zemetis, Esq.

# **EXHIBIT B**

# Day, Berry & Howard LLP

### COUNSELLORS AT LAW

Albert Zakarian, Esq.
(860) 275-0290
azakarian@dbh.com
www.dbh.com

January 27, 2003

**VIA FACSIMILE AND U.S. MAIL** ████████████████████████████

Anthony R. Minchella, Esq.
Zeldes Needle & Cooper PC
100 Lafayette Boulevard
P.O. Box 1740
Bridgeport, Connecticut 06601-1740

Re:  *Nichani v. Otis*

Dear Tony:

███████████████████████████████████████████████████████████████████

(1)     You requested the formula used to calculate Mr. Russell's Incentive Compensation ("IC") while at Otis World Headquarters ("WHQ"). Mr. Russell's last IC payment was in February 2001. It reflected his IC for the year 2000. As you know, in 2000 he was at WHQ and not NAA. The formula was:

| | | |
|---|---|---|
| Base Salary | USD 145,000 | |
| Level 3 IC Target | % 25 | |
| WHQ Factor or "Multiplier" | 1.62 | |
| Mr. Russell's Individual IC Factor | 1.40 | |
| IC amount USD 36,250 x 1.40 | USD 51,000 | |

PLAINTIFF'S EXHIBIT
ALL-STATE LEGAL®
359

(2)     You requested the "multiplier" for NAA for 1999, 2000 and 2001 and the formula used to calculate IC. The IC factors for NAA for 1999, 2000 and 2001 were as follows: 0.99, 1.41 and 2.68, respectively. These numbers represent the overall NAA factor. Individual awards are based on the formula set forth above and individual performance, individual factors (i.e., 1.40 above) and target levels (i.e., 25% above).

(3)     You requested the range of stock option grants for L3 executives at NAA. The range of options granted to newly appointed L3 executives in the last two years was 1,818 - 2,364. Please note that there is no guaranteed amount or range in any given year. Stock option grants are calculated based on performance, market data and management discretion.

Day, Berry & Howard LLP

Anthony R. Minchella, Esq.
January 27, 2003
Page 2



Very truly yours,

Albert Zakarian

cc:    Joseph C. Zemetis, Esq.

Anthony R. Minchella
Direct Dial: (203) 332-5718
E-MAIL: aminchella@znclaw.com

December 2, 2002

Albert Zakarian, Esq.
Day, Berry & Howard LLP
185 Asylum Street
Hartford, CT  06103-3499

Re:    <u>Nichani v. United Technologies Corp.</u>

Dear Al:

During our recent meeting you agreed to review certain requests for information that will assist us in formulating a proposal to resolve this matter, while reserving your right to object to the requests to the extent they would be objectionable under the Federal Rules of Civil Procedure.  I mentioned that if we are committed to making a good faith effort to resolve this matter -- which our client and we are -- that we postpone my client's deposition currently scheduled for December 19, 2002.  I'd ask your courtesy in doing so not only to permit settlement discussions and exchange of information, but also because I have a mediation that I must attend on that date with a client who is travelling from New York City.

We would appreciate responses to the following requests:

1.    Identify the maximum and minimum annual salary for a Director Level 3 position at United Technologies Corp. and Otis Elevator Co. for the calendar years 1999, 2000, 2001 and 2002, including the average starting salary for employees newly promoted to a Director Level 3 position.

2.    Identify all positions at United Technologies Corp. and Otis Elevator Co. that require equal skill, effort and responsibility as the position currently held by Sue Nichani, entailing similar working conditions as Sue Nichani's position.  Provide the Grade and/or Level and maximum and minimum annual salary for each such position for the calendar years 1999, 2000, 2001 and 2002.

3.    Identify and describe each benefit, including but not limited to bonuses, performance incentive plans, stock purchase or stock option plans, car allowances or company car, all insurance plans and all retirement or pension plans, provided to the employees in the positions identified in response to Request Number 2 above, for the

fiscal years 1999, 2000, 2001 and 2002, and provide (a) the maximum and minimum economic value of each benefit, and (b) any formula(s) utilized to calculate the benefit.

4.      Identify and describe each benefit, including but not limited to bonuses, performance incentive plans, stock purchase or stock option plans, car allowances or company car, all insurance plans and all retirement or pension plans, provided to a Director Level 3 position at United Technologies Corp. and Otis Elevator Co. for the calendar years 1999, 2000, 2001 and 2002, and provide the (a) maximum and minimum economic value of each benefit, and (b) any formula(s) utilized to calculate the benefit.

