UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUJATA NICHANI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV1384 (MRK) |
| v. | : | |
| | : | |
| UNITED TECHNOLOGIES CORP. and | : | |
| OTIS ELEVATOR COMPANY, | : | |
| | : | |
| Defendants. | : | APRIL 28, 2006 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ADMISSIBILITY OF PLAINTIFF'S EXHIBITS 358 AND 359**

Plaintiff either misunderstands Rule 408 or expects this Court to ignore it. Her entire argument is based on the fact that Attorney Zakarian's letters did not actually contain a settlement offer.[1] (Pl.'s Memo at II. A.) Rule 408, however, excludes all statements made as part of settlement negotiations. For the reasons explained below, these statements were explicitly made, as a courtesy, in response to a written request for information from Plaintiff's counsel as part of settlement negotiations and are, therefore, inadmissible under Rule 408.

**A.     Factual Background**

Plaintiff not surprisingly leaves out her attorney's letters that asked Defendants' counsel to provide the information contained in Plaintiff's Exhibits 358 and 359. On December 10, 2002, while Ms. Nichani still worked at Otis but with her lawsuit pending,[2] Attorney Minchella requested "information that will assist us in formulating a proposal to resolve this matter . . . ."

---

[1] Plaintiff's Memorandum does not have page numbers. Defendants will cite to sections therein instead.

[2] Plaintiff had filed a CHRO charge in August 2001 alleging a violation of the Equal Pay Act and other forms of discrimination. She filed her lawsuit in August 2002.

(See Exhibit 1.)  Attorney Minchella also asked Defendants to postpone Ms. Nichani's deposition as a courtesy to permit settlement discussions because the parties were "committed to making a good faith effort to resolve this matter."  (See Exhibit 1.)  In reliance on these representations, on January 6, 2003, Attorney Zakarian provided the requested information "for settlement purposes only" so Plaintiff could "formulate a reasonable proposal for settling this dispute in the form of a separation package as [the parties] discussed . . . ."  (See Exhibit 2; Plaintiff's Proposed Exhibit 358.)

On January 13, 2003, Attorney Minchella requested additional information, believing that once he had it, "we will be in a position to propose a reasonable separation package for Ms. Nichani."  (See Exhibit 3.)  Finally, on January 27, 2003, Attorney Zakarian wrote back with the requested additional information again "for settlement purposes only."  (See Exhibit 4; Pl.'s Proposed Exhibit 359.)  Attorney Zakarian provided the "information to help [Attorney Minchella] in formulating a reasonable proposal" and also expected that he would "maintain [the] information in the strictest confidence."  (See Exhibit 4.)  The January 27 letter indicated that, for the last two years, newly appointed L3 executives had received between 1818 and 2364 stock options per year.  (See Exhibit 4.)

Attorney Minchella provided the requested financial information to his expert, actuary Sheldon Wishnick, and thereafter told Mr. Wishnick to assume that Ms. Nichani would receive 9,000 stock options each and every year until she retired in the year 2028.  (See Exhibit 4, last page (February 11, 2003 fax cover page to Sheldon Wishnick); Defendants' Motion In Limine to Exclude In Part the Testimony of Sheldon Wishnick at 4-5, citing Wishnick Dep. at 103.)  On March 21, 2003, Otis terminated Ms. Nichani's employment.

**B.     Argument**

Rule 408 is designed to promote settlements and honesty in settlement negotiations. Dimino v. New York City Transit, 64 F. Supp. 2d 136, 161 (E.D.N.Y 1999).[3]  "The rule also protects admissions of facts made by parties during settlement negotiations, in order to allow parties a greater degree of honesty and, therefore, a greater ability to reach a compromise."[4] Id.; Kritikos v. Palmer Johnson, Inc., 821 F.2d 418, 423 (7th Cir. 1987) (exclusion of letters "written . . . with the objective of advising the plaintiff of a possible compromise solution").  Finally, "the

---

[3] Dimino, on which Plaintiff relies (see Pl.'s Memo at II A), was a "rare" case because the plaintiff needed the evidence contained in the settlement communications to prove her claim of pretext. See Dimino v. New York City Transit, 64 F. Supp. 2d 136, 161 (E.D.N.Y. 1999). Indeed, that case cuts in Otis's favor, as gleaned from a simple review of its facts.