5.      Identify and describe each benefit, including but not limited to bonuses, performance incentive plans, stock purchase or stock option plans, car allowances or company car, all insurance plans and all retirement or pension plans, provided to Sue Nichani for the calendar years 1999, 2000, 2001 and 2002, and provide the (a) maximum and minimum economic value of each benefit, and (b) any formula(s) utilized to calculate the benefit.

6.      State the projected increases in annual salary for Director Level 3 position at United Technologies Corp. and Otis Elevator Co. for calendar years 2003, 2004, and 2005.

7.      State with particularity each fact that supported the decision to transfer Brad Russell from his former position to the Senior Manager in Safety & Environment of Otis NAA.

Very truly yours,


Anthony R. Minchella

ARM/mjo

# **EXHIBIT C**

# **EXHIBIT D**

Anthony R. Minchella
Direct Dial: (203) 332-5718
E-MAIL: aminchella@znclaw.com

January 13, 2003

Albert Zakarian, Esq.
Day, Berry & Howard LLP
185 Asylum Street
Hartford, CT  06103-3499

Re:    Nichani v. United Technologies Corp. et al.

Dear Al:

Thank you for your letter of January 6, 2003, responding to my requests for certain information concerning plaintiff's claims in the above matter.

You provided me with Mr. Russell's Incentive Compensation amounts for 1999 through 2001, but did not provide (though I requested) the formula utilized to calculate Incentive Compensation for those years.  Furthermore, I understand that the amount of Incentive Compensation is determined using a multiplier based upon the applicable region's (or company's) performance.  Please provide that multiplier for NAA for the years 1999, 2000 and 2001, and the formula used to calculate the amount of Incentive Compensation.

Also, please provide the maximum and minimum stock options that L3 could receive for years 1999, 2000 and 2001.

I believe that once we have this information, we will be in a position to propose a separation package for Ms. Nichani.

Finally, we have been directed to select dates for a settlement conference before the Special Masters.  Please advise me of dates you and your clients are available.  My schedule for the rest of the month of January is booked, as I am on trial commencing next week in the Superior Court, Judicial District of Fairfield, so I would be looking at the second week in February at the earliest.

Very truly yours,

Anthony R. Minchella

ARM/mjo

Authority, 64 F.Supp.2d 136, 162 (E.D.N.Y. 1999).  In Dimino, the defendant continually

referred to his discussions with the plaintiff "as an attempt to 'settle' or to 'negotiate;'"

however, the court found that titling a discussion as an attempt to settle did not make it

so unless there was an offer.  The court held that "evidence that a settlement was

actually proposed or terms negotiated is equivocal" and further held that "[i]t is not at all

clear that [the defendant] offered to trade any valuable consideration for any

compromise of a claim. Accordingly, evidence of the discussions would not seem to fall

under the scope of Rule 408's exclusion."  Id. at 163.

Whether Rule 408 applies to a document is based upon whether a party is

furnishing or promising to furnish an offer or accepting or promising to accept an offer,

not whether the party labels the document "For Settlement Purposes Only."  Similar to

Dimino, the letters exchanged by counsel are not offers under Rule 408 even though

defendant's counsel titled the letters "For Settlement Purposes Only" since neither party

offered to trade any valuable consideration for the compromise of any claim.  Plaintiff's

December 2, 2002 (Exhibit C) and January 13, 2003 (Exhibit D) letters refer to a future

possibility of settlement negotiations, but a future possibility of settlement negotiations

does not equal either a present offer to settle or even a promise to present an offer in

the future.  Defendants' letters dated January 6, 2003 (Exhibit A) and January 27, 2003

(Exhibit B) also did not present an offer to settle or promise to present an offer in the

future.  Since neither party made an offer or promised to make a future offer, Exhibits

358 and 359 do not fall under the Rule 408 exclusion and should be admitted.

B.    The evidence sought to be introduced are admissions of fact that are
      otherwise admissible

"Under the common law, offers of compromise were excluded from evidence, but

the exclusion did not extend to 'admissions of fact, even though made in the course of

compromise negotiations, unless hypothetical, stated to be 'without prejudice,' or so

connected with the offer as to be inseparable from it.'" Allied Manufacturers, Inc. v.

Aluminum Co. of America, 56 F.3d 521 (quoting 10 James Wm. Moore, Moore's Federal

Practice § 408.01[9] (Daniel R. Coquillette et al. eds., 2d ed. 1995)).   "Rule 408 would

not immunize documents or factual admissions merely because they were exchanged in

the course of negotiating a settlement . . . if they are independently admissible either as

pre-existing documents or 'provable by evidence other than conduct or statements that

make up compromise negotiations.'"  Bottaro v. Hatton Associates, 96 F.R.D. 158, 160

(D.C.N.Y.1982).  This sentence was intended to prevent one from being able to

"immunize from admissibility documents otherwise discoverable merely by offering them

in a compromise negotiation."   Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1107 (5th

Cir.1981) (quoting S.Rep.No. 1277, 93d Cong, 2d Sess., reprinted in (1974) U.S. Code

Cong. & Ad. News 7051, 7057).  "The Senate bill, which was subsequently adopted as

Rule 408 . . .  made it clear that only admissions of liability or the extent of liability

'otherwise discoverable' would be exempt from Rule 408's evidentiary exclusion. . . .