The plaintiff in Dimino was a female police officer who sued her employer. Id. at 141. On September 17, 1997, the plaintiff requested "light duty" work because she was pregnant. Id. Although the defendant argued that they had a policy prohibiting "light duty" work, the plaintiff argued that there was no such prohibition. Id.  Shortly thereafter, Plaintiff brought an EEOC charge alleging that she was being discriminated against because of her pregnancy and being denied light duty and the ability to return to work. Id.  On September 26, 1997, the defendant left a voice message indicating that, once the plaintiff withdrew her request for "light duty" and signed a statement indicating that she was capable of returning to work, then she could return to work. Id. at 162. The plaintiff argued that the defendant's September 26 statement, even though arguably made to resolve the dispute, was evidence that the defendant did not, in fact, have a policy prohibiting light duty work; otherwise, it would not have required her to withdraw the request. Id. In other words, the reason she was not permitted to work was not because of any policy, but simply in retaliation for requesting light duty. See id.  The court allowed the evidence for this limited purpose. Id. at 163-64.

Moreover, as the court explained, the defendant admitted "that the statement was not intended to settle issues concerning back pay" and did not require the plaintiff to release any claims; rather, it was simply an arrangement to get the plaintiff to return to work. Id. at 163. Thus, the court decided that Rule 408 was inapplicable because the statement was not an attempt to settle the lawsuit and, therefore, "the use of this evidence will not offend the policy goals of Rule 408." Id. at 164.  Contrary to Dimino, Defendants can think of nothing more offensive to the policy goals of Rule 408 than Plaintiff's efforts here.

[4] Under the common law, statements of fact made during settlement discussions were ordinarily admissible. Because this rule proved difficult to administer, Rule 408 abrogated the common law rule and applies "to all conduct and statements during negotiation." Weinstein's Federal Evidence § 408.5 (Mathew Bender 2d Ed. 2006).

test for whether statements fall under this rule is 'whether the statements or conduct were intended to be part of the negotiations toward compromise.'" Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990) (even though no offer to settle was made, trial court properly excluded information exchanged by agreement of the parties for the express purpose to promote settlement); see Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981) (excluding a report that contained "a collection of statements made in the course of an effort to compromise").

      1.    *Proposed Exhibits 358 and 359 were created as part of settlement negotiations.*

As discussed above, not only was the information contained in Attorney Zakarian's letters provided "for settlement purposes only," it was <u>requested by Plaintiff's counsel for that very purpose</u>. Thus, contrary to Plaintiff's misleading argument, Defendants did not use the "magic words 'For Settlement Purposes' [to] shield the factual information from admissibility." (Pl.'s Memo at II.) Instead, the information was provided as a courtesy, in good faith, to further settlement, and with the understanding that Plaintiff would keep the information confidential and not be filing the instant motion. Given that the purpose of Rule 408 is to foster open and honest communication so that parties may freely discuss settlement, the applicability of Rule 408 to Exhibits 358 and 359 could not be clearer.[5]

      2.    *The evidence is not otherwise discoverable within the meaning of Rule 408.*

Plaintiff totally misunderstands the "otherwise discoverable" language in Rule 408. (Pl.'s Memo at II B.) Moreover, in a back door attempt to circumvent the discovery process,

---

[5] Indeed, under Plaintiff's theory, any statements made between attorneys are party admissions except for an actual offer to settle. Thus, according to Plaintiff, the transcript of an entire settlement conference would presumably be admissible so long as neither party made a settlement offer. Extending this logic would also make the parties' confidential *ex parte* settlement memoranda sent to mediators or Magistrate Judges admissible for the same reason.