Thus, Rule 408 would not immunize documents or factual admissions merely because

they were exchanged in the course of negotiating a settlement . . . if they are independently admissible either as pre-existing documents or 'provable by evidence other than conduct or statements that make up compromise negotiations.'" <u>Bottaro v. Hatton Assoc.</u> 96 F.R.D. 158, 160 (D.C.N.Y. 1982) (<u>quoting</u> Fed.R.Evid. 408 advisory committee note.).

 The information contained in these exhibits relates to Brad Russell's compensation as a Director Level 3, and other factual compensation data, which are admissions of fact that would have been otherwise discoverable under Rule 408. This information is independently admissible since it is provable by evidence other than by statements made in the correspondence at issue.  The defendants should not be able to immunize from admissibility this information merely because Defendants' titled its correspondence "For Settlement Purposes Only."

 In <u>Rutgerswerke AG v. Abex Corp.</u>, 2002 WL 1203836, No. 93 CIV.2914, June 4, 2002.  (S.D.N.Y. 2002), the court discussed the "otherwise discoverable" prong of Rule 408 in connection with a spoliation of evidence claim.  The plaintiff sought to immunize itself from spoliation sanctions concerning affidavits that contained historical factual information about the cessation of landfill usage at a certain plant.  Plaintiff contended that because the affidavits were offers under Rule 408, spoliation did not apply because the documents were not "otherwise discoverable."  The court held that "the affidavits constitute[d] otherwise discoverable evidence, explicitly made admissible by the terms of Rule 408, since, from all indications, they contained only historical factual information

otherwise discoverable as deposition testimony." Id. at *13. In the present case, the information that plaintiff seeks to use is similar in nature to the information in the affidavits in Rutgerswerke AG because the compensation information is historical factual data.  Since the factual information is a part of a letter that discusses the possibility of future settlement negotiations, the remedy is to redact any information related to the future discussions to insure that only historical factual data is admitted. See Civil Aeronautics Board v. Dreyer, 501 F.Supp. 905, n.16 (E.D.N.Y. 1980)(Court refused to exclude settlement letter because, among other reasons, the party took care to redact any and all references to any offer to compromise)

C.    The evidence sought to be introduced is to be used for a purpose other than to prove liability

"[E]vidence of a settlement agreement and its surrounding circumstances 'though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle."  Starter Corp. v. Converse, Inc. 170 F. 3d. 286 (2d Cir. 1999).  "The trial judge 'has broad discretion as to whether to admit evidence of settlement offered for 'another purpose.'  In applying the "another purpose" exception to Rule 408, "the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations." Trebor Sportswear, 865 F.2d 506, at 510-11 (2nd Cir. 1989)(quoting, Weinstein's Evidence, ¶ 408[05], at 408-31).

The plaintiff does not seek to offer the factual information contained in these letters for the purpose of proving the validity of her claim. She merely seeks to offer this information as evidence of compensation. As such, the evidence is admissible under the "other purpose" exception of Rule 408.

## III.    Conclusion

Rule 408 does not exclude factual admissions contained in these Exhibits. The information is otherwise discoverable, the letters do not contain an offer to compromise and indeed contemplate a later offer to compromise. Because Rule 408 does not require exclusion, and because the information is otherwise relevant and admissible, Plaintiff seeks an order from the Court admitting them as full exhibits at trial.

Anthony R. Minchella (ct 18890)
LAW OFFICES OF ANTHONY R. MINCHELLA
L.L.C.
  530 Middlebury Road
  Suite 212-213B
  Middlebury, CT  06762
  (203) 758-1069
  (203) 758-2074 Facsimile
  aminchella@minchellalaw.com

Jeffrey J. Tinley, Esq.
Tinley, Nastri, Renehan & Dost, LLP
60 North Main Street, 2nd Floor
Waterbury, CT 06702
203-596-9030
Federal Bar No.: CT00765
jtinley@tnrdlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed electronically this date, to the following:

Albert Zakarian, Esq.
azakarian@dbh.com
Douglas Bartinik, Esq.
dwbartinik@dbh.com
Victoria Wooden Chavey, Esq.
vwchavey@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, CT  06103-3499


Dated:  April 22, 2006

       Middlebury, CT

                                 Anthony R. Minchella