Plaintiff tries to turn the issue into one of discoverability as opposed to admissibility. Defendants do not contend that the data contained in the letters is immune from discovery. Rather, the letters (as opposed to the data contained therein) are inadmissible because they would not exist but for Plaintiff's request for information in order to propose a settlement offer. See Ramada Dev. Co., 644 F.2d at 1107 n.8 ("Clearly [the "otherwise discoverable"] exception does not cover the present case where the document, or statement, would not have existed but for the negotiations, hence the negotiations are not being used as a device to thwart discovery by making existing documents unreachable.").

      3.    *The evidence is not being offered for a permissible purpose.*

Plaintiff's final argument is that the evidence is admissible because she is not offering it to prove liability. (Pl.'s Memo at II C.)  Once again, Plaintiff ignores the text of the rule. Statements made in compromise negotiations are inadmissible "to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408 (emphasis added).  Plaintiff is using the evidence to prove her damages, *i.e.*, "the amount" of her claim.

      4.    *The danger of unfair prejudice outweighs the probative value of the letters.*

Even if Rule 408 did not bar the admission of Exhibits 358 and 359, Rule 403 does. Rule 403 bars the admission of any evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." Fed. R. Evid. 403; see Southwest Nurseries, LLC v. Florists Mut. Ins., Inc., 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003) ("Even where evidence is not barred under Rule 408, the trial court must still perform a balancing analysis under Rule 403 of the Federal Rules of Evidence, 'weighing the probative value of the proffered evidence against its potential for unfair prejudice to the objecting party.'"); Scott v. Goodman, 961 F. Supp. 424, 438 (E.D.N.Y. 1996) (same).

In a transparent attempt to vitiate the force of Rule 408, Plaintiff now offers for the first time redacted versions of Exhibits 358 and 359. (Pl.'s Memo at Exhibits A & B.) Thus, Plaintiff proposes to show the jury letters signed by Defendants' trial counsel, written on Day, Berry & Howard letterhead, and providing the requested compensation information of Brad Russell just weeks before Plaintiff's termination. The jury would undoubtedly wonder why this information had been provided while Ms. Nichani was still an employee, especially when Defendants will maintain at trial that they are not liable for any damages and that Ms. Nichani was not performing the same work as Mr. Russell. The resulting confusion on the part of the jury is reason alone to exclude the settlement letters.

Moreover, because, as Plaintiff asserts, some of the information contained in the letters was arguably "otherwise discoverable," she should have other ways to get the information into evidence. Absent some compelling need to use the actual letters as full exhibits, which seems unimaginable here, this Court should exclude the letters under Rule 403.

**C.     Conclusion**

For the reasons explained above, this Court should exclude Plaintiff's Exhibits 358 and 359.

THE DEFENDANTS,
UNITED TECHNOLOGIES CORP. and
OTIS ELEVATOR COMPANY


By:    /s/ Douglas W. Bartinik
      Albert Zakarian (ct04201)
      Victoria Woodin Chavey (ct14242)
      Douglas W. Bartinik (ct26196)
      Day, Berry & Howard LLP
      CityPlace I
      Hartford, CT 06103-3499
      (860) 275-0100 (telephone)
      (860) 275-0343 (facsimile)
      *azakarian@dbh.com*
      Their Attorneys


## **CERTIFICATION**

      I hereby certify that the foregoing was sent via regular mail, postage prepaid, on this date, to:

Anthony Minchella, Esq.
Law Offices of Anthony R. Minchella, L.L.C.
530 Middlebury Road
Suite 203-204B
Middlebury, CT 06762

Jeffrey J. Tinley, Esq.
Robert Nastri, Esq.
Tinley, Nastri, Renehan & Dost, LLP
60 North Main Street
2nd Floor
Waterbury, CT 06702


      /s/
    Douglas W. Bartinik